**GUTRIDE SAFIER LLP**
SETH A. SAFIER (State Bar No. 197427)
seth@gutridesafier.com
MARIE MCCRARY (State Bar No. 262670)
marie@gutridesafier.com
RAJIV V. THAIRANI (State Bar No. 344390)
rajiv@gutridesafier.com
100 Pine Street, Suite 1250
San Francisco, CA 94111
Telephone: (415) 639-9090
Facsimile: (415) 449-6469

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| ROMAN WEINGARTNER and KRISTIN DELLA, on behalf of themselves and those similarly situated,<br><br>              Plaintiffs,<br><br>       v.<br><br>COLGATE-PALMOLIVE COMPANY,<br><br>              Defendant. | Case No.:<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiffs Roman Weingartner and Kristin Della, by and through their counsel, bring this Class Action Complaint ("Complaint") against Defendant Colgate-Palmolive Company ("Defendant" or "Colgate"). The following allegations are based upon information and belief, including the investigation of Plaintiffs' counsel, unless stated otherwise.

## INTRODUCTION

1.     This Complaint seeks to remedy Defendant's unlawful, unfair, and deceptive business practices with respect to the advertising, marketing, and sale of Colgate and Tom's of Maine toothpaste labeled with the claims "Recyclable Tube," "First of Its Kind Recyclable Tube," and/or the universal recycling symbol (the "Product(s)").

2.     Plastic waste is an increasingly dire international problem.[1] As consumers have become more aware of the problems associated with pollution, they actively seek to purchase Products that are recyclable to divert such waste from waterways, oceans, their communities, landfills, and incinerators. Seeking to take advantage of consumers' demands for products with recyclable packaging, Defendant advertises, markets and sells the Products as having a "Recyclable Tube," "First of Its Kind Recyclable Tube," and/or with the universal recycling symbol.

3.     The Federal Trade Commission's Guides for the Use of Environmental Claims (the "Green Guides") "provide the Commission's views on how reasonable consumers likely interpret certain claims," including "Recyclable" claims. 16 C.F.R. §§ 260.1, 260.12. The Green Guides reject a definition of "Recyclable" based on theoretical recyclability. Rather, they provide that unqualified "Recyclable" claims are deceptive to reasonable consumers unless recycling programs for the purportedly recyclable products are available to a substantial majority of consumers or communities where the products are sold. The Green Guides define substantial majority to mean "at least 60%." 16 C.F.R. § 260.12(b)(1).

4.     Defendant's recycling claims are false, deceptive, misleading and/or unlawful because, although it markets the Products as having a "Recyclable Tube," "First of Its Kind

---

[1] Nick Young, *How does plastic end up the ocean?*, Greenpeace (August 23, 2017), https://www.greenpeace.org/new-zealand/story/how-does-plastic-end-up-in-the-ocean/.

Recyclable Tube," and/or with the universal recycling symbol, facilities that recycle the Products are only available to, at best, a miniscule number of consumers or communities in California and the United States. Indeed, virtually all of the municipal recycling programs and materials recovery facilities ("MRFs") in California and the United States reject the Products because (1) they are unable to effectively distinguish between Defendant's purportedly recyclable tubes and conventional toothpaste tubes which cannot be recycled, and (2) the Products cannot be fully emptied, and the leftover toothpaste contaminates the recyclable waste stream, which makes the Products unrecyclable and jeopardizes the recyclability of truly recyclable materials.

5.      In a recent Bloomberg article questioning the accuracy of Defendant's claims, Waste Management, Inc., one of the largest recycling and disposal companies in the Nation, commented that the "tubes are not in its list of acceptable items."[2] Similarly, Peter Keller, an executive at Republic Services, another major solid waste management company explained that "[a]nother concern is leftover toothpaste causing contamination."[3] Cumulatively, these two companies alone provide recycling services to more than 40% of consumers in California and approximately 25% of the United States.[4]

6.      Defendant knows that the Products almost invariably end up in landfills or incinerated because recycling facilities do not accept them. Indeed, Defendant released a video explaining that its "continu[ing] the work beyond technically recyclable ***toward acceptance of tubes in recycling centers*** globally."[5] In other words, Defendant acknowledges that the

---

[2] Daniela Sirtori-Cortina, *Colgate's 9 Billion Toothpaste Tubes Defy Effort to Recycle Them*, Bloomberg (Dec. 9, 2022), https://www.bloomberg.com/news/articles/2022-12-09/colgate-cl-made-toothpaste-tubes-recyclable-but-do-they-get-recycled#xj4y7vzkg.

[3] *Id.*

[4] *See California Service Areas*, Waste Management, https://www.wm.com/us/en/location/ca (last vistited July 26, 2023); *Welcome to Republic Services of California*, Republic Services, https://www.republicservices.com/locations/california; https://www.wm.com/us/en/location/ca (last visited July 26, 2023); Sirtori-Cortina, *supra* note 1.

[5] CGFTheForum, *The Recyclable Plastic Transforming Toothpaste Tubes,* Youtube (Jun. 18, 2021), http://youtube.com.

1  Products are not accepted by recycling centers. Defendant's representations that the Products

2  are recyclable are thereby material, false, misleading and likely to deceive members of the

3  public.

4      7.      In addition to damages, restitution, and statutory penalties, Plaintiffs seek, on

5  behalf of themselves and the general public, an injunction precluding the sale of the Products

6  within a reasonable time after entry of judgment, unless the Products' packaging and marketing

7  are modified to remove any language suggesting that the tubes are recyclable or, in the

8  alternative, the language is qualified to accurately state the availability of recycling programs.

9                                   **PARTIES**

10     8.      Plaintiff Roman Weingartner is a citizen of California, and was at all relevant

11  times, a resident of San Francisco. He makes his permanent home in California and intends to

12  remain in California

13     9.      Plaintiff Kristin Della is a citizen of California, and was at all relevant times, a

14  resident of Ridgecrest. She makes her permanent home in California and intends to remain in

15  California.

16     10.     Defendant Colgate-Palmolive Company is a publicly traded corporation

17  organized and existing under the laws of the State of Delaware, having its principal place of

18  business at 300 Park Avenue, New York, NY 10022.

19                           **JURISDICTION AND VENUE**

20     11.     This Court has subject matter jurisdiction over this action pursuant 28 U.S.C. §

21  1332(d)(2). The aggregate amount in controversy exceeds $5,000,000, exclusive of interest and

22  costs; and Plaintiffs and Defendant are citizens of different states.

