**JENNER & BLOCK LLP**
Kate T. Spelman (Cal. Bar No. 269109)
kspelman@jenner.com
515 South Flower Street, Suite 3300
Los Angeles, CA  90071-2054
Telephone:     (213) 239-5100
Facsimile:     (213) 239-5199

**JENNER & BLOCK LLP**
Dean N. Panos (*pro hac vice*)
dpanos@jenner.com
353 North Clark Street
Chicago, IL  60654
Phone:          (312) 222-9350
Facsimile:     (312) 527-0484

Attorneys for Defendant
Colgate-Palmolive Company

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROMAN WEINGARTNER and KRISTIN DELLA, on behalf of themselves and those similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> COLGATE-PALMOLIVE COMPANY, <br><br> Defendant. | Case No. 3:23-cv-04086-JCS <br><br> The Honorable Joseph C. Spero <br><br> **NOTICE OF MOTION AND MOTION TO DISMISS; MEMORANDUM OF POINTS AND AUTHORITIES** <br><br> Hearing Date:     November 17, 2023 <br> Hearing Time:     9:30 a.m. <br> Courtroom:          D, 15th Floor |

TO THE COURT, ALL PARTIES, AND THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE that, on November 17, 2023 at 9:30 a.m., or as soon thereafter as the Court is available, Defendant Colgate-Palmolive Company ("Colgate") will appear before the Honorable Joseph C. Spero and will, and hereby does, move to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) the Class Action Complaint filed by Plaintiffs Roman Weingartner and Kristin Della, and each claim asserted therein, because it fails to state a plausible claim for which relief can be granted.

Colgate's motion to dismiss is based on this Notice of Motion and Motion, the following Memorandum of Points and Authorities, the Request for Judicial Notice, the Declaration of Kate T. Spelman, any additional briefing on this subject (including Colgate's reply brief), and the evidence and arguments that will be presented to the Court at the hearing on this matter.

DATED:  October 11, 2023                    JENNER & BLOCK LLP


                                            By:   */s/ Kate T. Spelman*
                                                  Kate T. Spelman

                                            Attorneys for Defendant
                                            Colgate-Palmolive Company

# **TABLE OF CONTENTS**

I.    INTRODUCTION ..........................................................................................................1

II.   BACKGROUND ...........................................................................................................4

    A.    Colgate Developed a "First-of-Its-Kind" Recyclable Toothpaste Tube. ...........................4

    B.    The Colgate and Tom's Websites, Which are Incorporated Into the Products' Labels, Provide Information About Municipal Acceptance of Recyclable Toothpaste Tubes. ....................................................................................................5

        1.    Colgate-Branded Toothpaste Labels...................................................................5

        2.    Tom's of Maine-Branded Toothpaste Labels. ........................................................7

    C.    Plaintiffs' Allegations. ...........................................................................................8

III.  ARGUMENT ...............................................................................................................10

    A.    Legal Standard. ...................................................................................................10

    B.    Plaintiff Has Not Plausibly Alleged That Colgate's Labeling Contains Any Misrepresentations or Omissions That Would Mislead Reasonable Consumers. .............10

        1.    Colgate's "Recyclable Tube" Claim is Not Misleading Because it Truthfully Conveys the Intrinsic Recyclability of the Products. ........................11

        2.    Colgate's "Recyclable Tube" Claim is Not Misleading Because Colgate Discloses to Consumers Potential Limitations on Recycling Facility Acceptance During the Market Transition to Recyclable Tubes. ........................15

            (a)    Colgate-Branded Product Labeling...........................................................16

            (b)    Tom's of Maine-Branded Product Labeling. .............................................17

    C.    Colgate's "Recyclable Tube" Claim is Not Unlawful Because It Satisfies the Green Guides. .....................................................................................................18

    D.    Plaintiffs' Claim for Injunctive Relief Should Be Dismissed..........................................21

        1.    Plaintiffs' Claim for Injunctive Relief is Moot...................................................21

        2.    Plaintiffs Lack Standing to Seek Injunctive Relief.............................................22

IV.   CONCLUSION............................................................................................................24

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)........................................................................................................10

*Becerra v. Dr. Pepper/Seven Up, Inc.*,
    945 F.3d 1225 (9th Cir. 2019) .................................................................................10, 11

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007)........................................................................................................10

*Benavidez v. Cnty. of San Diego*,
    993 F.3d 1134 (9th Cir. 2021) .......................................................................................10

*Browning v. Am. Honda Motor Co., Inc.*,
    549 F. Supp. 3d 996 (N.D. Cal. 2021) ...........................................................................4

*City of Erie v. Pap's A.M.*,
    529 U.S. 277 (2000)........................................................................................................22

*City of Los Angeles v. Lyons*,
    461 U.S. 95 (1983)..........................................................................................................22

*Class Foods Int'l Corp. v. Kettle Foods, Inc.*,
    468 F. Supp. 2d 1181 (C.D. Cal. 2007) .........................................................................22

*Curtis v. 7-Eleven, Inc.*,
    No. 21-6079, 2022 WL 4182384 (N.D. Ill. Sept. 13, 2022) .....................................13, 14

*DaimlerChrysler Corp. v. Cuno*,
    547 U.S. 332 (2006)........................................................................................................21

*Ebner v. Fresh, Inc.*,
    838 F.3d 958 (9th Cir. 2016) .................................................................................10, 11

*Glen Holly Entm't, Inc. v. Tektronix Inc.*,
    343 F.3d 1000 (9th Cir. 2003) .......................................................................................11

*Gregorio v. Clorox Co.*,
    No. 17-3824, 2018 WL 732673 (N.D. Cal. Feb. 6, 2018) .............................................16

*Hartmann v. California Dep't of Corr. & Rehab.*,
    707 F.3d 1114 (9th Cir. 2013) .......................................................................................24

*Hill v. Roll Int'l Corp.*,
    195 Cal. App. 4th 1295 (2011) ..............................................................11, 18, 19, 21

*Howard v. Hain Celestial Grp., Inc.*,
  No. 22-527, 2022 WL 1497557 (N.D. Cal. May 12, 2022) .................................................6

*Knievel v. ESPN*,
  393 F.3d 1068 (9th Cir. 2005) ....................................................................................4

*Knowles v. ARRIS Int'l PLC*,
  847 F. App'x 512 (9th Cir. 2021) .............................................................................16

*Lavie v. Procter & Gamble Co.*,
  105 Cal. App. 4th 496 (2003) ...................................................................................11

*Lizama v. H&M Hennes & Mauritz LP*,
  No. 22-1170, 2023 WL 3433957 (E.D. Mo. May 12, 2023) ......................................20, 21

*McGinity v. The Proctor & Gamble Co.*,
  69 F.4th 1093 (9th Cir. 2023) ..................................................................................16

*Moore v. Trader Joe's Co.*,
  4 F.4th 874 (9th Cir. 2021) ................................................................................10, 16

*People of Village of Gambell v. Babbitt*,
  999 F.2d 403 (9th Cir. 1993) ...............................................................................21, 22

*Peterson v. Glad Prod. Co.*,
  No. 23-00491, 2023 WL 4600404 (N.D. Cal. July 17, 2023) .........................................24

*Red v. Kraft Foods, Inc.*,
  No. 10-1028, 2012 WL 5504011 (C.D. Cal. Oct. 25, 2012) ...........................................22

*Rosebrock v. Mathis*,
  745 F.3d 963 (9th Cir. 2014) ...................................................................................22

*Sanchez v. Nurture, Inc.*,
  626 F. Supp. 3d 1107 (N.D. Cal. 2022) ......................................................................10

*Sinatro v. Barilla America, Inc.*,
  635 F. Supp. 3d 858 (N.D. Cal. 2022) .......................................................................23

*Smith v. Keurig Green Mountain, Inc.*,
  393 F. Supp. 3d 837 (N.D. Cal. 2019) ...................................................................12, 20