23     12.     The injuries, damages and/or harm upon which this action is based occurred or

24  arose out of activities engaged in by Defendant within, affecting, and emanating from, the State

25  of California. Defendant regularly conducts and/or solicits business in, engages in other

26  persistent courses of conduct in, and/or derives substantial revenue from products provided to

27  persons in the State of California. Defendant has engaged, and continues to engage, in

28  substantial and continuous business practices in the State of California.

13.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims occurred in the state of California, including within this District.

14.     Defendant is a registered foreign corporation with the California Secretary of State and has irrevocably consented to service of process directed to it in California pursuant California Corporations Code section 2105(a)(5)(B).

15.     In accordance with California Civil Code section 1780(d), Plaintiffs concurrently file herewith a declaration establishing that Plaintiff Weingartner purchased the Products in San Francisco County. (*See* Exhibit A.)

16.     Plaintiffs accordingly allege that jurisdiction and venue are proper in this Court.

## SUBSTANTIVE ALLEGATIONS

### (1) Defendant Advertises that the Products Are "Recyclable"

17.     Defendant manufactures, markets, and sells Colgate and Tom's of Maine brand toothpastes in all 50-states and the District of Columbia, including California. The Products come in numerous varieties and are made of high-density polyethylene or No. 2 plastic ("HDPE").

18.     Defendant uniformly represents that the Colgate-brand Products have a "Recyclable Tube" in a conspicuous blue font on a white background. An example of a typical front label for the Colgate Products is as follows:



19.     Defendant provides no disclaimer on the packaging that in any way limits their claims of recyclability. The back of the package is as follows:

1

2

3

4

5



6

7        20.      Defendant makes substantially identical representations on Colgate Cavity

8  Protection Toothpaste, Colgate Baking Soda & Peroxide Whitening Toothpaste, Colgate

9  MaxFresh Toothpaste, Colgate MaxClean Toothpaste, Colgate Total Toothpaste, Colgate Optic

10  White Toothpaste, and Colgate Sensitive Toothpaste.

11        21.      Defendant also includes the chasing arrows symbol above its "Recyclable Tube"

12  claim. The chasing arrows symbol is also known as the universal recycling symbol. It is used to

13  denote when a product is recyclable.

14        22.      Defendant also makes similar representation on its Tom's of Maine toothpastes.

15  An example of Defendant's Tom's of Maine toothpaste packaging is as follows:

16

17

18

19

20      

21

22

23

24

25

26

27        23.      The back label of the Products advertises that the Product has "THE FIRST OF

28

ITS KIND RECYCLABLE TUBE."

24.     Defendant makes substantially similar representations on Tom's of Maine Luminous White Toothpaste, Tom's of Maine Luminous White Toothpaste with Charcoal, Tom's of Maine Activated Charcoal Toothpaste, Tom's of Maine Fluoride-Free Botanically Bright Toothpaste, Tom's of Maine Simply White Toothpaste, Tom's of Maine Wicked Fresh! Toothpaste, Tom's of Maine Fluoride-Free Antiplaque and Whitening Toothpaste, Tom's of Main Fluoride Free Propolis and Myrrh Toothpaste, Tom's of Maine Whole Care Toothpaste, Tom's of Maine Fluoride-Free Rapid Relief Sensitive Toothpaste, and Tom's of Maine Sensitive + Whitening Fluoride Free Toothpaste.

25.     Defendant's packaging and advertising also invites consumers to "[l]earn more at tomsofmaine.com." However, Defendant's (Toms of Maine) website only includes a short video regarding the purported recyclability of the Products. If a person goes to the very bottom of the Tom's of Maine website, there is an FAQ. The FAQ states "[g]etting your tube ready for recycling is easy: simply squeeze out as much of the toothpaste from the tube as you can, replace the cap, and place the tube in your recycling bin."

26.     Defendant also prominently features "Recyclable" claims in much of its advertising for Tom's of Maine Toothpaste:



CLASS ACTION COMPLAINT

27.     Defendant reinforces its "Recyclable Tube" misrepresentations with additional claims on the Products and on its websites such as "Recycle Me!," "Buy Smart – By reaching for this toothpaste tube you're actively making a difference;" "Recycle It – Our recyclable tube is not meant for a landfill—it gets turned into useful products;" and "As the leaders in the oral care industry, we wanted to create a recyclable alternative." [6]

### (2) Defendant's Claims Are False

28.     Traditionally, toothpaste tubes are made from sheets of plastic laminate, which is usually a combination of different plastics sandwiched around a thin layer or aluminum.

29.     Because toothpaste tubes are typically made of a mixture of different types of plastic and metal, they are difficult to sort, separate, and process into reusable material. As such, they are universally banned and rejected by MRFs and recycling programs throughout California and the United States.

30.     In 2019, Defendant announced that it would be introducing a monomaterial toothpaste tube made entirely out of HDPE plastic. Because the new tubes are made entirely of plastic, they are theoretically not as difficult to recycle as traditional toothpaste tubes. Defendant heralded the new toothpaste tube as a major innovation and announced it as a first-of-its-kind, truly recyclable toothpaste tube.

31.     In reality, the purported innovation is a total flop. Although the Product was designed to be ***theoretically*** recyclable, in practice, recycling facilities do not accept the redesigned tubes. Accordingly, they are not, in fact, recyclable.

32.     As Bloomberg reported, "[f]or many facilities in the US, the company's new recyclable tubes are indistinguishable from those made from more common plastics, prompting recyclers to reject them."[7] Sandeep Kalkarni, a consultant at the Association of Plastic Recyclers explained that "[t]he old tubes could cause contamination if consumers put them in the recycling bin, so it's easier for recycling facilities to reject toothpaste tubers across the

---

[6] *Introducing the first-of-its-kind recyclable toothpaste tube*, Colgate
http://www.colgate.com/en-gb/power-of-optimism/faq (last visited July 26, 2023).
[7] Sirtori-Cortina, *supra* note 1.

1    board."[8]

2         33.    Waste Management, Inc., one of the largest recycling and disposal companies in

3    California, which operates municipal recycling programs in hundreds of communities in

4    California, including Sacramento, Los Angeles, Oakland, and San Francisco said that the "tubes

5    are not in its list of acceptable items."[9]

6         34.    Indeed, the sfrecycles.org website expressly states that toothpaste tubes belong in

7    the landfill bin.