*Somers v. Apple, Inc.*,
  729 F.3d 953 (9th Cir. 2013) ...................................................................................10

*Sprewell v. Golden State Warriors*,
  266 F.3d 979 (9th Cir. 2001) ...............................................................................10, 15

*Stewart v. Kodiak Cakes, LLC*,
  537 F. Supp. 3d 1103 (S.D. Cal. 2021) ......................................................................16

*Svensrud v. Frito-Lay N. Am., Inc.*,
    No. 20-714, 2020 WL 8575056 (C.D. Cal. Dec. 21, 2020)................................................7

*Swartz v. Coca-Cola Co.*,
    No. 21-4643, 2022 WL 17881771 (N.D. Cal. Nov. 18, 2022) ....................................12, 19

*Swartz v. Coca-Cola Co.*,
    No. 21-4643, 2023 WL 4828680 (N.D. Cal. July 27, 2023) ............................12, 13, 14, 15

*United States v. W.T. Grant Co.*,
    345 U.S. 629 (1953)............................................................................................................22

*Weiss v. Trader Joe's*,
    838 F. App'x 302 (9th Cir. 2021) ......................................................................................16

*In re Zappos.com, Inc.*,
    888 F.3d 1020 (9th Cir. 2018) ...........................................................................................22

**Statutes**

Cal. Bus. & Prof. Code §§ 17200 *et seq.* ...............................................................9, 10, 19

Cal. Bus. & Prof. Code §§ 17500 *et seq.* .......................................................................9, 10

Cal. Civ. Code §§ 1750 *et seq.*...............................................................................9, 10, 19, 22

Cal. Pub. Res. Code § 42061(a)(3)(B).............................................................................14

**Other Authorities**

16 C.F.R. § 260.1 ..............................................................................................................18

16 C.F.R. § 260.2(b) .........................................................................................................18

16 C.F.R. § 260.3 ..............................................................................................................19

16 C.F.R. § 260.12(a).....................................................................................................19, 20

16 C.F.R. § 260.12(b) .......................................................................................................20

16 C.F.R. § 260.12(b)(1) ...................................................................................................19

16 C.F.R. § 260.12(b)(2) ..........................................................................................1, 9, 19

NOTICE OF MOTION AND MOTION TO DISMISS; MEMORANDUM OF POINTS & AUTHORITIES
CASE NO. 3:23-cv-04086-JCS

I.      **INTRODUCTION**

Traditional toothpaste tubes, made from a mix of plastic and aluminum layers, are not recyclable in typical curbside streams. After more than five years of development, in 2019 Colgate-Palmolive Company ("Colgate") released a first-of-its-kind recyclable toothpaste tube that is primarily made of High Density Polyethylene (HDPE) #2 plastic—and thus recyclable within the well-established recycling stream for HDPE #2 plastic packaging—while retaining the look and feel of traditional toothpaste tubes, a significant engineering feat. And while Colgate received patents on this innovation, it committed to sharing information and learnings about the design to all interested parties, and invested time and resources to work with stakeholders (including industry groups, manufacturers, brands, materials recovery facilities (MRFs), and reprocessors) to speed the transition to recyclability across the tube market and help ensure that its recyclable tubes, and other manufacturers' tubes, are accepted for recycling within the existing HDPE #2 recycling stream across the country and around the world.

Plaintiffs do not dispute that Colgate's recyclable toothpaste tubes are made from recyclable materials. Nor do they plausibly dispute that the toothpaste tubes are technically recyclable and compatible with the HDPE #2 recycling stream. Instead, Plaintiffs claim that Colgate's labeling of its recyclable Colgate and Tom's of Maine ("Tom's") toothpaste tubes (the "Products") as "recyclable" is misleading and/or unlawful because, although the tubes are "theoretically not as difficult to recycle as traditional toothpaste tubes," recycling facilities for toothpaste tubes are not yet available to a substantial majority of consumers given that such facilities are allegedly "unable to effectively distinguish between Defendant's purportedly recyclable tubes and conventional toothpaste tubes which cannot be recycled." Compl. ¶¶ 4, 30. Plaintiffs premise their claims on the Federal Trade Commission's Guides for the Use of Environmental Claims (the "Green Guides"), which provide that "[w]hen recycling facilities are available to less than a substantial majority of consumers or communities where the item is sold, marketers should qualify all recyclable claims."[1]

In essence, Plaintiffs challenge Colgate's ability to identify the Products as recyclable despite the fact that Colgate's disclosure of the tubes' recyclability is necessary to drive the tube market's transition

---

[1] 16 C.F.R. § 260.12(b)(2).

to recyclability (which would obviate the alleged issue posed by non-recyclable tubes) as well as the behavior of both consumers and the recycling industry.  In other words, Plaintiffs seek to prevent Colgate from telling consumers that its toothpaste tubes are recyclable because *non*-recyclable tubes are allegedly hindering the recyclable tubes' acceptance by recycling facilities.  Plaintiffs complain that Colgate's marketing of the Products as "recyclable" "undermines both state and local policies of reducing the amount of plastic in landfills and the amount of pollution from plastic in the environment because consumer[s] purchase the Products instead of less wasteful alternatives."  Compl. ¶ 50.  Plaintiffs' position is nonsensical.  Not only are there no such 'alternatives," as Colgate was the first toothpaste tube manufacturer to develop this first of its kind recyclable toothpaste tube, but Plaintiffs' position, if accepted, would have disastrous consequences for manufacturers' incentives to invest in more sustainable packaging materials or for stakeholders across the recycling industry to continue to push to get new packaging types and formats into recycling streams.  And Plaintiffs do not and cannot explain how Colgate's development of a first-of-its-kind recyclable toothpaste tube undermines "state and local policies" supporting the reduction of plastic trash and pollution, particularly where Colgate has shared the technology to help expedite the recyclability of all toothpaste tubes globally.

The fundamental flaw in Plaintiffs' claims is twofold.  *First*, the Green Guides do not control reasonable consumers' understanding of the term "recyclable tube," which is an accurate representation of the intrinsic character of the Products.  Several courts (including in this District) have held that a product's "recyclability" is not altered by market forces, including the alleged rates of acceptance by recycling facilities (which can change based on circumstances well beyond manufacturers' control, particularly here where the alleged challenge relates to the presence of *non*-recyclable tubes in the market). If a product is technically recyclable via an established recycling stream, it does not mislead reasonable consumers to identify it as such.  Plaintiffs' implausible allegation that the "contamination risk" caused by leftover toothpaste renders the tubes not recyclable does not change this analysis, as this conclusion is supported by no factual allegations and runs counter to guidance from federal and State authorities regarding the recyclability of packaging that contains residual product.

Moreover, the Colgate and Tom's websites, which are expressly referenced on and incorporated into the packaging of the Products, provide transparency to consumers regarding Colgate's first-of-its-

kind recyclable tube and the steps Colgate has taken to hasten the full market transition to recyclability. Significantly, at the time of Plaintiffs' alleged purchases, the Colgate and Tom's websites advised consumers that during the market transition, local facilities may not accept recyclable toothpaste tubes for recycling, and thus consumers should check locally before recycling their Products.  Under Ninth Circuit law, a product label must be viewed in its entirety to determine the potential for consumer deception, which is absent here.  Thus, the unavoidable conclusion that the Products' "recyclable tube" claim is factually accurate and would not mislead a reasonable consumer requires dismissal of all of Plaintiffs' claims save for their UCL unlawful claim.

*Second*, Plaintiffs' UCL unlawful claim (and their remaining claims to the extent the Court views the Green Guides as relevant to the reasonable consumer inquiry) separately fails because the tubes are compatible with the HDPE #2 recycling stream, which is widely available to the vast majority of consumers across California and nationwide.  Moreover, Colgate *does*—and *did*, at the time Plaintiffs purchased the Products—qualify its "recyclable tube" claim in conformance with the Green Guides via the disclosures available on the Product websites and incorporated into the Product packaging.  These qualifying statements refute Plaintiffs' assertion that the Products' recyclable claim runs afoul of the Green Guides; to the contrary, they entitle Colgate to rely on the statutory safe harbor recognized by California law.