8

9    **San Francisco Environment Department**

10   **SF Recycles**                    Recycling Signs | Where Recyclables Go |
                                          Español  中文  English

11

12   toothpaste          Enter zip code or SF address

13   Search

14   Toothpaste tubes, cream, ointment (empty)

15

16   

17

18

19   **LANDFILL BIN**

20   Return to homepage

21   Share this page
     tube of ointment

22

23

24        35.    Defendant represents to consumers that the Products are compatible with HDPE

25   plastic waste stream. However, generally, recycling facilities in California and the United States

26   _____

27   [8] *Id.*

28   [9] *Id.*

CLASS ACTION COMPLAINT

that accept HDPE plastic only accept jugs and bottles. The minority of recycling facilities that accept irregular HDPE plastic items, require that they be clean and free of contaminants to be recycled.

36.     There is a insurmountable contamination risk caused by leftover toothpaste. Even where they know it is required. it is impossible for consumers to remove all of the toothpaste from the tubes before recycling them. Thus, even if a recycling facility accepts irregularly shaped HDPE plastic, the tubes are still not accepted because they are not clean and free of contaminants.

37.      Defendant, of course, dismisses this issue, explaining on its website that residual toothpaste is removed during the rinsing process. However, Pete Keller, Vice President of Sustainability at Republic Services Inc., has confirmed that this is "another concern" that prevents recycling facilities from accepting the tubes because the "leftover toothpaste cause[] contamination."[10]

38.     Contaminated materials are one-hundred percent not recyclable. More egregiously, contamination degrades the quality of recyclables, which often causes materials that would otherwise be recycled to be landfilled. In other words, Defendant's Products are not only unrecyclable, they actually reduce the recyclability of truly recyclable items.

39.     In the same Bloomberg report, Defendant acknowledged "that acceptance might still be limited and advised consumers to check with local community programs."[11]

40.     Cumulatively, Republic Services Inc. and Waste Management, Inc. serve over 40% of consumers in California and approximately 25% of consumer nationwide. However, they are not only companies that refuse the Products, recycling facilities throughout California and the United States do not accept toothpaste tubes because of the processing concerns that they pose. Indeed, www.earth911.com, the largest and most comprehensive database of recycling centers in the country, shows that there is not a single program that accept toothpaste

---

[10] *Id.*

[11] *Id.*

CLASS ACTION COMPLAINT

tubes of any kind. The website only mentions a single mail-in program in New Jersey. But its existence does not somehow render Defendant's representations true or not misleading or deceptive. A mail in program in New Jersey is not reasonably accessible to Californians, nor is it reasonably accessible to any consumers, including those in New Jersey. Even assuming consumers learned of the existence of the program and mailed the Products around the country, this is not how reasonable consumers recycle their recyclable goods or understand the term "Recyclable." Indeed, the environmental harm associated with shipping used toothpaste containers around the country underscores the absurdity of it.[12]

### (3) Defendant's Marketing of the Products Violates California Public Policy, California Law, and the FTC Green Guides Which Reject a Definition of "Recyclable" Based on Theoretical Recyclability

41.     The State of California has declared that "it is the public policy of the state that environmental marketing claims, whether explicit or implied, should be substantiated by competent and reliable evidence to prevent deceiving or misleading consumers about the environmental impact of plastic products." Cal. Pub. Res. Code § 42355.5. The policy is based on the Legislature's finding that "littered plastic products have caused and continue to cause significant environmental harm and have burdened local governments with significant environmental cleanup costs." *Id.* § 42355. Further, California requires marketers that make environmental claims to "maintain in written form in its records . . . information and documentation supporting the validity of the representation" including "[w]hether, if applicable, the consumer good conforms with the uniform standards contained in the Federal Trade Commission Guidelines for Environmental Marketing Claims for the use of the terms 'recycled,' 'recyclable,' 'biodegradable,' 'photodegradable,' or 'ozone friendly.'" Cal. Bus. & Prof. Code § 17580. Defendant has not complied with § 17580 because, as detailed below, the Products do not comply with the Green Guides and, thus, it cannot and does not possess written documentation substantiating its "Recyclable" claim.

---

[12] Even consumers in New Jersey would inflict further environmental harm with in state packing and shipping.

42.     Additionally, California Business and Professions Code § 17580.5 makes it "unlawful for any person to make any untruthful, deceptive, or misleading environmental marketing claim, whether explicit or implied." Pursuant to that section, the term "environmental marketing claim" includes any claim contained in the Green Guides. Cal. Bus. & Prof. Code § 17580.5; *see also* 16 C.F.R. § 260.1, *et seq.* Defendant has not complied with § 17580.5 because, as detailed below, Defendant's marketing of the Products as recyclable and/or having a "Recyclable Tube" violates several provisions of the Green Guides and is deceptive to reasonable consumers.

43.     In promulgating the current recycling definition, the FTC clarified that "[f]or a product to be called recyclable, there must be an established recycling program, municipal or private, through which the product will be converted into, or used in, another product or package." *See* 63 Fed. Reg. 84, 11 24247 (May 1, 1998). As the FTC has stated, "while a product may be technically recyclable, if a program is not available allowing consumers to recycle the product, there is no real value to consumers." *Id.*, at 24243.

44.     The Green Guides state in relevant part that "[i]t is deceptive to misrepresent directly or by implication, that a product or package is recyclable." 16 C.F.R. § 260.12(a). The Green Guides only permit marketers to make unqualified recyclable claims "[w]hen recycling facilities ***are available*** to a substantial majority of consumers or communities where the item is sold." *Id.* § 260.12(b)(1) (emphasis added). "The term 'substantial majority,' as use in this context, means at least 60 percent." *Id.* "When recycling facilities are available to less than a substantial majority of consumers or communities where the item is sold, marketers should qualify all recyclable claims." *Id.* § 260.12(b)(2).

45.     Recycling facilities for Defendant's Products are not available to a substantial majority of consumers and communities. As discussed, *supra*, a review of municipal recycling programs shows that there are currently no recycling facilities for the Products available to consumers or communities in California and nationwide. This is because recycling facilities in California and nationwide are unable to process them due to substantial risk of contamination.

46.     Despite the severely limited availability of recycling programs for the Products,

Defendant fails to properly qualify its claim. The Green Guides explain, "[i]f recycling facilities are available only to a few consumers, marketers should use stronger clarifications. For example, a marketer in this situation may qualify its recyclable claim by stating: 'This product [package] is recyclable only in the few communities that have appropriate recycling facilities.'" *Id.*

47.     Defendant fails to properly qualify its claim because it does not inform consumers that recycling facilities for the Products are severely limited in California and nationwide.

48.      Defendant's marketing of the Products as recyclable violates the Green Guides because Defendant falsely represents that the Product as recyclable even though recycling facilities for the Products are not available to a substantial majority of consumers or communities in California and nationwide.