Even if Plaintiffs' claims are not dismissed in their entirety (which they should be), Plaintiffs' request for injunctive relief must be separately dismissed.  As an initial matter, to the extent Plaintiffs allege that the disclosures they received via the Colgate and Tom's websites were not sufficient to dispel their alleged confusion or comport with the Green Guides (a proposition Colgate vehemently denies), Colgate has updated the packaging of the Products Plaintiffs purchased with a "check locally" disclosure on each carton, which moots any request for injunctive relief.  Moreover, Plaintiffs lack standing to seek injunctive relief because they are now aware that market forces may impact their local recycling facilities' acceptance of the Products, and they can confirm such acceptance before purchasing the Products in the future; thus, there is no risk of future harm.

For these reasons, Colgate respectfully requests that the Court dismiss Plaintiffs' claims.  Because amendment would be futile, dismissal should be with prejudice.

## II.   BACKGROUND

### A.   Colgate Developed a "First-of-Its-Kind" Recyclable Toothpaste Tube.

Several years ago, Colgate began working to design a recyclable toothpaste tube as part of its target to reduce its plastic waste footprint and transition to "100% recyclable, reusable, or compostable plastic packaging by 2025."  Declaration of Kate T. Spelman ("Spelman Decl."), Ex. 1.[2]  After more than five years of development, this effort to produce a recyclable toothpaste tube was successful: Colgate created a toothpaste tube made primarily of HDPE #2 plastic that can be recycled but still maintains "nice squeezability."  *Id.*; Exs. 1–2.[3]  In 2019, Colgate earned recognition from the Association of Plastic Recyclers ("APR") regarding the technical recyclability of its tube.  *Id.*, Ex. 2.  Colgate also conducted laboratory and real-world testing to determine whether the tubes could be sorted into the proper HDPE #2 plastic stream at recycling facilities, and data from these tests showed that Colgate's full-size tubes made it through the sorting process with minimal "mis-sorting."  *Id.*

In addition to successfully developing its recyclable tube design, Colgate has been working with industry groups and partners to provide education on the industry transition and related data on recyclable tubes, with the goal of widening acceptance of recyclable tubes.  Spelman Decl., Ex. 2.  For example, Colgate is one of the funders of the Journey to Recyclability for the Plastic Squeeze Tubes project, which is "working through the critical elements needed for all tubes [not just toothpaste tubes] to be included in community lists of acceptable items in the recycling stream."  *Id.*

---

[2] In ruling on Colgate's motion to dismiss, the Court can consider Exhibit 1 because this article is referenced in Plaintiffs' Complaint.  *See* Compl. ¶¶ 5 n. 2; *Knievel v. ESPN*, 393 F.3d 1068, 1077 (9th Cir. 2005) (courts may "take into account documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the plaintiff's pleading") (internal quotation marks omitted) (alterations omitted).  The Court may also consider the article under the separate doctrine of judicial notice.  *See* concurrently-filed Request for Judicial Notice ("RJN").

[3] In addition to considering articles referenced in Plaintiffs' Complaint, the Court can also consider screenshots from Colgate's website, colgate.com, and the Tom's of Maine website, tomsofmaine.com, both of which are referenced in Plaintiffs' complaint and therefore are incorporated by reference. Compl. ¶ 27 n.6; *id.* ¶ 25; *see also infra* Section III.B.2; *Browning v. Am. Honda Motor Co., Inc.*, 549 F. Supp. 3d 996, (N.D. Cal. 2021) (explaining that "[c]ourts . . . routinely consider the full page of a website where, as here, a portion of the page is quoted or relied on in the complaint" and granting request to incorporate documents by reference into complaint) (internal quotation marks omitted) (alterations omitted).  The Court may also consider the screenshots under the separate doctrine of judicial notice.  *See* RJN.

To speed up the transition to recyclable tubes across the industry and beyond toothpaste tubes, to help drive acceptance of all tubes for recycling, Colgate has shared the design and technology for its recyclable tubes with interested parties, including tube suppliers and other brands. *Id.* Since Colgate introduced its first of its kind recyclable toothpaste tubes, "all major toothpaste brands have publicly committed to transition their tube portfolios by 2025." *Id.*

**B.** **The Colgate and Tom's Websites, Which are Incorporated Into the Products' Labels, Provide Information About Municipal Acceptance of Recyclable Toothpaste Tubes.**

Each recyclable tube of Tom's and Colgate toothpaste includes a link to the respective product's website immediately underneath the "recyclable tube" claim that appears on the side or back of the product carton.  Both currently and at the time of Plaintiffs' purchases, these websites provided transparency to consumers regarding the transition to recyclable tubes and the need to check local acceptance of recyclable toothpaste tubes during the transition period.

**1.** **Colgate-Branded Toothpaste Labels.**

Although not included in Plaintiffs' complaint, as pictured below, the carton for the recyclable Colgate toothpaste includes the following statement immediately under the "recyclable tube" claim on the side of the box: "Learn more about our recyclable tube at: colgate.com/goodness:"



*See* Spelman Decl., Ex. 3.[4]

In October 2022, when Plaintiff Della alleges she purchased Colgate Total Toothpaste, the colgate.com/goodness website invited consumers to view to learn more about the recyclable tube claim, provided significant context regarding Colgate's efforts to transition the industry to recyclable toothpaste tubes, and emphasized that consumers should check locally to verify whether the toothpaste tubes could be recycled in their community. Specifically, the FAQs explained that:

- "Momentum is building as we work to educate about our new recyclable tube! During this transition phase, your community may not yet accept tubes for recycling. Consumers should check with their local community programs." Spelman Decl., Ex. 4.

- "We've been sharing this technology and partnering with third parties to help turn 'recyclable' into widely accepted and 'recycled.' During this transition phase, however, your community may not accept tubes for recycling. Consumers should check with their local community programs to ensure that tubes are accepted." *Id.*

- "Now that we've solved technical recyclability and proved compatibility with HDPE container recycling including sortability, we have been sharing the technology as well as the approach with tube suppliers, other brands, and any interested parties so that the transition to recyclable tubes can happen quickly, and recyclers can be confident that the tubes they receive are compatible . . . . Even with all of [its] efforts" to expand acceptance of the recyclable tubes by MRFs, "during this transition phase your community may not yet accept tubes for recycling." *Id.*

The current packaging for the Colgate Total recyclable toothpaste tube contains similar language on the side of the box advising consumers that their "community may not yet accept tubes for recycling," so they should "check locally" for information:

---

[4] In their Complaint, Plaintiffs include an image of the front label of Colgate Total Toothpaste yet fail to provide an image of the back label, which includes a link to the Colgate website where Colgate qualifies its recyclability claim. *See Howard v. Hain Celestial Grp., Inc.*, No. 22-527, 2022 WL 1497557, at *1 (N.D. Cal. May 12, 2022) (concluding in connection with the defendant's motion to dismiss that "the failure to attach the photos of the back label [of the product at issue] raises serious Rule 11 concerns"). Colgate has provided images of the back label in the accompanying RJN.



*See* Spelman Decl., Ex. 5.[5]

## 2. Tom's of Maine-Branded Toothpaste Labels.

As Plaintiffs acknowledge in the complaint, the Tom's toothpaste carton contains only a single recyclability claim—"The First of Its Kind Recyclable Tube"— which is located on the back of the box, and immediately underneath that statement is an invitation for consumers to "Learn more at tomsofmaine.com." Compl. ¶ 22.