49.     Further, the Green Guides require marketers to support their environmental claim with a reasonable basis before they make the claims. 16 CFR § 260.2 ("Marketers must ensure that all reasonable interpretations of their claims are truthful, not misleading, and supported by a reasonable basis before they make the claims."). "[A] firm's failure to possess and rely upon a reasonable basis for objective claims constitutes an unfair and deceptive act or practice in violation of Section 5 of the Federal Trade Commission Act." *See* FTC Policy Statement Regarding Advertising Substantiation, 104 FTC 839 (1984) (cited by 16 CFR § 260.2). Defendant does not possess information sufficient to support its claims that the Products are recyclable because the Products are not recyclable as reasonable consumers understand the term.

50.     At a minimum, Defendant's marketing of the Products as recyclable is an unfair practice under the California's Unfair Competition Law, as it undermines both state and local policies of reducing the amount of plastic in landfills and the amount of pollution from plastic in the environment because consumer purchase the Products instead of less wasteful alternatives believing that they will be able to recycle them.

**(4) Defendant Misleadingly Markets the Products to Increase Profits and Gain a**

**Competitive Edge**

51.     Defendant markets the Products as having a recyclable tube to capitalize on consumer demand for "green" products. In particular, Defendant intends for reasonable consumers to believe, and reasonable consumers do believe, that recycling facilities that recycle the Product are available to a substantial majority of consumers and communities in California and nationwide. Further, Defendant intends for consumers to believe, and reasonable consumers do believe, that because the Products have a recyclable tube, they are environmentally superior to competitors' products that do not contain the same representation.

52.     Defendant's illegal marketing campaign has been extremely successful. Defendant sells billions of dollar of the Products every year in California and nationwide. During the time period since Defendant debuted the claim, the average price for Colgate toothpaste products has risen dramatically. The Products are sold in grocery stores, drug stores, and big box stores throughout California and the country. Because of the big potential for sales, Defendant has no incentive to stop claiming that the Products are recyclable or change its disclaimers to discourage sales.

53.     Because consumers are led to believe the Products have a recyclable tube and, therefore, purchase them because they are a "green" product, Defendant is able to charge a premium for the Products. If consumers knew that recycling facilities that recycle the Products are not available to a substantial majority of consumers or communities in California and nationwide, the product would not command a premium price based on that representation, fewer consumers would purchase them, and Plaintiffs would not pay the premium attributable to that representation.

**(5) Plaintiffs' Experiences**

54.     In or around January 2022, Plaintiff Weingartner purchased Tom's of Maine Activated Charcoal Anti-Cavity Toothpaste at retail from a store near his home in San Francisco. He read the claim "The First of Its Kind Recyclable Tube" on the Product and purchased it because he believed that it was recyclable, which he understood to mean that recycling facilities that accept and recycle the Product are generally available to consumers in

California. He believed he would be able to recycle the Product through his curbside recycling program. He later learned that his municipal recycling program does not accept toothpaste tubes for recycling. Had Plaintiff Weingartner known that the Products are only theoretically recyclable and that recycling facilities for the Products are not available to a substantial majority of consumers or communities in California, he would not have purchased them, or at a minimum, he would have paid less for them.

55.     In or around October 2022, Plaintiff Della purchased Colgate Total Toothpaste from a Walmart near her home in Ridgecrest. She read the claim "Recyclable Tube" on the Product and purchased it because she believed it was recyclable, which she understood to mean that recycling facilities that accept and recycle the Product are generally available to consumers in California. She believed she would be able to recycle the Product through her curbside recycling program. She later learned that her municipal recycling program does not accept toothpaste tubes for recycling. Had Plaintiff Della known that the Products are only theoretically recyclable and that recycling facilities for the Products are not available to a substantial majority of consumers or communities in California, she would not have purchased them, or at a minimum, she would have paid less for them.

56.     Plaintiffs continue to desire to purchase from Defendant toothpaste tubes that are truly recyclable as reasonable consumers understand the term. However, Plaintiffs are unable to determine at the point of purchase if recycling facilities that recycle the Products are available to a substantial majority of consumers or communities in California. Plaintiffs understand that the design and composition of the Products may change over time. But as long as Defendant may use the phrase "Recyclable Tube" and similar representations on Products that are not recyclable as reasonable consumers understand the term, then when presented with Defendant's packaging, Plaintiffs continue to have no way of determining whether the recyclability representations are in fact true. Thus, Plaintiffs are likely to be repeatedly presented with false or misleading information when shopping and they will be unable to make informed decisions about whether to purchase Defendant's Products and will be unable to evaluate the different prices between Defendant's Products and competitors' Products. Plaintiffs are further likely to

be repeatedly misled by Defendant's conduct, unless and until Defendant is compelled to ensure that its recycling representations are accurate.

## CLASS ALLEGATIONS

57.     In addition to their individual claims, Plaintiffs brings this action pursuant to Rule 23 of the Federal Rules of Civil Procedure.

58.     Plaintiffs bring this class action lawsuit on behalf of a proposed class and subclass of similarly situated persons, pursuant to Rule 23(b)(2) and (b)(3) of the Federal Rules of Civil Procedure, defined as follows:

### Class

All persons who, between August 11, 2019 and the present, purchased the Products throughout the United States (the "Class").

Excluded from this Class are Defendant, its parents, subsidiaries, affiliates, officers and directors, and those who purchased the Products for the purpose of resale.

### California Subclass

All persons who purchased the Products in California (the "Subclass").

59.     This action has been brought and may properly be maintained as a class action against Defendant because there is a well-defined community of interest in the litigation and the proposed Class and Subclass are easily ascertainable.

60.     Numerosity: Plaintiffs do not know the exact size of the Class and Subclass, but they estimate that they are composed of more than 5,000 persons. The persons in the Class and Subclass are so numerous that the joinder of all such persons is impracticable and the disposition of their claims in a class action rather than in individual actions will benefit the parties and the courts.