In January 2022, when Plaintiff Weingartner alleges he purchased Tom's Activated Charcoal Anti-Cavity Toothpaste, the Frequently Asked Questions on the Tom's website (like the Colgate website) provided context for Colgate's effort to transition the industry to recyclable tubes and increase recycling facilities' acceptance of the tubes. Specifically, the FAQs provided that:

-   Although Colgate had "solved technical recyclability [of toothpaste tubes], acceptance by sorting facilities and reprocessors is our current focus," as "[t]hese important groups are key to turning 'recyclable' into 'recycled." Spelman Decl., Ex. 6.

-   "[O]ur focus [is] working with cities and municipalities on how to best change communications to residents about tube acceptance." *Id.*

-   The FAQs further advised consumers that "[r]ecycling practices vary by municipality and not all types of materials are accepted in all towns." *Id.*

---

[5] The current packaging of the Products, like the Products' packaging as it existed when Plaintiffs made their purchases, is incorporated by reference into Plaintiffs' Complaint. *Svensrud v. Frito-Lay N. Am., Inc.*, No. 20-714, 2020 WL 8575056, at *2 (C.D. Cal. Dec. 21, 2020).

Like the Colgate packaging, the current carton for the Tom's recyclable toothpaste tubes contain language immediately under the "recyclable" claim advising consumers to "check locally" for information about whether their recycling facilities accept toothpaste tubes for recycling:



*See* Spelman Decl. ¶ 7.

**C.   Plaintiffs' Allegations.**

In the Complaint, Plaintiff Weingartner alleges he purchased Tom's of Maine Activated Charcoal Anti-Cavity Toothpaste in or around January 2022, and Plaintiff Della alleges she purchased Colgate Total Toothpaste in or around October 2022.  Compl. ¶¶ 54, 55.  Plaintiffs allege that Colgate "advertises, markets and sells" Colgate- and Tom's of Maine-branded toothpaste "labeled with the claims 'Recyclable Tube,' 'First of Its Kind Recyclable Tube,' and/or the universal recycling symbol," (the "Products") and that these claims are "false, deceptive, misleading and/or unlawful" because "recycling facilities for the Products are not available to a substantial majority of consumers or communities in California and nationwide" given that MRFs are allegedly "unable to effectively distinguish between Defendant's purportedly recyclable tubes and conventional toothpaste tubes which cannot be recycled."  *Id.* ¶¶ 1–2,

48.

Plaintiffs base their claims on the Green Guides, which, they allege, "reject[s] a definition of 'Recyclable' based on theoretical recyclability" and instead provides that "unqualified 'Recyclable' claims are deceptive to reasonable consumers unless recycling programs for the purportedly recyclable products are available to a substantial majority of consumers or communities where the products are sold." *Id.* ¶ 3.[6]  Thus, although Plaintiffs acknowledge that Colgate's Products are made from HDPE #2 plastic and that they are "theoretically recyclable," they contend that because "in practice, recycling facilities [allegedly] do not accept the redesigned tubes," the Products are not actually recyclable, and Colgate's labeling of the Products is misleading.  *Id.* ¶¶ 17, 31.

Plaintiffs also claim that even the minority of "recycling facilities that accept irregular HDPE plastic items, require that they be clean and free of contaminants to be recycled."  *Id.* ¶ 35. According to Plaintiffs, because "contaminated materials are one-hundred percent not recyclable," and because "it is impossible for consumers to remove all of the toothpaste from the tubes before recycling them, the tubes are still not accepted because they are not clean and free of contaminants."  *Id.* ¶¶ 36, 38. Plaintiffs' only basis for this conclusion is a paraphrased statement from Peter Keller, Vice President of Sustainability at Republic Services, Inc. that appeared in an article published by Bloomberg, in which Mr. Keller was quoted as stating that residual toothpaste was a "concern" with respect to the recyclability of toothpaste tubes.  *See id.* ¶ 37.  The article does not indicate, however, that toothpaste tubes are *not* accepted for recycling based on the potential presence of residue in the tubes.

Based on these allegations, Plaintiffs assert claims against Colgate for violations of the Consumers Legal Remedies Act, Cal. Civ. Code §§ 1750 *et seq.*, the False Advertising Law, Cal. Bus. & Prof. Code §§ 17500 *et seq.*, the Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200 *et seq.*, as well as common-law claims for fraud, deceit, and/or misrepresentation and negligent misrepresentation.  *See*

---

[6] This is a misstatement of the law.  The Green Guides do not mention "reasonable consumers."  Instead, the provision cited by Defendants for this statement provides that "[w]hen recycling facilities are available to less than a substantial majority of consumers or communities where the item is sold, marketers should qualify all recyclable claims."  16 C.F.R. § 260.12(b)(2).

Compl. ¶¶ 66–117.  Plaintiff asserts the common-law claims on behalf of a putative nationwide class of consumers, and the California statutory claims on behalf of a putative California subclass.  *See id.* ¶ 58.

### III.   ARGUMENT

#### A.   Legal Standard.

To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "Plausibility requires pleading facts, as opposed to conclusory allegations or the 'formulaic recitation of the elements of a cause of action.'"  *Somers v. Apple, Inc.*, 729 F.3d 953, 959–60 (9th Cir. 2013) (quoting *Twombly*, 550 U.S. at 555).  "A plausible claim includes factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Benavidez v. Cnty. of San Diego*, 993 F.3d 1134, 1145 (9th Cir. 2021) (citations and internal quotation marks omitted).

A court is not "required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences."  *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).  Instead, "[d]etermining whether a complaint states a plausible claim for relief is a 'context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'"  *Becerra v. Dr. Pepper/Seven Up, Inc.*, 945 F.3d 1225, 1228 (9th Cir. 2019) (citing *Iqbal*, 556 U.S. at 679).

#### B.   Plaintiff Has Not Plausibly Alleged That Colgate's Labeling Contains Any Misrepresentations or Omissions That Would Mislead Reasonable Consumers.

Because all of Plaintiffs' claims (save for their claim under the "unlawful" prong of the UCL, discussed in Section III.C.) are premised on allegedly "deceptive or misleading marketing," they must "demonstrate that a 'reasonable consumer' is likely to be misled by the representation."  *Moore v. Trader Joe's Co.*, 4 F.4th 874, 881 (9th Cir. 2021); *see also Ebner v. Fresh, Inc.*, 838 F.3d 958, 965 (9th Cir. 2016) (applying reasonable consumer standard to claims brought under the unfair and fraudulent prongs of the UCL, FAL, and CLRA and explaining that "claims under California consumer protection statutes are governed by the 'reasonable consumer' test"); *Sanchez v. Nurture, Inc.*, 626 F. Supp. 3d 1107, 1119 (N.D. Cal. 2022) ("The CLRA, FAL, UCL 'fraudulent' prong, and common law fraud all require

establishing that Defendant's practices would mislead a reasonable consumer."); *Glen Holly Entm't, Inc. v. Tektronix Inc.*, 343 F.3d 1000, 1015 (9th Cir. 2003) (affirming dismissal of negligent misrepresentation claim where plaintiff failed to sufficiently plead a "reasonable consumer" would rely on statements at issue).

To satisfy that "reasonable consumer" standard, Plaintiffs must "show that members of the public are *likely* to be deceived" by Colgate's labeling. *Becerra*, 945 F.3d at 1228 (9th Cir. 2019) (citation omitted and emphasis added). This "requires more than a mere possibility that [the] label 'might conceivably be misunderstood by some few consumers viewing it in an unreasonable manner.'" *Id.* (quoting *Lavie v. Procter & Gamble Co.*, 105 Cal. App. 4th 496, 508 (2003)). Nor is the standard that of a "least sophisticated consumer" or an "unwary consumer." *Hill v. Roll Int'l Corp.*, 195 Cal. App. 4th 1295, 1304 (2011) (citation and emphasis omitted). "Rather, the reasonable consumer standard requires a *probability* that a significant portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances, could be misled." *Becerra*, 945 F.3d at 1228–29 (emphasis added) (citation and internal quotation marks omitted). Plaintiffs' allegations do not satisfy this standard.[7]

## 1.    Colgate's "Recyclable Tube" Claim is Not Misleading Because it Truthfully Conveys the Intrinsic Recyclability of the Products.