61.     Common Questions Predominate: This action involves common questions of law and fact to the proposed Class and Subclass because each class and subclass member's claim derives from the same deceptive, unlawful and/or unfair statements and omissions. The common questions of law and fact predominate over individual questions, as proof of a common or single set of facts will establish the right of each member of the Class and Subclass

to recover. The questions of law and fact common to the Class and Subclass include, but are not limited to, the following:

      a)    Whether recycling facilities for the Products are available to a substantial majority of communities or consumers in California;

      b)    Whether recycling facilities for the Products are available to a substantial majority of communities or consumers nationwide;

      c)    Whether it is misleading to label the Products as having a "Recyclable Tube" or with other unqualified recyclable claims;

      d)    Whether it is unlawful to label the Products as having a "Recyclable Tube" or with other unqualified recyclable claims;

      e)    Whether Defendant unfairly, unlawfully and/or deceptively failed to inform class and subclass members that recycling for the Products is not available to a substantial majority of consumer and communities where the Products are sold;

      f)    Whether Defendant's advertising and marketing regarding the Products sold to class and subclass members was likely to deceive class and subclass members or was unfair;

      g)    Whether Defendant engaged in the alleged conduct knowingly, recklessly, or negligently;

      h)    The amount of the premium lost by class and subclass members as a result of such wrongdoing;

      i)    Whether class and subclass members are entitled to injunctive and other equitable relief and, if so, what is the nature of such relief; and

      j)    Whether class and subclass members are entitled to payment of actual, incidental, consequential, exemplary and/or statutory damages plus interest thereon, and if so, what is the nature of such relief.

      62.    Typicality: Plaintiffs' claims are typical of the claims of other members of the Class and Subclass because, among other things, all such claims arise out of the same wrongful

1   course of conduct in which Defendant engaged in violation of law as described herein. Plaintiffs

2   and class and subclass members purchased one or more tubes of Products. In addition,

3   Defendant's conduct that gave rise to the claims of Plaintiffs and class and subclass members

4   (i.e., marketing, sales and advertising of the Products as recyclable) is the same for Plaintiffs

5   and all members of the Class and Subclass. Plaintiffs' claims, like the claims of the class and

6   subclass members, arise out of the same common course of conduct by Defendant and are based

7   on the same legal and remedial theories.

8       63.    Adequacy of Representation: Plaintiffs will fairly and adequately protect the

9   interests of all class and subclass members because it is in their best interests to prosecute the

10  claims alleged herein to obtain full compensation due to them for the unfair and illegal conduct

11  of which they complain. Plaintiffs also have no interests that are in conflict with, or antagonistic

12  to, the interests of class and subclass members. Plaintiffs have retained highly competent and

13  experienced class action attorneys to represent their interests and those of the Class and

14  Subclass. By prevailing on their own claims, Plaintiffs will establish Defendant's liability to all

15  class and subclass members. Plaintiffs and their counsel have the necessary financial resources

16  to adequately and vigorously litigate this class action, and Plaintiffs and counsel are aware of

17  their fiduciary responsibilities to the class and subclass members and are determined to

18  diligently discharge those duties by vigorously seeking the maximum possible recovery for

19  class and subclass members.

20      64.    Superiority: There is no plain, speedy, or adequate remedy other than by

21  maintenance of this class action. The prosecution of individual remedies by members of the

22  proposed Class and Subclass will tend to establish inconsistent standards of conduct for

23  Defendant and result in the impairment of class and subclass members' rights and the

24  disposition of their interests through actions to which they were not parties. Class action

25  treatment will permit a large number of similarly situated persons to prosecute their common

26  claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of

27  effort and expense that numerous individual actions would engender. Furthermore, as the

28  damages suffered by each individual member of the Class and Subclass may be relatively small,

the expenses and burden of individual litigation would make it difficult or impossible for individual members of the Class and Subclass to redress the wrongs done to them, while an important public interest will be served by addressing the matter as a class action.

65.     Plaintiffs are unaware of any difficulties that are likely to be encountered in the management of this action that would preclude its maintenance as a class action.

## CAUSES OF ACTION

### PLAINTIFFS' FIRST CAUSE OF ACTION
**(Violation of the Consumers Legal Remedies Act, California Civil Code § 1750, *et seq.*)**
**On Behalf of Themselves and the Subclass**

66.     Plaintiffs reallege and incorporate the paragraphs of this Complaint as if set forth herein.

67.     This cause of action is brought pursuant to the California Consumers Legal Remedies Act, California Civil Code § 1750, *et seq*. ("CLRA").

68.     Plaintiffs purchased the Products from Defendant for personal, family, or household purposes.

69.     The Products that Plaintiffs (and others similarly situated subclass members) purchased from Defendant were and are "goods" within the meaning of California Civil Code § 1761(a).

70.     Plaintiffs are "consumers" as that term is defined by the CLRA in California Civil Code § 1761(d).

71.     Defendant's actions, representations and conduct have violated, and continue to violate the CLRA, because they extend to transactions that are intended to result, or which have resulted, in the sale or lease of goods or services to consumers.

72.     By engaging in the actions, representations and conduct set forth in this Complaint, Defendant has violated, and continues to violate, § 1770(a)(2), § 1770(a)(5), § 1770(a)(7), § 1770(a)(8), and § 1770(a)(9) of the CLRA. In violation of California Civil Code § 1770(a)(2), Defendant's acts and practices constitute improper representations regarding the source, sponsorship, approval, or certification of the goods they sold. In violation of California

Civil Code § 1770(a)(5), Defendant's acts and practices constitute improper representations that the goods they sell have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities, which they do not have. In violation of California Civil Code § 1770(a)(7), Defendant's acts and practices constitute improper representations that the goods they sell are of a particular standard, quality, or grade, when they are of another. In violation of California Civil Code § 1770(a)(8), Defendant has disparaged the goods, services, or business of another by false or misleading representation of fact. In violation of California Civil Code § 1770(a)(9), Defendant has advertised goods or services with intent not to sell them as advertised. Specifically, in violation of §§ 1770(a)(2), (a)(5), (a)(7), and (a)(9), Defendant deceptively and unlawfully labeled the Products with the claims "Recyclable Tube", "First of Its Kind Recyclable Tube", the universal recycling symbol, and other unqualified "Recyclable" claims that deceptively lead consumers to believe that recycling facilities that recycle the Products are available to a substantial majority of consumers or communities in California. In violation of section 1770(a)(8), Defendant falsely or deceptively markets and advertises that, unlike products not specifically labeled as recyclable, the Products are recyclable—i.e., recycling facilities that recycle the Products are available to a substantial majority of consumers throughout California.

73.     Plaintiffs request that this Court enjoin Defendant from continuing to employ the unlawful methods, acts and practices alleged herein pursuant to California Civil Code § 1780(a)(2). If Defendant is not restrained from engaging in these types of practices in the future, Plaintiffs and the other members of the Class and Subclass will continue to suffer harm.