Plaintiffs do not—and cannot—dispute that the Products themselves are made of recyclable materials. As discussed above and recognized in the Complaint and the documents incorporated by reference therein, Colgate undertook significant efforts to develop a first-of-its-kind toothpaste tube composed primarily of HDPE #2 plastic that can be recycled in the same manner as other recyclable bottles and tubes in the #2 HDPE recycling stream, "which 87% of Americans can put in recycling bins." Spelman Decl. Ex. 1. Thus, identifying the Products as "recyclable tube[s]" is not false or misleading; rather, it is a truthful and accurate description of the Products' inherent characteristic, which sinks all of

---

[7] Plaintiffs' claim that Colgate's alleged breach of its "duty" to inform consumers "that recycling facilities that recycle the Products are not available to a substantial majority of consumers or communities" was an actionable omission is also not sufficient to support their cause of action for fraud, deceit, and/or misrepresentation, for the reasons set forth below. Compl. ¶ 92; *Ebner*, 838 F.3d at 965 (affirming dismissal of plaintiff's claim that defendant's label was misleading based on alleged "omission of supplemental disclosures" because there was "no deceptive act to be dispelled" and plaintiff had not stated a plausible claim that the label was "false, deceptive, or misleading").

Plaintiffs' claims based on alleged deception of a reasonable consumer (i.e., all of Plaintiffs' claims aside from their UCL unlawful claim).

Judge Donato's recent decisions in *Swartz v. Coca-Cola Co.* are instructive in this regard.  There, the plaintiffs alleged that the "100% recyclable" claim on various plastic water bottle labels was "false and misleading because most plastic bottles are not recycled," and instead "end up in landfills or incinerators due to a lack of recycling capacity and a lack of demand for recycled plastics."  No. 21-4643, 2022 WL 17881771, at *1 (N.D. Cal. Nov. 18, 2022).  On that basis, the plaintiffs asserted claims (as Plaintiffs do here) for violations of the CLRA, FAL, and UCL, and for common law fraud and negligent misrepresentation.  *Id*.  The court rejected these claims wholesale and dismissed the plaintiffs' complaint on the basis that "[n]o reasonable consumer would understand '100% recyclable' to mean that the entire product will always be recycled."  *Id*.  Rather, the court held that "[i]n everyday usage, "recyclable" is an adjective that means capable of being recycled (e.g., "the plate is made of recyclable paper"), or a noun that denominates an object that can be recycled (e.g., "the students raised funds by selling recyclables to disposal facilities").  *Id.*  It does not mean a promise that an object will actually be recycled, as plaintiffs would have it."  *Id*.  The court went on to note that, "[i]f anything, a reasonable consumer would understand that making an object recyclable is just the first step in the process of converting waste into reusable material, and not a guarantee that the process will be completed."  *Id*.[8]

Judge Donato recently rejected the *Swartz* plaintiffs' attempt to replead their claims, dismissing the first amended complaint in its entirety based on its continued lack of plausibility.  *Swartz v. Coca-Cola Co.*, No. 21-4643, 2023 WL 4828680, at *3 (N.D. Cal. July 27, 2023).  In doing so, the court

---

[8] Judge Donato also noted that the *Swartz* plaintiff "allege[d] no facts about the processing capabilities of MRFs in California and never allege[d] that any MRFs reject defendants' products."  *Id.* at *2.  Here, similarly, the Complaint contains no plausible allegations that MRFs lack the *capability* to process recyclable toothpaste tubes, which are compatible with the HDPE #2 plastic recycling stream; rather, the Complaint alleges that MRFs are reluctant to accept such tubes because of the presence of *non*-recyclable tubes in the market.  And unlike in other cases where the products at issue were allegedly rejected by recycling facilities due to the size, shape, or other intrinsic characteristic of the product itself (*see, e.g.*, *Smith v. Keurig Green Mountain, Inc.*, 393 F. Supp. 3d 837 (N.D. Cal. 2019)), here, MRFs' alleged rejection of the Products based on external market circumstances does not render the "recyclable" claim false or misleading.

recognized that holding the defendants to the standard plaintiffs sought to impose would be untenable and unwarranted under the principles of California consumer protection law:

> It also bears mention that the consumer deception alleged in the FAC is tied to forces and circumstances well beyond defendants' control. The FAC devotes substantial effort to explaining that the degree to which plastic bottles are recycled is heavily influenced by such unpredictable factors as changes in waste importation policy by the national government in China, and the economics of the recycling business. *See, e.g., id.* ¶¶ 44–45, 56. In effect, the FAC makes a good case that the recycling of plastics is subject to an array of circumstances totally unrelated to defendants' conduct. The plausibility of holding defendants to account for statements made in such volatile circumstances is not at all clear in the FAC.

*Id.*, at *4.

The Northern District of Illinois held similarly in *Curtis v. 7-Eleven, Inc.* that the term "recyclable" "simply means that the product is capable of being recycled. It is about [the] product itself, meaning its intrinsic character. It is not about what happens to the product after it goes into the recycling bin."  No. 21-6079, 2022 WL 4182384, at *1, 13 (N.D. Ill. Sept. 13, 2022) ("Recyclable" means "can be recycled." It does not mean "will be recycled.").  In *Curtis*, the plaintiff alleged that the "recyclable" claim on certain 7-Eleven cups and plates was deceptive to reasonable consumers because "the products are unlikely to be recycled, because recycling facilities are few and far between."  *Id*.  The court rejected that theory of liability, dismissing the complaint "to the extent that Plaintiff contends that the products are not recyclable because of the unavailability of recycling facilities" given that "7-Eleven never represented anything about the likelihood of recycling" and "[t]he limited availability of recycling facilities does not mean that the plates and cups [at issue in the litigation] are not recyclable."  *Id.* at 13, 17.  According to the court, "[a] different holding would have potentially sweeping implications."  *Id*. at *15.

Significantly, the *Curtis* court expressly rejected the plaintiff's attempt to rely on the Green Guides to establish consumer deception regarding the term "recyclable," noting that "[i]t is not clear how useful those Green Guides are when evaluating the views of a reasonable consumer at a convenience store. Your average consumer at 7-Eleven probably doesn't have the FTC's policy statements at his or her fingertips

when picking up a bag of foam plates for the backyard BBQ." *Id.* at *16.[9]  Indeed, the California legislature has recognized that "materials that are *trending toward* meeting the [Green Guides] requirements" (but do not yet meet those requirements) may be considered "recyclable" given that "the continued increase in the collection, sorting, and viable responsible end market development the department determines [can] be disrupted by a loss of a recyclable designation." Cal. Pub. Res. Code § 42061(a)(3)(B).

Here, as in *Swartz* and *Curtis*, Plaintiffs do not dispute that the Products at issue are made of recyclable materials, or that Colgate has expended and continues to expend significant effort to help the broader tube market transition to recyclable packaging.  Rather, their allegations relate to alleged third party acceptance of the recyclable products for collection, sortation, and/or reprocessing.  But any alleged hesitation on the part of MRFs to accept recyclable toothpaste tubes during the transition period is "tied to forces and circumstances well beyond defendants' control" and does not negate the "intrinsic" recyclability of the Products.  *Swartz*, 2023 WL 4828680, at *4; *Curtis*, 2022 WL 4182384, at *1.