74.     **CLRA § 1782 NOTICE**. On February 9, 2023, Plaintiffs provided Defendant with notice and demand that within thirty (30) days from that date, Defendant correct, repair, replace or otherwise rectify the unlawful, unfair, false and/or deceptive practices complained of herein. Defendant failed to take any of the requested actions within thirty days. Plaintiffs seek, pursuant to California Civil Code § 1780(a), on behalf of themselves and those similarly situated members of the Subclass, actual damages, punitive damages and restitution of any ill-gotten gains due to Defendant's acts and practices. With regard to the amount of damages and

restitution, Plaintiffs seek to recover for themselves and the Subclass a full refund of the price paid for the Products, or in the alternative, the price premium paid for the Products, i.e., difference between the price consumers paid for the Products and the price that they would have paid but for Defendant's misrepresentation. This premium can be determined by using econometric or statistical techniques such as hedonic regression or conjoint analysis.

75.     Plaintiffs also request that this Court award them costs and reasonable attorneys' fees pursuant to California Civil Code § 1780(d).

**PLAINTIFFS' SECOND CAUSE OF ACTION**
**(False Advertising, Business and Professions Code § 17500, *et seq.* ("FAL"))**
**On Behalf of Themselves and the Subclass**

76.     Plaintiffs reallege and incorporate by reference the paragraphs of this Complaint as if set forth herein.

77.     Beginning at an exact date unknown to Plaintiffs, but within three (3) years preceding the filing of the Complaint, Defendant made untrue, false, deceptive and/or misleading statements in connection with the advertising and marketing of the Products.

78.     Defendant made representations and statements (by omission and commission) that the Products have a recyclable tube, which reasonable consumers understand to mean that recycling facilities that recycle the Products are available to a substantial majority of consumers or communities in California. Defendant deceptively failed to inform Plaintiffs that recycling facilities that recycle the Products are not available to a substantial majority of consumers or communities in California.

79.     Plaintiffs and those similarly situated relied to their detriment on Defendant's false, misleading and deceptive advertising and marketing practices, including each of the misrepresentations and omissions set forth above. Had Plaintiffs and those similarly situated been adequately informed and not intentionally deceived by Defendant, they would have acted differently by, without limitation, refraining from purchasing the Products or paying less for them.

80.     Defendant's acts and omissions are likely to deceive reasonable consumers and

the general public.

81.     Defendant engaged in these false, misleading and deceptive advertising and marketing practices to increase its profits. Accordingly, Defendant has engaged in false advertising, as defined and prohibited by section 17500, *et seq.* of the California Business and Professions Code.

82.     The aforementioned practices, which Defendant has used, and continue to use, to its significant financial gain, also constitute unlawful competition and provide an unlawful advantage over Defendant's competitors as well as injury to the general public.

83.     As a direct and proximate result of such actions, Plaintiffs and the other members of the Class and Subclass have suffered, and continue to suffer, injury in fact and have lost money and/or property as a result of such false, deceptive and misleading advertising in an amount which will be proven at trial, but which is in excess of the jurisdictional minimum of this Court. In particular, Plaintiffs, and those similarly situated, paid a price premium for the Products, i.e., the difference between the price consumers paid for the Products and the price that they would have paid but for Defendant's misrepresentation. This premium can be determined by using econometric or statistical techniques such as hedonic regression or conjoint analysis. Alternatively, Plaintiffs and those similarly situated will seek a full refund of the price paid upon proof that the sale of the Products was unlawful.

84.     Plaintiffs seek equitable relief, including restitution, with respect to their FAL claims. Pursuant to Federal Rule of Civil Procedure 8(e)(2), Plaintiffs make the following allegations in this paragraph only hypothetically and as an alternative to any contrary allegations in their causes of action 1, 3 and 4, in the event that such causes of action will not succeed. Plaintiffs and the Subclass may be unable to obtain monetary, declaratory and/or injunctive relief directly under causes of action 1, 3 and 4 and will lack an adequate remedy at law, if the Court requires them to show classwide reliance and materiality beyond the objective reasonable consumer standard applied under the FAL, because Plaintiffs may not be able to establish each class and subclass member's individualized understanding of Defendant's misleading representations as described in Paragraphs 18–28 of this Complaint, but the FAL

does not require individualize proof of deception or injury by absent class members. *See, e.g.,*
*Ries v. Ariz. Bevs. USA LLC,* 287 F.R.D. 523, 537 (N.D. Cal. 2012) ("restitutionary relief under
the UCL and FAL 'is available without individualized proof of deception, reliance, and
injury.'"). In addition, Plaintiffs and the Subclass may be unable to obtain such relief under
causes of action 3 and 4 and will lack an adequate remedy at law, if Plaintiffs are unable to
demonstrate the requisite *mens rea* (intent, reckless, and/or negligence), because the FAL
imposes no such *mens rea* requirement and liability exists even if Defendant acted in good faith.

85.     Plaintiffs seek, on behalf of those similarly situated, a declaration that the above-
described practices constitute false, misleading and deceptive advertising.

86.     Plaintiffs seek, on behalf of those similarly situated, an injunction to prohibit the
sale of the Products within a reasonable time after entry of judgment, unless the packaging and
marketing for the Products are modified to disclose the omitted facts about the recyclability of
the Products. Such misconduct by Defendant, unless and until enjoined and restrained by order
of this Court, will continue to cause injury in fact to the general public and the loss of money
and property in that Defendant will continue to violate the laws of California, unless specifically
ordered to comply with the same. This expectation of future violations will require current and
future consumers to repeatedly and continuously seek legal redress in order to recover monies
paid to Defendant to which Defendant are not entitled. Plaintiffs, those similarly situated and/or
other consumers nationwide have no other adequate remedy at law to ensure future compliance
with the California Business and Professions Code alleged to have been violated herein.

## PLAINTIFFS' THIRD CAUSE OF ACTION
### (Fraud, Deceit and/or Misrepresentation)
### On Behalf of Themselves and the Class

87.     Plaintiffs reallege and incorporate by reference the paragraphs of this Complaint
as if set forth herein.

88.     Defendant fraudulently and deceptively led Plaintiffs to believe that the Products
are recyclable when the Products are not recyclable, as reasonable consumers understand the
term, because recycling facilities that recycle the Products are not available to a substantial

majority of consumers or communities in California and nationwide. Defendant deceptively failed to inform Plaintiffs, and those similarly situated, that recycling facilities for the Products are not available to a substantial majority of consumers or communities in California and nationwide.

89.     These misrepresentations and omissions were material at the time they were made. They concerned material facts that were essential to the analysis undertaken by Plaintiffs as to whether to purchase the Products.

90.     Defendant made identical misrepresentations and omissions to members of the Class and Subclass regarding the Products.

91.     Plaintiffs and those similarly situated relied to their detriment on Defendant's fraudulent misrepresentations and omissions. Had Plaintiffs and those similarly situated been adequately informed and not intentionally deceived by Defendant, they would have acted differently by, without limitation, not purchasing (or paying less for) the Products.