Indeed, there is no plausible allegation that the Products are not *capable* of being recycled in the well-established recycling stream for HDPE #2 plastic, and in fact testing has shown that they are.  Thus, it is in the interests of consumers and the recycling industry alike for Colgate to identify the Products as "recyclable" to educate stakeholders on the Products' recyclability and hasten widespread acknowledgement of the Products' suitability for the existing HDPE #2 plastic recycling stream.  A contrary outcome would undermine Plaintiffs' (and the State's) interest in addressing the "increasingly dire international problem" of "plastic waste," Compl. ¶ 2, as "the continued increase in the collection, sorting, and viable responsible end market development" for the Products will "be disrupted by a loss of a recyclable designation," Cal. Pub. Res. Code § 42061(a)(3)(B).

Plaintiffs' conclusory assertion that the alleged "contamination risk" caused by leftover toothpaste renders the Products "not recyclable" does not change this analysis.  Compl. ¶¶ 36, 38.  Indeed, Plaintiffs'

---

[9] To the extent this Court is inclined to consider the Green Guides as probative of reasonable consumer expectations (which it should not do), the Green Guides cannot support Plaintiffs' consumer deception claims because Colgate's labeling is consistent with the standards set forth therein.  *See infra* Section III.C.

sole factual support for this allegation is a statement from Peter Keller, Vice President of Sustainability at Republic Services, Inc., simply identifying "leftover toothpaste" as a "concern" with respect to the recyclability of toothpaste tubes. *Id.* ¶ 37; Spelman Decl., Ex. 1. Plaintiffs' inference that toothpaste tubes are "not recyclable" based on this hypothetical concern is therefore "unwarranted" and need not be "accept[ed] as true." Compl. ¶ 38; *Sprewell*, 266 F.3d at 988; *see also Swartz*, 2023 WL 4828680, at *4 (rejecting allegation that "the [defendant's] bottles are not 100% recyclable in their entirety" where "the FAC does not provide facts supporting these allegations" or the inferences plaintiffs attempted to draw). Moreover, guidance provided by the Environmental Protection Agency ("EPA") and CalRecycle (the agency responsible for administering California recycling programs) is contrary to Plaintiffs' unsupported allegation, rendering it even more implausible. The EPA, by incorporating guidance from the "I Want To Be Recycled Website," advises that consumers do *not* have to "rinse out every drop of lotion, soap, or shampoo before recycling the bottle" since "[p]lastics will be cleaned at the recycling facility," and CalRecycle similarly advises that "[t]here's no need to wash [ ] your recyclables." Spelman Decl., Exs. 8–10.[10]

For these reasons, Plaintiffs do not plausibly allege that reasonable consumers would be deceived by Colgate's accurate recyclability representations.

## 2. Colgate's "Recyclable Tube" Claim is Not Misleading Because Colgate Discloses to Consumers Potential Limitations on Recycling Facility Acceptance During the Market Transition to Recyclable Tubes.

To the extent the "recyclable tube" representation raises questions for reasonable consumers regarding the recyclability of the Products in *their* locality (or suggests, as Plaintiffs allege, that "recycling facilities that accept and recycle the Product[s] are generally available to consumers in California," Compl. ¶ 55), the Products' packaging invites consumers to learn more at the respective product websites where Colgate provides transparent information regarding the market transition to recyclable tubes and advises consumers to check their local recycling rules to confirm acceptance of toothpaste tubes during the

---

[10] This federal and state guidance comports with the disclaimer available on the Colgate website: "[T]he tube goes through a 'rinsing process,' where all the residual toothpaste is washed off the plastic." *Id.*, Ex. 4.

transition period.  These disclosures provide a further basis to dismiss Plaintiffs' claims founded on alleged consumer deception.

As the Ninth Circuit has repeatedly made clear, it is a common-sense proposition that "product packaging should be examined in its full context because it would be unreasonable to cherry-pick discrete statements to prove deception." *Weiss v. Trader Joe's*, 838 F. App'x 302, 303 (9th Cir. 2021) ("[A] reasonable consumer does not check her common sense at the door of the store."); *see also, e.g.*, *Moore*, 4 F.4th at 883 (affirming dismissal of false advertising lawsuit and holding that claim was not plausible "as a matter of law" where "other available information . . . would quickly dissuade a reasonable consumer" from her interpretation of the labeling); *Knowles v. ARRIS Int'l PLC*, 847 F. App'x 512, 513 (9th Cir. 2021) (similar); *cf. McGinity v. The Proctor & Gamble Co.*, 69 F.4th 1093, 1099 (9th Cir. 2023) ("We hold that when, as here, a front label is ambiguous, the ambiguity can be resolved by reference to the back label.").

Consistent with this, in determining whether product labels are misleading or deceptive, multiple courts have considered statements from a product's website where a link to that website was included on a product packaging, reasoning that such statements are incorporated by reference into the product and thereby the plaintiff's complaint.  *See, e.g.*, *Gregorio v. Clorox Co.*, No. 17-3824, 2018 WL 732673, at *1 n.2 (N.D. Cal. Feb. 6, 2018) (incorporating by reference copies of website "listed on the back of the [product] label" into complaint challenging product labeling statement); *Stewart v. Kodiak Cakes, LLC*, 537 F. Supp. 3d 1103, 1121–22 (S.D. Cal. 2021) (holding that, where labels included "a link to their respective product pages on Defendant's website," advertisements on the defendant's website were incorporated by reference into the plaintiff's complaint because plaintiffs may not "select only portions of documents that support their claims, while omitting portions of those very documents that weaken—or doom—their claims") (citation omitted) (alterations omitted).  This rationale requires dismissal of Plaintiffs' consumer deception claims.

**(a)  Colgate-Branded Product Labeling.**

As described above, at the time that Plaintiff Della purchased Colgate Total Toothpaste in October 2022, the back label of the Product directed consumers to the Colgate website, colgate.com/goodness, for further information on the recyclability of the tubes.  *See* Compl. ¶ 55; Spelman Decl., Ex. 3.  In and

16

around October 2022, that website included FAQs about its recyclable tubes, which contained the following representations:

- "Momentum is building as we work to educate about our new recyclable tube! During this transition phase, your community may not yet accept tubes for recycling. Consumers should check with their local community programs." Spelman Decl., Ex. 4 (emphasis added).

- "We've been sharing the technology [for the recyclable toothpaste tubes] and partnering with third parties to help turn 'recyclable' into widely accepted and 'recycled.' During this transition phase, however, *your community may not yet accept tubes for recycling. Consumers should check with local community programs.*" *Id.* (emphasis added).

- "Now that we've solved technical recyclability and proved compatibility with HDPE container recycling, including sortability, we have been sharing the technology as well as the approach with tube suppliers, other brands, and any interested parties so that the transition to recyclable tubes can happen quickly, and recyclers can be confident that the tubes they receive are compatible." *Id.*, (emphasis added).

- "In addition to helping the industry transition their tubes, we're focused on working with the recycling community by sharing our work on compatibility of recyclable tubes within the current recyclable system, and partnering with key third parties to address turning 'recyclable' into widely accepted and 'recycled.'" *Id.*

- "Even with all these efforts [to advance recycling facilities' acceptance of recyclable toothpaste tubes], however, during this transition phase your community may not yet accept tubes for recycling. Consumers should check with their local community programs to ensure that tubes are accepted." *Id.* (emphasis added).

(b)   **Tom's of Maine-Branded Product Labeling.**

Similarly, at the time Plaintiff Weingartner purchased Tom's Activated Charcoal Anti-Cavity Toothpaste in January 2022, the statement "THE FIRST OF ITS KIND RECYCLABLE TUBE" was printed on the back of the product's label, along with a link to the Tom's of Maine website, tomsofmaine.com, where consumers were directed to "learn more" regarding the recyclability of the tube. *See* Compl. ¶¶ 22, 54.  In and around January 2022, the Tom's website, like the Colgate website, included

17

a page that provided additional information about the Tom's recyclable tubes, including the following explanation:

- "Now that we've solved technical recyclability [of toothpaste tubes], ***acceptance by sorting facilities and reprocessors is our current focus***.  These important groups are key to turning 'recyclable' into 'recycled,' and we are working with them both individually and through collaborative groups, including the APR, More Recycling, and The Recycling Partnership."  Spelman Decl., Ex. 6.