92.     Defendant had a duty to inform class and subclass members at the time of their purchases that recycling facilities that recycle the Products are not available to a substantial majority of consumers or communities in California and nationwide. Defendant omitted to provide this information to class and subclass members. Class and subclass members relied to their detriment on Defendant's omissions. These omissions were material to the decisions of the class and subclass members to purchase the Products. In making these omissions, Defendant breached its duty to class and subclass members. Defendant also gained financially from, and as a result of, its breach.

93.     By and through such fraud, deceit, misrepresentations and/or omissions, Defendant intended to induce Plaintiffs, and those similarly situated, to alter their position to their detriment. Specifically, Defendant fraudulently and deceptively induced Plaintiffs, and those similarly situated, to, without limitation, pay a premium to purchase the Products.

94.     As a direct and proximate result of Defendant's misrepresentations and omissions, Plaintiffs, and those similarly situated, have suffered damages. In particular, Plaintiffs seek to recover on behalf of themselves and those similarly situated the price premium

paid for the Products, i.e., the difference between the price consumers paid for the Products and the price that they would have paid but for Defendant's misrepresentation. This premium can be determined by using econometric or statistical techniques such as hedonic regression or conjoint analysis.

95.     Defendant's conduct as described herein was willful and malicious and was designed to maximize Defendant's profits even though Defendant knew that the conduct would cause loss and harm to Plaintiffs and those similarly situated.

## PLAINTIFFS' FOURTH CAUSE OF ACTION
### (Negligent Misrepresentation)
### On Behalf of Themselves and the Class

96.     Plaintiffs reallege and incorporate by reference the paragraphs of this Complaint as if set forth herein.

97.     Defendant provided false and misleading information regarding the Products, representing that the Products have a recyclable tube, which reasonable consumers understand to mean that recycling facilities that recycle the Products are available to a substantial majority of consumer or communities in California and nationwide. Defendant deceptively failed to inform Plaintiffs, and those similarly situated, that recycling facilities that recycle the Products are not available to a substantial majority of consumers or communities in California and nationwide.

98.     These representations were material at the time they were made. They concerned material facts that were essential to the analysis undertaken by Plaintiffs as to whether to purchase the Products.

99.     Defendant made identical misrepresentations and omissions to members of the Class and Subclass regarding the Products.

100.     Defendant should have known its representations to be false and had no reasonable grounds for believing them to be true when they were made.

101.     By and through such negligent misrepresentations, Defendant intended to induce Plaintiffs and those similarly situated to alter their position to their detriment. Specifically,

Defendant negligently induced Plaintiffs, and those similarly situated to, without limitation, to purchase the Products.

102.    Plaintiffs and those similarly situated relied to their detriment on Defendant's negligent misrepresentations. Had Plaintiffs and those similarly situated been adequately informed and not intentionally deceived by Defendant, they would have acted differently by, without limitation, not purchasing (or paying less for) the Products.

103.    Plaintiffs and those similarly situated have suffered damages. In particular, Plaintiffs seek to recover on behalf of themselves and those similarly situated the price premium paid for the Products, i.e., the difference between the price consumers paid for the Products and the price that they would have paid but for Defendant's misrepresentation. This premium can be determined by using econometric or statistical techniques such as hedonic regression or conjoint analysis.

**PLAINTIFFS' FIFTH CAUSE OF ACTION**
**(Unfair, Unlawful and Deceptive Trade Practices)**
**On Behalf of Themselves and the Subclass**

104.    Plaintiffs reallege and incorporate by reference the paragraphs of this Complaint as if set forth herein.

105.    Plaintiffs bring this claim on behalf of the Subclass for violation of the California Business and Professions Code, section 17200, et seq. (the "UCL"). Within four (4) years preceding the filing of this Complaint, and at all times mentioned herein, Defendant has engaged, and continues to engage, in unfair, unlawful and deceptive trade practices in violation of the UCL by engaging in the conduct outlined in this Complaint.

106.    Defendant has engaged, and continues to engage, in unfair practices in violation of the UCL by, without limitation:

    a.    falsely and deceptively representing to Plaintiffs, and those similarly situated, the Products have a recyclable tube;

    b.    failing to inform Plaintiffs, and those similarly situated, that recycling facilities that recycle the Products are not available to a substantial majority of consumers

or communities in California and nationwide;

c.  contravening and undermining state policies expressed in California Public
Resource Code sections 42355.5 (it is "the public policy of [California] that
environmental marketing claims, whether explicit or implied, should be
substantiated by competent and reliable evidence to prevent deceiving or
misleading consumers about the environmental impact of plastic products"); and

a.  contravening and undermining state and local policies in favor or recycling,
recycling programs, and reducing the amount of plastic in landfills and the
amount of pollution from plastic in the environment.

107.   Defendant has engaged, and continues to engage, in unlawful practices in
violation of the UCL by, without limitation, violating the following laws:

a.  the Federal Trade Commission Green Guides regulations, including, without
limitation, 16 C.F.R. §§ 2601.1, 260.2, 260.12(a), and 260.12(b) as described
herein;

b.  the Environmental Marketing Claims Act, including, without limitation, Cal.
Bus. & Prof. Code § 17580(a) (Defendant has not maintained in written form in
its records information and documentation supporting the validity of its
recyclability representation) and §17580.5(a) (Defendant's representations and
omissions complained of herein constitute untruthful, deceptive, or misleading
environmental marketing claims) as described herein (collectively,
"Greenwashing");

c.  the CLRA as described herein; and

d.  the FAL as described herein.

108.   Defendant has engaged, and continues to engage, in fraudulent practices in
violation of the Consumer Protection Acts by, without limitation:

a.  falsely and deceptively representing to Plaintiffs, and those similarly situated, the
Products have a recyclable tube; and

b.  failing to inform Plaintiffs, and those similarly situated, that recycling facilities

that recycle the Products are not available to a substantial majority of consumers or communities in California and nationwide.

109.    Plaintiffs and those similarly situated relied to their detriment on Defendant's unfair, deceptive and unlawful business practices. Had Plaintiffs and those similarly situated been adequately informed and not deceived by Defendant, they would have acted differently by not purchasing (or paying less for) the Product

110.    Defendant's acts and omissions are likely to deceive reasonable consumers and the general public.

111.    Defendant engaged in these unfair practices to increase its profits. Accordingly, Defendant has engaged in unlawful trade practices in violation of the Consumer Protection Acts.

112.    The aforementioned practices, which Defendant has used to its significant financial gain, also constitute unlawful competition and provide an unlawful advantage over Defendant's competitors as well as injury to the general public.