- "[O]ur focus [is] working with cities and municipalities on how to best change communications to residents about tube acceptance." *Id.*

- "Recycling practices vary by municipality and not all types of materials are accepted in all towns." *Id.* (emphasis added).

\*\*\*

Thus, viewed as a whole (which is required by Ninth Circuit precedent), the Product packaging, including the website disclosures incorporated therein, communicate to consumers that recyclable toothpaste tubes are in a market transition period during which Colgate is working with key stakeholders to increase recycling facilities' acceptance of the recyclable tubes, that not all communities may accept toothpaste tubes yet for recycling, and that consumers should check their local recycling centers regarding acceptance of the tubes.  Plaintiffs' assertion that the recyclable tube claim is misleading therefore does not withstand scrutiny.

### C. Colgate's "Recyclable Tube" Claim is Not Unlawful Because It Satisfies the Green Guides.

The Green Guides "are 'administrative interpretations of laws administered by the [FTC] for the guidance of the public in conducting its affairs in conformity with legal requirements,'" and "they apply to a comprehensive range of environmental claims in marketing." *Hill*, 195 Cal. App. 4th at 1301–03 (citing 16 C.F.R. § 260.1).  "But '[b]ecause the guides are not legislative rules under Section 18 of the FTC Act, they are not themselves enforceable regulations, nor do they have the force and effect of law.'" *Id*. (citing 16 C.F.R. § 260.2(b)).  Rather, "[t]hey consist of general principles, followed by nonexclusive

specific examples, and 'are intended to provide a 'safe harbor' for marketers who want certainty about how to make environmental claims.'" *Id.* (citing 16 C.F.R. § 260.3).

"By incorporating the FTC guides into the CLRA definition of environmental marketing claims" (e.g., the Environmental Marketing Claims Act ("EMCA")), however, the California legislature has "elevated the guides to tests of illegality, retaining the safe harbor feature only in that conformity with the guides is a defense to any CLRA action." *Id.* Though a plaintiff cannot assert a direct claim for violation of the EMCA, an alleged violation of the EMCA can serve as the predicate for a UCL unlawful claim. *See id.* at 1301 (noting that the plaintiff premised her UCL and CLRA claims on the EMCA, "an act not itself made a cause [of] action").

The Green Guides advise that "[a] product or package should not be marketed as recyclable unless it can be collected, separated, or otherwise recovered from the waste stream through an established recycling program for reuse or use in manufacturing or assembling another item." 16 C.F.R. § 260.12(a). Further, "[w]hen recycling facilities are available to less than a substantial majority of consumers or communities where the item is sold, marketers should qualify all recyclable claims." 16 C.F.R. § 260.12(b)(2). Under the Green Guides, "[t]he term 'substantial majority,' as used in this context, means at least 60 percent." 16 C.F.R. § 260.12(b)(1). Thus, as explained by the *Swartz* court, "whether a product is properly labeled 'recyclable' under the Green Guides depends on whether it is comprised of materials that can be recycled by existing recycling programs—[but] not . . . on whether the product is converted into reusable material." 2022 WL 17881771, at *2.

Here, Plaintiffs assert a UCL unlawful claim based on Colgate's alleged violations of the Green Guides. Compl. ¶¶ 104–17. Specifically, Plaintiffs allege that Colgate's labeling violates the Green Guides because Colgate fails to "properly qualify its claim" that the Products are recyclable given that "recycling facilities for the Products are [allegedly] not available to a substantial majority of consumers or communities in California and nationwide." *Id.* ¶¶ 46–48. This theory fails for two reasons.

First, Plaintiffs do not dispute that the Products are compatible with the HDPE #2 recycling stream, for which recycling facilities are "available" to 87% of consumers, which more than satisfies the "substantial majority" threshold. 16 C.F.R. § 260.12(b)(1). Importantly, this is not a case where the size, shape, or other physical characteristic of the product at issue allegedly renders it non-recyclable through

existing recycling facilities. *See, e.g.*, *Smith v. Keurig Green Mountain, Inc.*, 393 F. Supp. at 846 (rejecting argument that defendant's recyclable claim complied with the Green Guides because "plastic #5 is recyclable" where "the complaint alleges that the size and design of the Pods render them non-recyclable"). Rather, Plaintiffs allege that recycling facilities reject the Products because they are unable to distinguish *recyclable* from *non*-recyclable toothpaste tubes. Compl. ¶ 4. But this alleged fact does not undermine the conclusion that *recyclable* tubes *can* be recycled through "an established recycling program" available to the vast majority of consumers. 16 C.F.R. § 260.12(a).

Second, even setting aside the wide availability of facilities for HDPE #2 recycling, Plaintiff ignores the fact that the packaging for the Colgate and Tom's Products provide conspicuous links to the websites for the respective Products, where the companies clearly disclose that local recycling facilities may not yet accept the Products during the market's transition to recyclable tubes, thereby satisfying any obligation Colgate may have to qualify its recyclable claim. *See supra* Section III.B.2. The Green Guides do not prescribe specific qualifying language or a specific location for such qualifications; rather, the guiding principle is the "avoid[ance of] deception about the availability of recycling programs and collection sites to consumers," which is necessarily circumstance-dependent. 16 C.F.R. § 260.12(b). The extensive explanation provided on the Colgate and Tom's websites regarding the development of recyclable tubes, the transition of the recyclable tube market, and the status of acceptance by recycling facilities during that market transition, comport with the FTC's guidance regarding the requisite qualification.

*Lizama v. H&M Hennes & Mauritz LP*, No. 22-1170, 2023 WL 3433957 (E.D. Mo. May 12, 2023), is instructive. There, the plaintiff filed a putative class action against H&M based on the company's alleged "misrepresentation[s]" regarding its "conscious choice" clothing collection. *Id*. at *1. Among other claims, the plaintiff alleged that "H&M's alleged misrepresentations constitute an 'unfair practice' under the [Missouri Merchandising Practices Act] because they violate the Federal Trade Commission's ('FTC') Guides for the Use of Environmental Marketing Claims ('Green Guides')," which prohibit "'[u]nqualified general environmental benefit claims' without 'clear and prominent qualifying language that limits the claim to a specific benefit or benefits.'" *Id*. at *8. The court rejected the plaintiff's claims and dismissed the complaint, holding as to the Green Guides that H&M "has not made any unqualified

environmental benefit claims . . . . Rather than representing the conscious choice collection as unconditionally sustainable, it has clearly qualified its use of such terms, explaining [in the sustainability section of its website] that its conscious choice items are made with 'a little extra consideration for the planet' because they use 'more sustainable materials' than its regular collection." *Id.*  As in *Lizama*, Colgate has "clearly qualified" its recyclable claim through the explanation provided on the Products' respective websites, which are incorporated into the Products' packaging immediately adjacent to the recyclable claim.

Thus, Colgate's compliance with the Green Guides establishes a safe harbor for Colgate's recyclable representations against Plaintiffs' UCL unlawful claim.  *Hill*, 195 Cal. App. 4th at 1301–03.

### D.    Plaintiffs' Claim for Injunctive Relief Should Be Dismissed.

Even if this Court finds that Plaintiffs have sufficiently stated claims based on the packaging of the Products they allegedly purchased, then at a minimum, Plaintiffs' claim for injunctive relief must be dismissed because (1) Colgate has since updated the Products' packaging to include a "check locally" disclosure; and (2) Plaintiffs are on notice of any alleged lack of acceptance of the Products by local recycling facilities and therefore lack standing to seek injunctive relief.