113.    As a direct and proximate result of such actions, Plaintiffs and the other members of the Class and Subclass have suffered and continue to suffer injury in fact and have lost money and/or property as a result of such deceptive and/or unlawful trade practices and unfair competition in an amount which will be proven at trial, but which is in excess of the jurisdictional minimum of this Court. In particular, Plaintiffs and those similarly situated paid a price premium for the Products, i.e., the difference between the price consumers paid for the Products and the price that they would have paid but for Defendant's misrepresentation. This premium can be determined by using econometric or statistical techniques such as hedonic regression or conjoint analysis. Alternatively, Plaintiffs and those similarly situated will seek a full refund of the price paid upon proof that the sale of the Products was unlawful.

114.    Plaintiffs seek, on behalf of themselves and those similarly situated, equitable relief, including restitution for the premium and/or the full price that they and others paid to Defendant as result of Defendant's conduct.  Plaintiffs and the Subclass lack an adequate remedy at law to obtain such relief with respect to their "unfairness" claims under the UCL,

1    because there is no cause of action at law for "unfair" conduct.  Plaintiffs and the Subclass

2    similarly lack an adequate remedy at law to obtain such relief with respect to their

3    "unlawfulness" under the UCL cause of action because the FTC Green Guides and

4    Environmental Claims Marketing Act do not provide a direct cause of action, so Plaintiffs and

5    the Subclass must allege those violations as predicate acts under the UCL to obtain relief.

6         115.     Plaintiffs also seek equitable relief, including restitution, with respect to their

7    UCL unlawfulness claims for violations of the CLRA, FAL and their UCL deceptiveness

8    claims. Pursuant to Federal Rule of Civil Procedure 8(e)(2), Plaintiffs make the following

9    allegations in this paragraph only hypothetically and as an alternative to any contrary

10    allegations in their causes of action 1, 3 and 4, in the event that such causes of action will not

11    succeed. Plaintiffs and the Subclass may be unable to obtain monetary, declaratory and/or

12    injunctive relief directly under causes of action 1, 3 and 4 and will lack an adequate remedy of

13    law, if the Court requires them to show classwide reliance and materiality beyond the objective

14    reasonable consumer standard applied under the UCL, because Plaintiffs may not be able to

15    establish each class member's individualized understanding of Defendant's misleading

16    representations as described in Paragraphs 18–28 of this Complaint, but the UCL does not

17    require individualize proof of deception or injury by absent class members. *See, e.g., Stearns v*

18    *Ticketmaster,* 655 F.3d 1013, 1020, 1023-25 (9th Cir. 2011) (distinguishing, for purposes of

19    CLRA claim, among class members for whom website representations may have been

20    materially deficient, but requiring certification of UCL claim for entire class). In addition,

21    Plaintiffs and the Subclass may be unable to obtain such relief under causes of action 3 and 4

22    and will lack an adequate remedy at law, if Plaintiffs are unable to demonstrate the requisite

23    *mens rea* (intent, reckless, and/or negligence), because the UCL imposes no such *mens rea*

24    requirement and liability exists even if Defendant acted in good faith.

25         116.     Plaintiffs seek, on behalf of themselves and those similarly situated, a declaration

26    that the above-described trade practices are fraudulent and/or unlawful.

27         117.     Plaintiffs seek, on behalf of themselves and those similarly situated, an

28    injunction to prohibit the sale of the Products within a reasonable time after entry of judgment,

1   unless packaging and marketing is modified to remove the implication that the Products are

2   recyclable and disclose the omitted facts about the recyclability of the Products. Such

3   misconduct by Defendant, unless and until enjoined and restrained by order of this Court, will

4   continue to cause injury in fact to the general public and the loss of money and property in that

5   Defendant will continue to violate the laws of California and other states, unless specifically

6   ordered to comply with the same. This expectation of future violations will require current and

7   future consumers to repeatedly and continuously seek legal redress in order to recover monies

8   paid to Defendant to which Defendant was not entitled. Plaintiffs, those similarly situated,

9   and/or other consumers nationwide have no other adequate remedy at law to ensure future

10  compliance with the California Business and Professions Code alleged to have been violated

11  herein.

12                              **PRAYER FOR RELIEF**

13          WHEREFORE, Plaintiffs, on behalf of themselves and those similarly situated,

14  respectfully request that the Court enter judgment against Defendant as follows:

15          A.      Certification of the proposed Class and Subclass, including appointment of

16                  Plaintiffs' counsel as Class counsel;

17          B.      An order temporarily and permanently enjoining Defendant from continuing the

18                  unlawful, deceptive, fraudulent, and unfair business practices alleged in this

19                  Complaint;

20          C.      An award of compensatory damages in an amount to be determined at trial,

21                  except as to those causes of action where compensatory damages are not

22                  available by law;

23          D.      An award of statutory damages in an amount to be determined at trial, except as

24                  to those causes of action where compensatory damages are not available by law;

25          E.      An award of punitive damages in an amount to be determined at trial, except as

26                  to those causes of action where punitive damages are not available by law;

27          F.      An award of treble damages, except as to those causes of action where treble

28                  damages are not available by law;

DocuSign Envelope ID: 7EC4701C-D8F3-43B7-B737-A3E10AAE92B2

## EXHIBIT A

I, Roman Weingartner declare:

1.      I am a Plaintiff in this action. If called upon to testify, I could and would competently testify to the matters contained herein based upon my personal knowledge.

2.      I submit this Declaration pursuant to California Code of Civil Procedure section 2015.5 and California Civil Code section 1780(d).

3.      I reside in San Francisco, California. In or around January 2022, I purchased Tom's of Maine Activated Charcoal Anti-Cavity Toothpaste at retail in San Francisco, California.

I declare under penalty of perjury under the laws of California that the foregoing is true and correct.

Executed this ____8/3/2023_____ in San Francisco, California.



Roman Weingartner

WEINGARTNER DECLARATION RE CAL. CIV. CODE SECTION 1780(D) JURISDICTION

G.     An award of restitution in an amount to be determined at trial;

H.     An order requiring Defendant to pay both pre- and post-judgment interest on any amounts awarded;

I.     For reasonable attorneys' fees and the costs of suit incurred; and

J.     For such further relief as this Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiffs hereby demands a trial by jury.

Dated: August 11, 2023                    **GUTRIDE SAFIER LLP**

_____
Seth A. Safier, Esq.
Marie McCrary, Esq.
Rajiv V. Thairani, Esq.
100 Pine Street, Suite 1250
San Francisco, CA 94111

Attorneys for Plaintiffs