#### 1.    Plaintiffs' Claim for Injunctive Relief is Moot.

As described above, Colgate's packaging for the Products Plaintiffs purchased now includes a disclosure advising consumers that their "community may not yet accept tubes for recycling," so they should "check locally" to confirm. Spelman Decl., Exs. 5, 7.  Thus, even if this Court finds that similar disclosures on the Colgate and Tom's websites at the time Plaintiffs purchased the Products do not sufficiently qualify the recyclable claims on the Products' packaging (they do), it is clear that the Products' current packaging—which is also incorporated by reference into Plaintiffs' complaint—cannot support Plaintiffs' consumer deception of UCL unlawful claims.

Under well-established Supreme Court precedent, a plaintiff is required to demonstrate the existence of an Article III case or controversy "separately for each form of relief sought." *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 352 (2006).  "To the extent that [a] claim is moot, of course, the federal courts lack Article III jurisdiction to resolve that claim." *People of Village of Gambell v. Babbitt*, 999 F.2d 403, 406 (9th Cir. 1993).  "[A] case is moot when the issues are no longer 'live' or

the parties lack a cognizable interest in the outcome." *City of Erie v. Pap's A.M.*, 529 U.S. 277, 287 (2000) (citations and internal quotations omitted).  "The basic question is whether there exists a 'present controversy as to which effective relief can be granted." *Babbitt*, 999 F.2d at 406.  For purposes of injunctive relief, Article III requires "a real and immediate threat" that Plaintiffs "will again be wronged" by Colgate "in a similar way." *City of Los Angeles v. Lyons*, 461 U.S. 95, 102–03 (1983).

Here, because the Products' current packaging qualifies the recyclable claim directly on pack and provides the information Plaintiffs allege was missing from the recyclable claim (which Colgate contends was always provided via the Products' respective websites), there is no "real and immediate threat" that Plaintiffs will be wronged by the Products' packaging "in a similar way." *See id.*  Plaintiffs' claim for injunctive relief is therefore moot. *Cf., e.g., Red v. Kraft Foods, Inc.*, No. 10-1028, 2012 WL 5504011, at *1 (C.D. Cal. Oct. 25, 2012) (claims for injunctive relief were moot where defendant had already committed to changing challenged labeling statements); *Class Foods Int'l Corp. v. Kettle Foods, Inc.*, 468 F. Supp. 2d 1181, 1196 (C.D. Cal. 2007) (finding that request for injunctive relief was moot where defendant had already changed the challenged product's packaging).

Plaintiffs cannot circumvent this jurisdictional impediment by invoking the "voluntary cessation" exception to the mootness doctrine and arguing that Colgate is theoretically "free to return to [its] old ways." *United States v. W.T. Grant Co.*, 345 U.S. 629, 632–33 (1953).  There would be no reason for Colgate to revert to its prior packaging, particularly as the packaging was updated for independent business reasons before Plaintiffs sent their CLRA demand letter or filed this lawsuit.  Accordingly, the "voluntary cessation" doctrine does not apply. *See Rosebrock v. Mathis*, 745 F.3d 963, 971 (9th Cir. 2014).  Plaintiffs' claim for injunctive relief should therefore be dismissed as moot.

### 2.    Plaintiffs Lack Standing to Seek Injunctive Relief.

As explained above, a plaintiff seeking injunctive relief must show a "real or immediate threat that they will be wronged again—a likelihood of substantial and immediate irreparable injury." *Lyons*, 461 U.S. at 111 (citation omitted).  "[T]he injury or threat of injury must be both 'real and immediate,' not 'conjectural' or 'hypothetical.'" *Id.* at 102.  "A plaintiff threatened with future injury has standing to sue if the threatened injury is certainly impending, or there is a substantial risk the harm will occur." *In re Zappos.com, Inc.*, 888 F.3d 1020, 1024 (9th Cir. 2018) (citation and internal quotation marks omitted).

Here, there is no threat of future injury because Plaintiffs are on notice that (a) the Products may not yet be accepted by recycling facilities in their communities due to market forces; and (b) they can check if their local facilities accept toothpaste tubes for recycling before purchasing the Products in the future. Indeed, in their Complaint, Plaintiffs each specifically allege that they learned their respective municipal recycling programs do "not accept toothpaste tubes for recycling." Compl. ¶¶ 54–55. Given these allegations, Plaintiffs cannot plausibly allege that they are "unable to determine at the point of purchase if recycling facilities that recycle the Products are available to a substantial majority of consumers or communities in California" or that they would be misled in purchasing the Products in the future. *Id.* at ¶ 56.

*Sinatro v. Barilla America, Inc.*, 635 F. Supp. 3d 858 (N.D. Cal. 2022), is instructive. There, the plaintiffs sought injunctive relief in connection with their claim that the defendant's labeling of its pasta as "ITALY'S #1 BRAND OF PASTA" was misleading because the pasta was not manufactured in Italy. *Id.* at 865, 873–74. The defendant moved to dismiss the injunctive relief claim, explaining that the plaintiffs' allegations that they were "unable to rely on the truth of the Challenged Representation on the Products' labels" "def[ied] credulity" because the plaintiffs were "clearly on notice" that the products were made in the United States. *Id.* at 873–74. The Court agreed, explaining that the plaintiffs could not "reasonably claim that they [would] be deceived by the challenged representations now that they know where the products are manufactured." *Id.* at 875. The Court further reasoned that the case was "different from those challenging representations about product formulations or characteristics like 'natural' or 'naturally derived' or 'flushable' where the plaintiffs alleged that they could not rely on the defendant's representations in the future," because now that the plaintiffs were aware the pasta was manufactured in the United States they could not "plausibly allege that they remained unaware" of that fact. *Id.*

Here, as in *Sinatro*, Plaintiffs cannot plausibly allege they remain unable to verify whether the Products are accepted by recycling facilities in their communities because, as their Complaint makes clear, the recyclability of any product (including toothpaste tubes) is subject to market forces outside the manufacturer's control, and information regarding whether local facilities accept toothpaste tubes for recycling is publicly available and accessible to Plaintiffs. *See* Compl. ¶ 58. Plaintiffs can verify and *have* (according to their Complaint) verified whether the Products are accepted by recycling facilities in

their community and across California.   Given these allegations, they cannot establish a "real and immediate threat of repeated injury" sufficient to establish standing to assert their claim for injunctive relief.[11]

## IV.   **CONCLUSION**

For the foregoing reasons, Colgate respectfully requests that the Court dismiss Plaintiffs' lawsuit. Because Plaintiffs can allege no additional facts that would cure the deficiencies in their Complaint, amendment would be futile, and dismissal should be with prejudice.   *Hartmann v. California Dep't of Corr. & Rehab.*, 707 F.3d 1114, 1130 (9th Cir. 2013) ("A district court may deny leave to amend when amendment would be futile.").


DATED:  October 11, 2023                              JENNER & BLOCK LLP


                                                      By:   _/s/ Kate T. Spelman_
                                                            Kate T. Spelman

                                                      Attorneys for Defendant
                                                      Colgate-Palmolive Company

---

[11] Colgate respectfully disagrees with Judge Hixon's recent decision in *Peterson v. Glad Prod. Co.*, No. 23-00491, 2023 WL 4600404 (N.D. Cal. July 17, 2023), where the court found that the plaintiff had standing to seek injunctive relief related to alleged misrepresentations regarding the recyclability of a plastic bag product even though the plaintiff was on notice that the product may not be recyclable in his locality and could confirm that information going forward.  There, the court held that "the proper inquiry is whether Peterson can 'rely on the product's advertising or labeling in the future,' . . . not whether he can refute Defendants' label claims by conducting independent research."  *Id.*, at *5 (citation omitted). This framing sets up a false dichotomy between relying on product packaging and performing "independent research."  Given the decentralized nature of recycling in this country (which is exemplified by the Green Guides' recognition that an unqualified recyclable claim is permissible where recycling facilities are available to 60% of consumers), a "recyclable" claim on *any* product label necessarily requires reference to external sources to confirm a specific consumer's ability to recycle that product in their locality.  Because Plaintiffs are now acutely aware of this fact, there is no threat of future injury.