**GUTRIDE SAFIER LLP**
SETH A. SAFIER (State Bar No. 197427)
seth@gutridesafier.com
MARIE MCCRARY (State Bar No. 262670)
marie@gutridesafier.com
RAJIV V. THAIRANI (State Bar No. 344390)
rajiv@gutridesafier.com
100 Pine Street, Suite 1250
San Francisco, CA 94111
Telephone: (415) 639-9090
Facsimile: (415) 449-6469

*Attorneys for Plaintiffs*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MIKHAIL GERSHZON, KRISTIN DELLA, AND JILL LIENHARD, on behalf of themselves and those similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>COLGATE-PALMOLIVE COMPANY,<br><br>Defendant. | Case No.: 23-cv-04086-JCS<br><br>The Honorable Joseph C. Spero<br><br>**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS FIRST AMENDED CLASS ACTION COMPLAINT**<br><br>DATE: February 9, 2024<br>TIME: 9:30 a.m.<br>CTRM: D, 15th Floor |

## <u>TABLE OF CONTENTS</u>

I.      INTRODUCTION ...................................................................................................... 1

II.     FACTUAL ALLEGATIONS ..................................................................................... 2

III.    LEGAL STANDARD................................................................................................ 4

IV.     ARGUMENT ............................................................................................................ 4

        A.      Plaintiffs Allege Deceptive and Unlawful Practices................................... 4

                1.      Colgate's "Recyclable Tube" Representations are *Per Se* Deceptive Under California Law.                                4

                2.      California Law Expressly Rejects Colgate's Proposed Definition of "Recyclable" Based On Intrinsic or Theoretical Recyclability.        8

                3.      Colgate's Website Disclosures Do Not Cure Its Misrepresentations.        12

                4.      Plaintiffs Also Allege Fraudulent Concealment.        15

        B.      Plaintiffs Allege Violations of the UCL's "Unfair" Prong.................................. 16

        C.      Plaintiffs Are Entitled to Equitable Relief. ............................................. 17

                1.      Colgate's Revised Packaging Does Not Cure Its Deceptive "Recyclable Tube" Claims.        17

                2.      Plaintiffs Have Standing to Sue Under *Davidson.*        20

        D.      Plaintiffs Object to Colgate's Improper Abuse of the Judicial Notice and Incorporation-By-Reference Doctrines................................23

        E.      If The Court Is Inclined to Grant Colgate's Motion to Dismiss in Any Respect, Plaintiffs Respectfully Request Leave to Amend. ................................25

V.      CONCLUSION................................................................................................25

# TABLE OF AUTHORITIES

## CASES

*Adarand Constructors v. Slater*, 528 U.S. 216 (2000)................................................ 17

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ........................................................................ 4

*Bates v. United Parcel Serv., Inc.*, 511 F.3d 974 (9th Cir. 2007) ............................... 20

*Bell Atlantic. Corp. v. Twombly*, 550 U.S. 544 (2007) ................................................. 4

*Bobo v. Optimum Nutrition, Inc.*, No. 14CV2408 BEN (KSC), 2015 U.S. Dist. LEXIS 187233 (S.D. Cal. Sep. 11, 2015). ........................................................................... 13

*Brown v. Hain Celestial Group, Inc.*, 913 F. Supp. 2d 881 (N.D. Cal. 2012) ............ 24

*Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.*, 83 Cal. Rptr. 2d 548 (Cal. 1999) .............. 16

*Cisco Sys. Inc. v. Link US, LLC*, No. 18-cv-07576-CRB, 2019 U.S. Dist. LEXIS 212028 (N.D. Cal. Dec. 6, 2019) ............................................................................... 2, 12

*City of Los Angeles v. Lyons*, 461 U.S. 95 (1983) ...................................................... 20

*Classic Foods Int'l Corp. v. Kettle Foods, Inc.*, 468 F. Supp. 2d 1181 (C.D. Cal. 2007) ......... 19

*Coal for a Sustainable Delta v. Fed. Emergency Mgmt. Agency*, 812 F. Supp. 2d 1089 (E.D. Cal. 2011) .................................................................................................... 25

*Colgan v. Leatherman Tool Group, Inc.* 135 Cal.App.4th 663 (Cal. Ct. App. 2006) ................. 5

*Collins v. eMachines, Inc.*, 134 Cal. Rptr. 3d 588 (Ct. App. 2011) ............................. 15

*Consumer Advocates v. Echostar Satellite Corp.*, 113 Cal. App. 4th 1351 (Cal. Ct. App. 2003) .................................................................................................................. 5

*Ctr. for Envtl. Law & Policy v. U.S. Bureau of Reclamation*, 655 F.3d 1000 (9th Cir. 2011) .............................................................................................................. 25

*Curtis v. 7-Eleven, Inc.*, No. 21-cv-6079, 2022 U.S. Dist. LEXIS 164850 (N.D. Ill. Sep. 13, 2022). .............................................................................................................. 10

*Daugherty v. Am. Honda Motor Co.*, 51 Cal. Rptr. 3d 118 (Ct. App. 2006) .............. 15

*Davidson v. Kimberly-Clark Corp.*, 76 F. Supp. 3d 964 (N.D. Cal. 2014) ................. 21

*Davidson v. Kimberly-Clark Corp.*, 873 F.3d 1103 (9th Cir. 2017) ............................. 2

*Dent v. Holder*, 627 F.3d 365 (9th Cir. 2010). .......................................................... 25

*Dentsply Int'l Inc. v. Dental Brands for Less LLC*, 2016 U.S. Dist. LEXIS 87345 (S.D.N.Y. July 5, 2016) ....................................................................................... 18

*DeSoto v. Yellow Freight Sys.*, 957 F.2d 655 (9th Cir. 1992).................................... 25

*Drum v. San Fernando Valley Bar Ass'n*, 106 Cal. Rptr. 3d 46 (Cal. Ct. App. 2010) .............. 16

*Fikre v. FBI*, 904 F.3d 1033 (9th Cir. 2018).......................................................... 17, 20

*Forest Guardians v. Johanns*, 450 F.3d 455 (9th Cir. 2006)...................................... 17

*Freeman v. Time, Inc.*, 68 F.3d 285 (9th Cir. 1995) ................................................... 5

*Friedman v. AARP, Inc.*, 855 F.3d 1047 (9th Cir. 2017) ............................................. 6

*Garcia v. Sony Comput. Entm't Am., LLC*, 859 F. Supp. 2d 1056 (N.D. Cal. 2012)............... 14

*Ham v. Hain Celestial Grp., Inc.*, 70 F. Supp. 3d 1188 (N.D. Cal. 2014)..................... 5

*Hanscom v. Reynolds Consumer Prods. LLC ("Hanscom I")*, No. 21-cv-03434-JSW

ii

(N.D. Cal. Oct. 1, 2021) ................................................................................... 5

*Hanscom v. Reynolds Consumer Prods. LLC ("Hanscom II")*, No. 21-cv-03434-JSW, 2022 U.S. Dist. LEXIS 148214 (N.D. Cal. Aug. 18, 2022) ............................... 21

*Hernandez v. Radio Sys. Corp.*, No. EDCV221861JGBKKX, 2023 WL 4291829 (C.D. Cal. May 10, 2023) .................................................................................... 12

*Hodsdon v. Mars, Inc.*, 891 F.3d 857 (9th Cir. 2018) .......................................... 15

*Klein v. Chevron U.S.A., Inc.*, 137 Cal. Rptr. 3d 293 (Cal. Ct. App. 2012) ............... 6

*Lilly v. Jamba Juice Co.*, No. 13-cv-02998-JT, 2015 U.S. Dist. LEXIS 34498, 2015 WL 1248027 (N.D. Cal. Mar. 18, 2015) ................................................................ 20

*LiMandri v. Judkins*, 60 Cal. Rptr. 2d 539 (1997) .............................................. 15

*Lizama v. H&M Hennes & Mauritz LP*, No. 4:22 CV 1170 RWS, 2023 U.S. Dist. LEXIS 83704 (E.D. Mo. May 12, 2023) ...................................................................... 14

*Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992) .......................................... 20

*Mattero v. Costco Wholesale Corp.*, 336 F. Supp. 3d 1109 (N.D. Cal. 2018) ............. 5

*McKell v. Wash. Mut., Inc.*, 49 Cal. Rptr. 3d 227 (2006) ...................................... 17

*Mullins v. Premier Nutrition Corp.*, 178 F. Supp. 3d 867 (N.D. Cal. 2016) ............... 18

*Peterson v. Glad Prods. Co.*, No. 23-cv-00491-TSH, 2023 U.S. Dist. LEXIS 122885 (N.D. Cal. July 17, 2023) ................................................................................ 22

*Red v. Kraft Foods, Inc.*, No. CV 10-1028-GW(AGRx), 2012 U.S. Dist. LEXIS 164461 (C.D. Cal. Oct. 25, 2012) ................................................................................ 19

*Richardson v. L'Oreal USA, Inc.*, 991 F. Supp. 2d 181 (D.D.C. 2013) ...................... 20

*Ries v. Arizona Beverages USA LLC*, 287 F.R.D. 523 (N.D. Cal. 2012) .................... 20

*Rollins v. Dignity Health*, 338 F. Supp. 3d 1025 (N.D. Cal. 2018). ........................ 24

*Rosebrock v. Mathis*, 745 F.3d 963 (9th Cir. 2014) ....................................... 19, 20

*Rovai v. Select Portfolio Servicing, LLC*, No. 14-cv-1738-BAS-WVG, 2018 U.S. Dist. LEXIS 107764 (S.D. Cal. June 27, 2018) ............................................................ 17

*Rushing v. Williams-Sonoma, Inc.*, No. 16-cv-01421-WHO, 2016 U.S. Dist. LEXIS 108657 (N.D. Cal. Aug. 15, 2016) ................................................................... 15

*Rutledge v. Hewlett-Packard Co.*, 190 Cal. Rptr. 3d 411 (Cal. Ct. App. 2015) ......... 15

*Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393 (9th Cir. 1986) ....... 25

*Sinatro v. Barilla America, Inc.*, 635 F. Supp. 3d 858 (N.D. Cal. 2022) .................... 22

*Smith v. Keurig Green Mt., Inc. ("Smith I")*, 393 F. Supp. 3d 837 (N.D. Cal. 2019) ........ 5, 6

*Smith v. Keurig Green Mt., Inc. ("Smith II")*, No. 18-cv-06690-HSG, 2020 U.S. Dist. LEXIS 172826 (N.D. Cal. Sep. 21, 2020) ............................................................ 6

*Snarr v. HRB Tax Grp., Inc.*, 839 F. App'x 53 (9th Cir. 2020) ............................... 19

*Stewart v. Kodiak Cakes, LLC*, 537 F. Supp.3d 1003 (S.D. Cal. 2021) ............. 12, 13, 24

*Swartz v. Coca-Cola Co. (Swartz I)*, No. 21-cv-04643-JD, 2022 U.S. Dist. LEXIS 209641 (N.D. Cal. Nov. 18, 2022) ............................................................................... 9

*Swartz v. Coca-Cola Co. (Swartz II)*, No. 21-cv-04643-JD, 2023 U.S. Dist. LEXIS 130246 (N.D. Cal. July 27, 2023) ..................................................................... 6, 9

*Theranos, Inc. v. Fuisz Pharma LLC*, 876 F. Supp. 2d 1123 (N.D. Cal. 2012) ............. 4

iii

*Tsan v. Seventh Generation, Inc*, No. 15-cv-00205-JST, 2015 U.S. Dist. LEXIS 149042 (N.D. Cal. Nov. 3, 2015).................................................................................................24

*United States v. Corinthian Colleges*, 655 F.3d 984 (9th Cir. 2011)...........................4

*United States v. Ninety-Five Barrels More or Less Alleged Apple Cider Vinegar*, 265 U.S. 438 (1924)......................................................................................................11

*Usher v. City of Los Angeles*, 828 F.2d 556 (9th Cir.1987)..........................................4

*Walling v. Beverly Enters.*, 476 F.2d 393 (9th Cir.1973) ............................................4

*White v. Kroger Co.*, No. 21-cv-08004-RS, 2022 U.S. Dist. LEXIS 54273 (N.D. Cal. Mar. 25, 2022)..........................................................................................................6

*Williams v. Gerber Products Co.*, 552 F.3d 934 (9th Cir. 2008).....................2, 4, 12

## STATUTES

16 C.F.R. § 260.12(a)................................................................................................5, 8

16 C.F.R. § 260.12(a)(2) ..............................................................................................18

16 C.F.R. § 260.12(b)................................................................................................1, 8

16 C.F.R. § 260.12(b)(1)...........................................................................................6, 8

16 C.F.R. § 260.12(d)................................................................................................1, 9

Cal. Pub. Res. Code § 42355.5. ...................................................................................16

1

## I.       INTRODUCTION

2        The Federal Trade Commission ("FTC") Guides for the Use of Environmental Marketing Claims

3   (the "Green Guides"), which are incorporated into California law, provide express standards for when a

4   recycling claim is deceptive to reasonable consumers. It forbids the use of unqualified "Recyclable"

5   claims like Colgate's "Recyclable Tube" claim when "recycling facilities are [not] *available to a*

6   *substantial majority* **[defined as 60%]** *of consumers* or communities where the item is sold." 16 C.F.R. §

7   260.12(b) (emphasis added). Plaintiffs allege that there are ***no recycling programs for the Products***

8   available to consumers where the items are sold because (1) the Products cannot be effectively

9   distinguished from non-recyclable tubes and (2) the Products cannot be fully emptied, and the leftover

10  toothpaste contaminates the recyclable waste stream, which jeopardizes the recyclability of truly

11  recyclable materials. Thus, Colgate's "Recyclable Tube" representations are *per se* false.

12       Colgate argues for the application of its own definition of "Recyclable" that California law

13  expressly rejects. It believes that, even though there are no established recycling programs for the Products

14  available to consumers, the Court should dismiss Plaintiffs' First Amended Complaint ("FAC") because

15  the Products are theoretically or technically recyclable. However, the Green Guides provide that "an item

16  that is made from recyclable material, but, ***because of its shape size, or some other attribute***, is not

17  accepted in recycling programs, ***should not be marketed as recyclable***." 16 C.F.R. § 260.12(d). Here, the

18  shape of the Products is exactly what limits their recyclability. As Colgate concedes, the Products "look[]

19  and feel[]" identical to unrecyclable toothpaste tubes. ECF No. 30 ("Defs.' Mot.") at 8.[1] Thus—though the

20  products may be theoretically recyclable—in practice, recycling centers cannot effectively separate the

21  Products from non-recyclable waste. Additionally, the Products' shape prevents them from fully emptying

22  and the remnant toothpaste presents a contamination risk. Because of these issues, recycling programs

23  cannot recycle and refuse to accept the Products. Thus, California law unambiguously prohibits Colgate

24  from making its false "Recyclable Tube" representations.

25       Colgate also contends that that the information on its website, which it argues is incorporated by

26  reference into the packaging, cures its deceptive claims. This argument does not hold water. There is no

27

28  ───────────────────

[1] For ECF pin citations, Plaintiffs use the pagination electronically stamped in the header of the relevant
document.

incorporation-by-reference doctrine that applies to packaging. Additionally, it is well established that a product manufacturer cannot make deceptive claims on the front label of a product and print the truth of the product's recyclability on its website where consumers are unlikely to read it. *See Cisco Sys. Inc. v. Link US, LLC*, No. 18-cv-07576-CRB, 2019 U.S. Dist. LEXIS 212028, at *25 (N.D. Cal. Dec. 6, 2019) (citing *Williams v. Gerber Prods. Co.*, 552 F.3d 934, 939 (9th Cir. 2008)). Reasonable consumers do not engage in extensive online research when making a toothpaste purchase at the grocery store or pharmacy, nor are they expected to.

Finally, Colgate argues that Plaintiffs lack standing for injunctive relief. It first argues that Plaintiffs' claims are moot because it is implementing a disclosure that says "communit[ies] may not yet accept tubes for recycling." As an initial matter, it is well established that a defendant's voluntary actions after a lawsuit is filed do not moot injunctive relief. Moreover, this argument presumes that the new disclosure is adequate. It is not. The Green Guides expressly prohibit disclaimers that imply recyclability when a product is not actually recyclable. Colgate also argues that Plaintiffs lack Article III standing for injunctive relief because they know that the Products are not recyclable and cannot plausibly allege that they will be harmed again. This argument also fails. The instant facts are nearly identical to *Davidson v. Kimberly-Clark Corp.,* 873 F.3d 1103 (9th Cir. 2017), where the plaintiff maintained Article III standing for injunctive relief based on similar allegations—i.e., that she wished to purchase defendants' "flushable" wipes if they were truly flushable. Like in *Davidson*, Plaintiffs here continue to desire recyclable toothpaste tubes and will be unable to rely on Colgate's labeling in the future.

## II.    FACTUAL ALLEGATIONS

Throughout the class period, Colgate has uniformly marketed the Products as having a "Recyclable Tube" or "The First of Its Kind Recyclable Tube." FAC ¶ 19, 25.[2] This is false. The Products are not recyclable as that term is defined by California law or as reasonable consumers understand it because recycling programs for the Products are not available to a substantial majority of consumers where the Products are sold. *Id.* ¶ 3–4. Municipal programs in California and throughout the United States cannot

---

[2] This case involves various Colgate brand and Tom's of Maine brand toothpastes. FAC ¶¶ 1, 18. The claim "Recyclable Tube" and the universal recycling symbol are on the front-label of the Colgate Products. FAC ¶ 19. The phrase "The First of Its Kind Recyclable Tube" is on the back of the Tom's of Maine toothpaste products. *Id.* ¶ 24. Plaintiffs refer to both as the "Recyclable Tube" claim.

1  recycle and refuse to accept the Products because (1) they are unable to effectively distinguish between

2  Colgate's purportedly recyclable tubes and conventional toothpaste tubes which cannot be recycled, and

3  (2) the Products cannot be fully emptied, and the leftover toothpaste contaminates the recyclable waste

4  stream, which jeopardizes the recyclability of truly recyclable materials. *Id.* ¶ 4.

5       Colgate knows that the Products are not truly recyclable. *Id.* ¶ 6. Indeed, in a video regarding

6  the products, Colgate explains that it is "continu[ing] the work beyond technical recyclability of the tube,

7  ***towards acceptance*** of tubes in recycling systems globally." *Id.* In other words, Colgate has jumped the

8  gun, seeking to benefit from its newly developed tube before completing the work to ensure that the

9  Products are actually accepted by recycling facilities and thus, truly recyclable. Further, despite vague and

10  inconspicuous acknowledgments on its website, Colgate excludes information regarding the true

11  recyclability of the Products where consumers are likely to read it—on the Product itself.[3]

12       Plaintiffs purchased the Products numerous times, including between August 2022 and October

13  2022. *Id.* ¶¶ 57–59.[4] Plaintiffs read the claim "Recyclable Tube" on the Products and believed that the

14  Products were recyclable. *Id.* However, recycling facilities in their communities do not accept the

15  Products. *Id.* Had Plaintiffs known that the Products are not actually recyclable, they would not have

16  purchased them. *Id.* Plaintiffs continue to desire to purchase toothpaste with truly recyclable tubes from

17  Colgate. *Id.* ¶ 60. However, Plaintiffs are unable to determine at the point of sale if the Products are

18  actually recyclable and accepted by recycling centers. *Id.* As long as Colgate may use the phrase

19  "Recyclable Tube" to describe products that are not recyclable, then when presented with Colgate's

20  packaging, Plaintiffs continue to have no way of determining whether the representation "Recyclable

21  Tube" on the Products is in fact true and may purchase the Products again incorrectly believing that the

22

23  [3] Colgate relies on facts outside the pleadings to argue that its actions are laudable and that it is a
   champion for the environment for offering to share technology with its competitors. Defs.' Mot. at 8. Its
24  true motives are likely its realization that the "First of Its Kind Recyclable Tube" is useless unless other
   manufactures adopt the technology. Regardless, its actions do not justify its deceptive greenwashing.

25  [4] Plaintiff Gershzon purchased Colgate Total Toothpaste from the Safeway near his home in San
   Francisco, California on several occasions, including on or around August 2022. FAC ¶ 57. Plaintiff
26  Della purchased Colgate Total Toothpaste from the Walmart in Ridgecrest, California on or around
   October 2022. *Id.* ¶ 58.  Plaintiff Lienhard purchased Tom's of Maine Fluoride-Free Rapid Relief
27  Sensitive Toothpaste and Tom's of Maine Fluoride-Free Antiplaque and Whitening Toothpaste at the
   Walmart near her home in Arroyo Grande, California on several occasions, including on or around
28  August 2022. *Id.* ¶ 59.

Products are recyclable. *Id.* Plaintiffs are likely to be repeatedly presented with false or misleading information when shopping and will be unable to evaluate the different prices between Defendant's Products and competitors' Products and may refrain from purchasing the Products even though they would like to purchase them because they are unable to rely on Colgate's claims. *Id.*

Plaintiffs sued to stop Colgate's deceptive practices and allege five causes of action: (1) violation of the California Consumers Legal Remedies Act ("CLRA") (*id.* ¶¶ 70–79); (2) violation of the False Advertising Law ("FAL") (*id.* ¶¶ 80–90); (3) fraud, deceit, and/or misrepresentation (*id.* ¶¶ 91–99); (4) negligent misrepresentation (*id.* ¶¶ 100–107); and (5) violation of the Unfair Competition Law ("UCL") (*id.* ¶¶ 108–121).

## III.   LEGAL STANDARD

To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a complaint need only plead "enough facts to state a claim [for] relief that is plausible on its face." *Bell Atlantic. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *United States v. Corinthian Colleges*, 655 F.3d 984, 991 (9th Cir. 2011). "In determining whether sufficient facts are stated such that the claim is plausible, the court must presume all factual allegations are true and draw all reasonable inferences in favor of Plaintiff." *Theranos, Inc. v. Fuisz Pharma LLC*, 876 F. Supp. 2d 1123, 1136 (N.D. Cal. 2012) (citing *Twombly*, 550 U.S. at 570; *Iqbal*, 556 U.S. at 678; *Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir.1987)). Any existing ambiguities must be resolved in favor of the pleading. *Walling v. Beverly Enters.*, 476 F.2d 393, 396 (9th Cir. 1973).

## IV.   ARGUMENT

### A.  Plaintiffs Allege Deceptive and Unlawful Practices.

#### 1.   Colgate's "Recyclable Tube" Representations are *Per Se* Deceptive Under California Law.

To state a claim under California's UCL, FAL, and CLRA, a plaintiff need only plead that the defendant's actions, statements, and omissions were likely to deceive a reasonable consumer. *See, e.g.*,

*Williams*, 552 F.3d at 938 (holding that plaintiff need only "show that members of the public are likely to be deceived"); *Colgan v. Leatherman Tool Group, Inc.*, 135 Cal. App. 4th 663, 679 (Cal. Ct. App. 2006); *Consumer Advocates v. Echostar Satellite Corp.*, 113 Cal. App. 4th 1351 (Cal. Ct. App. 2003) (conduct that is "likely to mislead a reasonable consumer" violates the CLRA). "This standard also applies to common law fraud and negligent misrepresentation claims." *Ham v. Hain Celestial Grp., Inc.*, 70 F. Supp. 3d 1188, 1193 (N.D. Cal. 2014) (citing *Freeman v. Time, Inc.*, 68 F.3d 285, 289 (9th Cir. 1995)). "Whether a reasonable consumer would be deceived by a product label is generally a question of fact not amenable to determination on a motion to dismiss," although "in rare situations a court may determine, as a matter of law, that the alleged violations of the UCL, FAL, and CLRA are simply not plausible." *Id.* (citing *Freeman*, 68 F.3d at 289). This is not one of those "rare circumstances."

Here, Plaintiffs' deception claims are plausible. First, consumers, such as Plaintiffs, saw the claim "Recyclable Tube" on the labeling of the Products and reasonably understood that the Products were recyclable. *Id.* ¶¶ 57–59. However, municipal recycling programs where Plaintiffs live do not accept the Products for recycling. *Id*. Indeed, there are no recycling programs that are capable of recycling the Products in California where Plaintiffs purchased the Products. *Id.* ¶¶ 4, 43. Courts have routinely found similar allegations sufficient to plead an actionable misrepresentation. *See, e.g.*, *Smith v. Keurig Green Mt., Inc. ("Smith I")*, 393 F. Supp. 3d 837, 842 (N.D. Cal. 2019) (denying motion to dismiss where the plaintiff alleged that the defendant sold its single-use plastic polypropylene (#5) coffee pods with a "recyclable" claim even through existing recycling programs could not recycle the products due to their size and shape); *Hanscom v. Reynolds Consumer Prods. LLC ("Hanscom I")*, No. 21-cv-03434-JSW, at *9 (N.D. Cal. Oct. 1, 2021) (denying motion to dismiss where the plaintiff alleged that the "Recycling" claim on defendant's trash bags falsely communicated to reasonable consumers that the products were suitable for municipal recycling and were themselves recyclable); *Mattero v. Costco Wholesale Corp.*, 336 F. Supp. 3d 1109, 1117 (N.D. Cal. 2018) (denying motion to dismiss where plaintiff had alleged the defendant's labeling deceptively violated the Green Guides).

Indeed, Plaintiffs' theory of deception is not only plausible, it is deceptive as a matter of law. The Green Guides provide that "[i]t is deceptive to misrepresent directly or by implication, that a product or package is recyclable." 16 C.F.R. § 260.12(a). Further, it is presumptively deceptive to market a Product

as recyclable "[w]hen recycling facilities ***are [not] available*** to a substantial majority of consumers or communities where the item is sold." *Id.* § 260.12(b)(1) (emphasis added). "The term 'substantial majority,' as used in this context, means at least 60 percent." *Id.* These standards are binding and incorporated into California law through the Environmental Marketing Claims Act ("EMCA"). *White v. Kroger Co.*, No. 21-cv-08004-RS, 2022 U.S. Dist. LEXIS 54273, at *5 (N.D. Cal. Mar. 25, 2022) ("The California legislature codified the Green Guides."); *Swartz v. Coca-Cola Co. (Swartz II)*, No. 21-cv-04643-JD, 2023 U.S. Dist. LEXIS 130246, at *8 n.1 (N.D. Cal. July 27, 2023) (same).[5] Here, Plaintiffs' have alleged that there are no recycling programs available to the Plaintiffs or other consumers in California for the Products. FAC ¶¶ 4, 43, 48, 51–56. This is sufficient to allege a false recycling claim.

The present facts closely parallel *Smith I*. In that case*,* the plaintiffs alleged that the defendant's coffee pods were falsely and deceptively labeled as recyclable. *Smith I*, 393 F. Supp. 3d at 842. The pods were made of a polypropylene (#5), which is a material that is technically recyclable. *Id.* at 842 ("the purportedly 'recyclable' Pods are made from Polypropylene (#5) plastic—a material currently accepted for recycling in approximately 61% of U.S. communities"). However, like here, recycling facilities could not recycle the pods because their equipment was incapable of sorting the pods from unrecyclable materials. *Id.* at 842. Further, like here, the plaintiffs in *Smith* alleged that the products were not recyclable because of the contamination risk caused by the coffee grounds in the pods. *Id.* The court in *Smith*, consistent with the Green Guides, held that the claim was actionable and had the tendency to deceive

---

[5] Plaintiffs also assert a UCL "unlawful" prong claim predicated on Colgate's violation of the EMCA and Green Guides. Section 17200's "unlawful" prong "borrows violations of other laws and makes those unlawful practices actionable under the UCL." *Klein v. Chevron U.S.A., Inc.*, 137 Cal. Rptr. 3d 293, 326-27 (Cal. Ct. App. 2012) (internal quotation marks and ellipsis omitted). "Virtually any law or regulation—federal or state, statutory or common law—can serve as a predicate for a section 17200 'unlawful' violation." *Id.* (internal quotation marks and ellipsis omitted); *see also Friedman v. AARP, Inc.*, 855 F.3d 1047, 1052 (9th Cir. 2017) (same). Plaintiffs allege that Colgate's practices violate several statutory and regulatory provisions (*see, e.g.*, FAC ¶¶ 3, 44–53, 111), and therefore, they have adequately stated a claim under the unlawful prong of the UCL. More specifically, Plaintiffs allege that Colgate's practice of labeling the Products as "Recyclable" violates the CLRA; the FAL; the EMCA; and the Green Guides, including 16 C.F.R. §§ 260.2, 260.12(a), 260.12(b); 260.12(d), and Cal. Pub. Res. Code §§ 42355 and 42355.5.

1    consumers because, even though polypropylene (#5) is technically recyclable, the pods could not actually

2    be recycled by established recycling programs. *Id.* at 847.[6]

3          *Hanscom I* is also on point. In that case, the plaintiffs alleged that the defendant's trash bags were

4    deceptively labeled as "Recycling Bags" which led reasonable consumers to believe that the products

5    were recyclable and suitable for recycling. *Hanscom I*, No. 4:21-cv-03434, ECF No. 41 at 1–2. The

6    products were similarly alleged to be unrecyclable even though they were made of LDPE plastic film,

7    which is theoretically recyclable but non-recyclable in practice. *Id*. The plaintiffs also alleged that the

8    products were classified as a contaminant and were banned by recycling programs because they easily

9    get caught in machinery and actively undermine the recycling process. *Id.* Here, Plaintiffs have similarly

10   alleged that the Products are a contaminant because they contain significant amounts of leftover

11   toothpaste. FAC ¶¶ 4, 35–40. The court, applying sections 260.12(a) and 260(d) held that "Plaintiff has

12   plausibly alleged that the recycling claim is prohibited under the FTC's Green Guides." *Hanscom I*, No.

13   4:21-cv-03434, ECF No. 41 at 12–15.

14         Here, just like in *Smith I* and *Hanscom I*, Plaintiffs allege that the Products in question are not

15   recyclable because they fail to comply with the Green Guides' requirements that established program be

16   available to consumers that actually recycle the Products. Specifically, Plaintiffs allege that Colgate

17   markets the products with the claim "Recyclable Tube," "First of Its Kind Recyclable Tube" and the

18   universal recycling symbol (FAC ¶¶ 1, 19–25), which reasonable consumers understand to mean that the

19   Products are recyclable. *Id.* ¶ 3. However, the Products cannot be recycled because municipal recycling

20   facilities (1) are unable to effectively distinguish or sort Colgate's purportedly recyclable tubes from

21   conventional toothpaste tubes which cannot be recycled, and (2) the Products cannot be fully emptied, and

22   the leftover toothpaste contaminates the recyclable waste stream, which makes the Products unrecyclable

---

[6] The case was later certified for class treatment. *Smith v. Keurig Green Mt., Inc. ("Smith II")*, No. 18-cv-06690-HSG, 2020 U.S. Dist. LEXIS 172826, at *35 (N.D. Cal. Sep. 21, 2020).

and jeopardizes the recyclability of truly recyclable materials. *Id.* ¶¶ 4, 31–43. As a result, there are no recycling facilities that accept or recycle the Products in California. *Id.* ¶ 43.

### 2.      California Law Expressly Rejects Colgate's Proposed Definition of "Recyclable" Based On Intrinsic or Theoretical Recyclability.

Despite *Smith I* and *Hanscom I*, Colgate argues for the application of its own standard of recyclability based on the fact that the Products are theoretically or intrinsically recyclable, tacitly conceding that the substantial majority of recycling programs in California do not accept the Products. Further, they argue the Products are intrinsically recyclable because the Products are made of HDPE (#2) plastic, which, in certain, circumstances, can be recycled. California law explicitly rejects each of these definitions.

The Green Guides provide that a product is "Recyclable" when "it ***can be*** collected, separated, or otherwise recovered from the waste stream ***through an established recycling program for reuse*** or use in manufacturing or assembling another item."16 C.F.R. § 260.12(a) (emphasis added). The word "can" must be read in conjunction with the language "through an established program for reuse." It is not enough that a product ***theoretically*** can be recycled as Colgate argues; it must be capable of being recycled ***by an established recycling program*** (i.e., a non-theoretical program). Indeed, the FTC explicitly affirmed this standard when it interpreted section 260.12(a) in the FTC Green Guides Statement of Basis and Purpose: "[t]o make a non-deceptive unqualified claim, a marketer should substantiate that a substantial majority of consumers or communities have access to facilities ***that will actually recycle***, not accept and ultimately discard, the product." (Emphasis added.) In sum, a material is recyclable only if established programs will actually be able to recycle the product in question. Specifically, recycling facilities that actually recycle the Products must be available to a substantial majority (defined as 60%) of communities or consumers where the Products are sold. 16 C.F.R. § 260.12(b)(1). This is because the recyclability of a product is tied to the existence of infrastructure. For a consumer to be able to recycle a product, and thus, a defendant be able to make a recyclable claim, there must be established infrastructure that enables that process.

Applying a strictly theoretical definition of recyclability in § 260.12(a), based on the technical recyclability of a product, would also render the "substantial majority" language in § 260.12(b)(1) void, which violates first principles of statutory construction. *See* 16 C.F.R. § 260.12(b)(1) ("When recycling

facilities are available to a substantial majority of consumers or communities where the item is sold, marketers can make unqualified recyclable claims. The term 'substantial majority,' as used in this context, means at least 60 percent"). If section 260.12(a) is interpreted to be a purely theoretical standard, then the question of whether a product is "recyclable" would be binary. Either programs are 100% available to all consumers because the products are theoretically recyclable or they are 0% available to consumers because it is impossible to recycle the products. The Green Guides clearly do not endorse a binary standard because the substantial majority standard contemplates situations where a Product can be technically recyclable, but only 45% of consumers have access to facilities that actually recycle the item.

Indeed, the Green Guides directly address, and reject, Colgate's argument about intrinsic recyclability, when they state that "[a]n item that is made from recyclable material, but, because of its shape, size, or some other attribute, is not accepted in recycling programs, s***hould not be marketed as recyclable***." 16 C.F.R. § 260.12(d).   As discussed above, this was exactly the situation in *Smith I*. Applying this standard, the court in *Smith I* held that the defendant's recyclable pod claims were deceptive. 393 F. Supp. at 946. Colgate attempts to preempt this argument, arguing that the size and shape of the Products are not at issue. Defs.' Mot. at 30. However, that is false. It is because of the unique shape and attributes of the Product that it is not recyclable. The Products are shaped like and resemble unrecyclable toothpaste tubes. FAC ¶ 31–35. Further, because of the tube shape, the Products cannot be fully emptied or properly cleaned and contaminate the waste stream. *Id.* ¶ 39. And even if it were not the "size" or "shape" of the products that prevented actual recyclability, § 260.12(d) applies to any "other attribute" that results in a product not being "accepted in recycling programs." Thus, regardless of the fact that the Products are made from HDPE (#2) plastic, they cannot be labeled as "Recyclable."

Colgate also spends considerable time arguing for the application of *Swartz v. Coca-Cola Co. (Swartz I)*, No. 21-cv-04643-JD, 2022 U.S. Dist. LEXIS 209641, at *2 (N.D. Cal. Nov. 18, 2022). Defs.' Mot. at 20. *Swartz* involved plastic water bottles that the plaintiffs alleged were falsely labeled as "100% Recyclable." *Id.* The plaintiffs alleged that a total of 28% of each bottle (including the labels and caps) could not be recycled. *Swartz II*, No. 21-cv-04643-JD, 2023 U.S. Dist. LEXIS 130246, at *9. The plaintiffs conceded in that case that the bottles met the definition of recyclable under the Green Guides. *Id.* at *11. Therefore, the question was whether the addition of the "100%" caused the defendants'

1   "Recyclable" claim to become deceptive. *Id.* The court in *Swartz* acknowledged that the Green Guides

2   turned on whether a product "can be recycled by [an] existing recycling program." *Swartz I*, No. 21-cv-

3   04643-JD, 2022 U.S. Dist. LEXIS 209641, at *4. However, they are silent on the use of the language

4   "100%." As Colgate points out, however, the court dismissed the SAC because the plaintiffs had not

5   pleaded enough facts to plausibly support that the labels and cap were not actually being recycled by

6   recycling facilities in California. *Swartz II.*, No. 21-cv-04643-JD, 2023 U.S. Dist. LEXIS 130246, at *8.

7   Here that is not the case. Plaintiffs provide specific facts regarding why the Products cannot be recycled.

8   That is, because the Products look identical to non-recyclable items and cannot be effectively

9   distinguished and the Products are unrecyclable contaminant. FAC ¶¶ 4, 31–43. The plausibility of these

10  facts is supported by a Bloomberg article (*id.* ¶ 5), quotes from representatives of the two largest waste

11  management companies in the country (id. ¶¶ 5, 40), a nonprofit database of recycling programs (*id.* ¶

12  43), the recycling website San Francisco and the websites of Republic and Waste Management (id. ¶ 36–

13  37, 43), and Colgate's own admissions that it is "continu[ing] the work beyond technical recyclability"

14  and that "that acceptance [of the Products] may still be limited." (*id.* ¶ 6, 42). Plaintiffs' pleadings are

15  detailed, well supported, and easily meet Rule 8's plausibility standard.

16      Colgate also cites *Curtis v. 7-Eleven, Inc.*, No. 21-cv-6079, 2022 U.S. Dist. LEXIS 164850, at *1

17  (N.D. Ill. Sep. 13, 2022). Defs.' Mot. at 21. This case is easily distinguished. First, the case was brought

18  by an Illinois plaintiff under Illinois law. *Id.* at *10. In Illinois, the Green Guides do not have the weight

19  of law and are merely persuasive. *Id.* at *44 n.4. The plaintiffs argued that the products at issue were not

20  recyclable, because recycling programs for the products were not available to a substantial majority of

21  consumers where the products were sold. *Id.* at *7–8. The court ruled that plaintiff's allegations, which

22  were consistent with the Green Guides, were not plausible because "recyclable" means "capable of being

23  recycled."[7] The court did not dispute that the FTC rejects a definition of recyclability based on theoretical

24  recyclability. Rather, it reasoned that the Green Guides were not helpful to the plaintiffs because

25  reasonable consumers do not have the Green Guides at their fingertips when shopping at a convenience

---

[7] Plaintiffs note that they allege that consumers are not ***capable*** of recycling the products because the infrastructure does not exist—i.e., there are no established municipal programs for the products available to consumers. The intrinsic recyclability standard is untenable because almost all items are theoretically recyclable and the word would lose its meaning.

1    store. *Id.* at *44. This is specious reasoning. Although reasonable consumers are not necessarily aware

2    of the exact standards contained in the Green Guides, the FTC has determined that, in its expertise,

3    reasonable consumers expect that there is a 60% or greater chance that a product labeled as "recyclable"

4    can be recycled by their local recycling program (i.e, more probable than not). *See* 16 C.F.R. § 260.1

5    (explaining that the Green Guides provide the "Commission's view on how reasonable consumers likely

6    interpret certain claims."). Even if the Green Guides are not mandatory in Illinois, *Curtis* was wrongly

7    decided because the court effectively held, as a matter of law, that no reasonable consumer could

8    understand "recyclable" in the manner expressed by the FTC in the Green Guides. At minimum, the

9    plaintiff's allegations regarding how reasonable consumers understood the recyclable claims were

10   plausibly supported by the Green Guides and this should have created a question for the trier of fact. In

11   any case, here, Colgate does not dispute that under California law, the Green Guides have the weight of

12   law and, thus, this Court cannot deviate from them. Defs.' Mot. at 19.[8]

13           Colgate also cites *Swartz* and *Curtis* because they hold that whether a product is recyclable or not

14   is "tied to forces and circumstances well beyond defendants' control," suggesting that Colgate should not

15   be held responsible for its deceptive representations for equitable reasons. ECF 30 at 22. Colgate's

16   labeling, which is what Plaintiffs' claims challenge, is ***completely within Colgate's own control***. A green

17   claim such as "Recyclable" is something that benefits marketers by increasing the appeal of a product.

18   As such, if marketers decide to make a "Recyclable" claim, California law and the Green Guides

19   expressly place the responsibility on the marketers to ensure that the claim is truthful. *See*, *e.g.*, 16 C.F.R.

20   § 260.2 ("Marketers must ensure that all reasonable interpretations of their claims are truthful, not

21   misleading, and supported by a reasonable basis before they make the claims."). In doing so, they must

22   take the state of recycling as it is, not how they might like it to be. Thus, if, as here, established recycling

23   programs in California are not actually capable of recycling a Product, then marketers cannot claim the

24   product is "Recyclable" even though they exercise no control over the recycling process itself. As the

25

26   [8] In *Curtis*, the court did not dispute that the Green Guides require that recycling programs that actually the products must be available to 60% or more of communities where the products are sold. Rather, it just rejected that definition of recyclability. In other words, the  decision does not provide support for Colgate's view of how the Green Guides should be interpreted.

27

28

Supreme Court has long-recognized, "It is not difficult to choose statements, designs, and devices which will not deceive." *See United States v. Ninety-Five Barrels More or Less Alleged Apple Cider Vinegar*, 265 U.S. 438, 443 (1924). Colgate should have chosen a marketing claim here that would not deceive. Instead, it made misleading claims. It can be held liable for those claims.[9]

### 3. Colgate's Website Disclosures Do Not Cure Its Misrepresentations.

Colgate spends a considerable portion of its brief arguing that statements such "learn more about our Recyclable Tube at colgate.com/goodness [or tomsofmaine.com]" on the Products effectively disclaim its "Recyclable Tube" representations. This argument is absurd. It is manifestly unreasonable that a consumer would see Colgate's unambiguous "Recyclable Tube" claim, see the fine-print reference to "learn more" at colgate.com/goodness, visit the website on his or her smart phone while standing in a grocery store aisle, and then review the entire website to verify that the "Recyclable Tube" claim is true.[10] Courts in this Circuit invariably reject similar arguments. For example, in *Williams*, the Ninth Circuit held that "reasonable consumers should [not] be expected to look beyond misleading representations on the front of the box to discover the truth from the ingredient list in small print on the side of the box." 552 F.3d at 939–40. Indeed, the present facts are far worse than in *Williams* because the truth is not even printed on the box; all that Colgate provides is a web address. *See also Hernandez v. Radio Sys. Corp.*, No. EDCV221861JGBKKX, 2023 WL 4291829, at *8 (C.D. Cal. May 10, 2023) (holding that reasonable consumers would not have read—nor should they have been expected to read—the totality of the

---

[9] Colgate also argues that its action were necessary and that Cal. Pub. Res. Code § 42061(a)(3)(B) empowers the California Department of Resources Recycling and Recovery to provide an exemption from the substantial majority standard for products that are trending toward acceptance by 60% recycling facilities. Colgate has received no such exemption from the California Department of Resources and Recycling and Recovery. Further, the Products are nowhere near meeting the substantial majority standard. It cannot unilaterally grant itself one in violation of California law.

[10] Notably, the webpage addresses for the FAQs that Colgate offers as evidence that it effectively disclaimed its "Recyclable Tube" claims through its website do not match the webpage addresses that it prints on its packaging. *See* ECF Nos. 31-5 (www.colgate.com/en-us/power-of-optimism/faq), 31-6 (https://www.colgate.com/en-us/our-mission/sustainability/faq), 31-10 (www.tomsofmaine.com/our-promise/caring-for-the-planet/recyclable-tube), 31-11 (same). This means a consumer would have to thoroughly scour multiple pages of Colgate's website to find the FAQs and the disclosures. These disclaimers were intentionally difficult to find and do not cure Colgate's false representations.

1   defendant's website and online product manuals prior to purchasing the product in a store); *Cisco Sys. Inc.*,

2   No. 18-cv-07576-CRB, 2019 U.S. Dist. LEXIS 212028, at *25 (same).

3         Colgate argues that if a marketer prints its website anywhere on a Product label, the entire website

4   is incorporated by reference into the label. Defs.' Mot. at 24. Although a document can be incorporated

5   by reference into a complaint in certain situations, there is no such thing as incorporation-by-reference of

6   a website into a product label. That is, there is no legal presumption that a consumer is on notice of

7   everything written on a marketer's website if the marketer prints its URL on a product. Colgate

8   misleadingly cites *Stewart v. Kodiak Cakes, LLC,* 537 F. Supp.3d 1003, 1120 (S.D. Cal. 2021) to support

9   its argument. The portion of *Stewart* that Colgate quotes is a discussion regarding whether particular

10   labels were incorporated by reference by the plaintiff's complaint. *Id*. In making its decision, the court in

11   *Stewart* noted that the defendant provided the specific web addresses where they had downloaded each of

12   the labels they sought to admit—i.e., the source of the labels. *Id.* Although the court imprecisely says that

13   the "labels have the links to their respective product pages on Defendant's website," a close inspection of

14   the docket and the exhibits in question shows that the defendant wrote in the product page links on the

15   exhibit sheets. *Id.*; *see also*, *e.g.*, *Stewart v. Kodiak Cakes, LLC*, No. 19-cv-2454-MMA (MSB) (S.D.

16   Cal.), ECF Nos. 44-4 at 1 (product page link written in below the proffered label), 44-5 at 1 (same). The

17   court's decision was based on the fact that the source of the labels was not reasonably in dispute. *Stewart,*

18   537 F. Supp. 3d at 1120 ("Plaintiffs do not genuinely dispute the accurately or authenticity of labels

19   found on Defendants website."). Additionally, and separately, the court noted that the labels printed from

20   the defendant's website were suitable for incorporation-by-reference because the "Plaintiffs refer

21   extensively to Defendant's online advertising, and online advertising forms a basis of their claims." *Id.* at

22   1122. None of this supports Colgate's argument that disclosures made on its website are incorporated

23   into the product's label by reference.

24         Next, Colgate suggests that "learn more" language on the Products is qualifying language. Defs.'

25   Mot. at 24. However, nothing in this language is qualifying because it does not alert consumers that they

26   would find additional information on Colgate's website that in any way limits its unambiguous front-

27   label claim. This contrasts with the cases that Colgate cites such as *Bobo v. Optimum Nutrition, Inc.*, No.

28   14CV2408 BEN (KSC), 2015 U.S. Dist. LEXIS 187233, at *10 (S.D. Cal. Sep. 11, 2015). *Bobo*

1    concerned a product that was labeled as having "100% Whey." *Id.* The plaintiff alleged that reasonable

2    consumers understood this to mean that the product was "100% Whey" protein. *Id.* However, this was

3    false because the product included artificial flavors and sweeteners that were not whey protein. *Id.* at *3.

4    The court held that the label was not deceptive because the front label also included the language

5    "DOUBLE RICH CHOCOLATE" flavored and "100% OF THE PROTEIN FROM WHEY." *Id.* at *10.

6    This clarified that the "100% WHEY" did not mean that there was no other ingredients in the product

7    because there were clearly additional flavors in the product, such as chocolate. *Id.* Here, the language

8    "learn more" does not provide any qualification regarding the "Recyclable" claim. It merely provides that

9    a consumer can find more information about the "Recyclable Tube" on Colgate's website if he or she

10   would like to learn more. Most consumers reasonably do not choose to learn more about the claim

11   because have no reason to doubt Colgate's unambiguous "Recyclable" claim. [11]

12       Finally, *Lizama v. H&M Hennes & Mauritz LP*, No. 4:22 CV 1170 RWS, 2023 U.S. Dist. LEXIS

13   83704, at *1 (E.D. Mo. May 12, 2023) also misses the mark. This Missouri case was regarding a line of

14   clothes that the defendant labeled as its "conscious choice" brand. *Lizama*, No. 4:22 CV 1170 RWS, 2023

15   U.S. Dist. LEXIS 83704, at *1. The plaintiffs ***alleged that they visited the defendant's website*** to learn

16   about the "conscious choice" line of products. *Id.* at *9. Indeed, their deceptive practices claims were

17   largely predicated on purported misrepresentations on the website. *Id.* The plaintiffs alleged that the

18   defendant violated the Green Guides, which prohibit marketers from making "unqualified general

19   environmental benefit claims" without "clear and prominent qualifying language that limits the claim to

20   a specific benefit or benefits." *Id.* at *22. (quoting 16 C.F.R. §§ 260.3(c), 260.4(b)). However, the court

21

22   _____

     [11] *Garcia v. Sony Comput. Entm't Am., LLC*, 859 F. Supp. 2d 1056 (N.D. Cal. 2012) is also inapposite. In

23   that case, the plaintiff alleged that the Sony PlayStation 3 was falsely advertised as capable of operating

     any PlayStation 3 games. *Id.* at 1059. The PlayStation 3 package expressly included a statement

24   regarding "Compatible Software/Media" and that included an asterisk that directed consumers "[s]ee the

     product documentation for details." *Id.* at 1060. The court held that the PlayStation did not include any

25   provably false statement regarding the system's compatibility. *Id.* The court also noted that the plaintiff

     had failed to plead what the "documentation" referenced in the statement said. *Id.* The court did not hold

26   one way or another whether that disclaimer could have cured an affirmative false representation if there

     had been one. *Id.* Notably, a major difference between *Garcia* and the present facts is that the statement

27   regarding the compatible software was clearly incomplete and alerted consumers where they could find

     detailed information regarding compatible software. Here, by contrast, Colgate's language "Recyclable

28   Tube" is absolute, unambiguous, and complete.

determined that website representations were properly qualified. *Id.* at \*22. This is distinguishable from the present circumstances for several reasons: (1) Plaintiffs' claims are not predicated on Colgate's website representations, (2) Plaintiffs do not allege that they visited Colgate's website and were not expected to visit Colgate's website to research if the unambiguous "Recyclable Tube" claims was true or false, and (3) *Lizama* involved different provisions of the Green Guides. Plaintiffs also note that *Lizama* was decided in the 8th Circuit, which is not bound by the mandatory precedent in *Williams.*

### 4.  Plaintiffs Also Allege Fraudulent Concealment.

Plaintiffs adequately allege that Colgate fraudulently concealed material information regarding the Products' true recyclability. "[T]o be actionable [an] omission must be contrary to a representation actually made by the defendant, ***or*** an omission of a fact the defendant was obliged to disclose." *Daugherty v. Am. Honda Motor Co.*, 51 Cal. Rptr. 3d 118, 126 (Ct. App. 2006) (emphasis added).[12]

Plaintiffs allege that Colgate's omissions are contrary to representations it actually made. *See* FAC ¶¶ 82, 92, 96, 101, 121. Colgate affirmatively states that the Products have a "Recyclable Tube." *Id.* ¶¶ 1, 19–25. However, contrary to that assertion, Colgate fails to disclose that the Products "contaminate[] the recyclable waste stream, which makes the Products unrecyclable and jeopardizes the recyclability of truly recyclable materials." *Id.* ¶¶ 4–5, 33–43. This alone is sufficient to plead fraudulent concealment even if the omission does not relate to the Product's central function. *See, e.g., Rushing v. Williams-Sonoma, Inc.*, No. 16-cv-01421-WHO, 2016 U.S. Dist. LEXIS 108657, at \*21 (N.D. Cal. Aug. 15, 2016) (denying motion to dismiss with regard to omissions based on contrary representation when the defendant prominently stated a thread count but failed to disclose that actual thread counts were contrary to their

---

[12] An obligation to disclose arises when "the omission was material," the omission relates to a fact that is "central to the product's function," and "one of the four *LiMandri* factors" applies. *Hodson v. Mars, Inc.*, 891 F.3d 857, 863 (9th Cir. 2018) (citing *Collins v. eMachines, Inc.*, 134 Cal. Rptr. 3d 588, 593-95 (Ct. App. 2011)). The *LiMandri* factors provide that an omission is actionable, based an obligation to disclose, in four circumstances: (1) when the defendant is the plaintiff's fiduciary; (2) when the defendant has exclusive knowledge of material facts not known or reasonably accessible to the plaintiff; (3) when the defendant actively conceals a material fact from the plaintiff; and (4) when the defendant makes partial representations that are misleading because some other material fact has not been disclosed. *Collins*, 134 Cal. Rptr. 3d at 593 (citing *LiMandri v. Judkins*, 60 Cal. Rptr. 2d 539, 543 (1997)). Because, Plaintiffs' deceptive omission claims are based on Colgate's contrary assertions, the question of whether the omission relates to a fact that is "central to the product's function" and/or whether the *LiMandri* factors apply is irrelevant.

1  representations); *Rutledge v. Hewlett-Packard Co.*, 190 Cal. Rptr. 3d 411, 421 (Cal. Ct. App. 2015)

2  (defendant's press releases and advertising stating that its laptops fall within defendant's tradition of

3  "reliable, manageable, stable, secure and expandable products" were sufficiently contradictory to create a

4  triable issue of fact as to whether it had a duty to disclose that its screens were defective).

**B.  Plaintiffs Allege Violations of the UCL's "Unfair" Prong.**

6       There are three tests a court can use to evaluate whether a practice is "unfair": (1) the "tethering

7  test," which asks whether the practice violates public policy "tethered to specific constitutional, statutory,

8  or regulatory provisions;" (2) the "balancing test" which asks whether the alleged practice is immoral,

9  unethical, oppressive, unscrupulous, or substantially injurious to consumers and requires the court to

10  weigh the utility of a defendant's conduct against the gravity of the harm to the alleged victim; and (3) the

11  "FTC test," which holds that a practice is unfair if (a) the consumer injury is substantial, (b) it is not

12  outweighed by any countervailing benefits, and (c) consumers could not reasonably have avoided the

13  injury. *See Drum v. San Fernando Valley Bar Ass'n*, 106 Cal. Rptr. 3d 46, 53–54 (Cal. Ct. App. 2010)

14  (articulating the three possible tests for determining whether a practice is "unfair"). Plaintiffs have

15  adequately alleged that Colgate's practice of marketing the Products as having a "Recyclable Tube," while

16  omitting material information regarding the Products' true recyclability, constitutes "unfair" trade practice

17  under each of these tests.

18       First, under the "tethering test," there must be a "nexus" between the challenged act and some

19  legislative policy. *Cel-Tech Comm'ns, Inc. v. L.A. Cellular Tel. Co.*, 83 Cal. Rptr. 2d 548, 544 (Cal. 1999)

20  (holding that for an act to be "unfair," it must "threaten[]" a violation of law or "violate[] the policy or

21  spirit of one of those laws because its effects are comparable to or the same as a violation of the law").

22  Here, there is a clear nexus between Colgate's deceptive claims and omissions regarding the recyclability

23  of the Products and California's policy in favor of reducing plastic waste because the practice directly

24  contributes to the accumulation of waste in landfills. *See* FAC ¶ 44 (citing Cal. Pub. Res. Code § 42355.5,

25  which states that "littered plastic products have caused and continue to cause significant environmental

26  harm and have burdened local governments with significant environmental cleanup costs."). This nexus is

27  sufficient to support an unfairness claim. Second, Plaintiffs have also cited authority showing that it is

28  "the public policy of the state that environmental marketing claims, whether explicit or implied, should be

16

substantiated by competent and reliable evidence to prevent deceiving or misleading consumers about the environmental impact of plastic products." *See* Cal. Pub. Res. Code § 42355.5. Here, the challenged act—Colgate's failure to possess substantiation of its claims—directly violates an express and written public policy and has caused injury to Plaintiffs. This is sufficient to show a nexus between the challenged act and the legislative policy and satisfies the "tethering test."

Plaintiffs also allege violations of the UCL's "unfair" prong pursuant to the balancing test and FTC test. Pursuant to the balancing test, Colgate unethically and unscrupulously represents to consumers that the Products have a "Recyclable Tube" and omits information that the Products contaminate the recyclable waste stream. This outweighs the utility of the practice because there is no utility in allowing Colgate to make a false claim. Plaintiffs also adequately pleads an "unfair" violation under the FTC test because (1) the consumer injury in the aggregate is substantial, (2) there is no benefit to allowing Colgate to sell the Products with an unnecessary and false "Recyclable Tube" claim, and (3) consumers could not have avoided the injury because Colgate does not clearly state on the packaging that the Products are not actually recyclable. Further, under any test, whether a practice is unfair, "is one of fact which requires a review of the evidence" and "thus cannot usually be" determined on the pleadings. *McKell v. Wash. Mut., Inc.*, 49 Cal. Rptr. 3d 227, 240 (2006); *see also Rovai v. Select Portfolio Servicing, LLC*, No. 14-cv-1738-BAS-WVG, 2018 U.S. Dist. LEXIS 107764, at *47 (S.D. Cal. June 27, 2018) ("The balancing test should not be a particularly difficult test to satisfy at the motion to dismiss stage").

### C. Plaintiffs Are Entitled to Equitable Relief.

#### 1. Colgate's Revised Packaging Does Not Cure Its Deceptive "Recyclable Tube" Claims.

Plaintiffs' request for injunctive relief is not moot. To establish mootness, the party asserting mootness bears the heavy burden of establishing that there is no effective relief that the court can provide. *Forest Guardians v. Johanns*, 450 F.3d 455, 461 (9th Cir. 2006). If a mootness challenge is based on a defendant's voluntary cessation of challenged conduct while the lawsuit is pending, then the defendant has the even heavier burden of establishing that "there is no reasonable expectation that the alleged violation will recur" and that "interim relief or events have completely and irrevocably eradicated the effects of the alleged violation." *Fikre v. FBI*, 904 F.3d 1033, 1037-41 (9th Cir. 2018); *see also Adarand*

1   *Constructors v. Slater*, 528 U.S. 216, 221-22 (2000) (the "heavy burden of persuading the court that the

2   challenged conduct cannot reasonably be expected to start up again lies with the party asserting

3   mootness"). Here, Colgate is unable to establish that Plaintiffs' claims for injunctive relief are moot

4   because (1) the disclaimer on Colgate's updated packaging is illegal and inadequate and (2) even it was

5   adequate, Colgate has not met its heavy evidentiary burden to prove that the label change is permanent.

6         Colgate argues that any claim Plaintiffs have for injunctive relief is mooted by the vague

7   disclosure that it is in the process of implementing on the Products, which advise consumers that their

8   "communit[ies] may not yet accept tubes for recycling." Defs.' Mot. at 29. These kinds of deceptive and

9   inadequate disclosures are discussed by the Green Guides and are ineffective where they do not clearly

10  and accurately disclaim the availability of recycling programs for a product. Specifically, the Green

11  Guides provide that "the lower the level of access to an appropriate facility, the more strongly the market

12  should emphasize the limited availability of recycling for the product." 16 C.F.R. § 260.12(a)(2). "For

13  example, if recycling facilities are available to ***slightly less than a substantial majority*** of consumers or

14  communities where the item is sold, a marketer may qualify a recyclable claim by stating: 'This product

15  [package] may not be recyclable in your area." *Id.* (emphasis added). Further, the Guides expressly state

16  that the disclaimer "[c]heck to see if recycling facilities exist in your area" would be deceptive on a

17  product that is marketed nationally if recycling programs for the product were only "available to some

18  consumers, but not available to a substantial majority of consumers nationwide." *Id.* § 260.12, example 4.

19  In other words, the Green Guides specifically state that disclosure like the one Colgate may be adding

20  ***would be*** okay if 55% of communities where the Products are sold had programs that recycle the

21  Products (i.e., slightly less than a substantial majority). However, here, that is not the case. Plaintiffs

22  allege that the products are completely unrecyclable because they contaminate the recyclable waste

23  stream and cannot be distinguished from non-recyclable toothpaste tubes and must be discarded. FAC ¶¶

24  4, 35, 38-42. Thus, this disclaimer is invalid because it improperly leads consumers to believe that the

25  Products are likely recyclable in their area ***when virtually no programs accept them for recycling***.

26        Further, even if the Court disagrees with the FTC Green Guides, whether a disclaimer adequately

27  cures a misrepresentation is a factual question unsuitable for determination on a motion to dismiss.

28  *Mullins v. Premier Nutrition Corp.*, 178 F. Supp. 3d 867, 892 (N.D. Cal. 2016) ("[A] jury should

1   typically review the package as a whole to evaluate the impact of the disclaimer."); *Dentsply Int'l Inc. v.*

2   *Dental Brands for Less LLC*, 2016 U.S. Dist. LEXIS 87345, at *6-7 (S.D.N.Y. July 5, 2016) ("the

3   efficacy of any disclaimer in preventing confusion is another factual dispute that cannot be resolved at

4   motion to dismiss.").

5        Colgate's citation to *Red v. Kraft Foods, Inc.*, No. CV 10-1028-GW(AGRx), 2012 U.S. Dist.

6   LEXIS 164461, at *1 (C.D. Cal. Oct. 25, 2012) is inapposite. In that case, the plaintiff's claims for

7   injunctive relief survived the motion to dismiss stage. *Id.* At class certification, Kraft agreed to be bound

8   by a court order that prevented it from reverting to its deceptive packaging. *Id.* at *12  ("The Court held

9   that if Kraft agreed to be bound by such an order, then the majority of Plaintiffs' class claims would be

10  moot upon the issuance of that order."). Here, Colgate has not similarly offered to be bound to a court

11  order to change their practices and, as explained above, their voluntary disclosure is illegal and

12  inadequate.

13       The facts of *Classic Foods Int'l Corp. v. Kettle Foods, Inc.*, 468 F. Supp. 2d 1181, 1182 (C.D.

14  Cal. 2007) are also easily distinguishable because that was a trademark infringement case, not a false

15  advertising case. In that case, the defendant filed a counterclaim for injunctive relief based on the fact

16  that the plaintiff's packaging was confusingly similar to its packaging in violation of its trademark. *Id.*

17  However, the defendant had recently introduced new packaging. *Id.* at 1196. The court explained that the

18  new packaging could not support a claim because, if the new packaging was similar to plaintiff's

19  packaging, it was because defendant had deliberately redesigned the packaged to be similar to the

20  plaintiff's packaging. *Id.* To the extent that defendant was asserting a claim for injunctive relief regarding

21  the similarity of its old packaging to the plaintiff's packaging, those claims were moot because the *party*

22  *asserting the claim for injunctive relief* had voluntary introduced new packaging. *Id.* That is not the case

23  here, because Colgate is the party defending the claim for injunctive relief, not asserting it.

24       Even if the Court were persuaded that Colgate's new disclaimer was adequate (which it is not), as

25  Colgate points out, the "voluntary cessation" doctrine also prevents the Court from dismissing Plaintiffs'

26  claims for injunctive relief as moot. Defs.' Mot. at 30. The voluntary cessation of challenged conduct

27  does not ordinarily render a case moot because a dismissal for mootness would permit a resumption of

28  the challenged conduct as soon as the case is dismissed. *Rosebrock v. Mathis*, 745 F.3d 963, 971 (9th Cir.

2014); *Snarr v. HRB Tax Grp., Inc.*, 839 F. App'x 53, 55 (9th Cir. 2020). The party asserting mootness bears a "heavy burden" in meeting a stringent standard: subsequent events must make it "absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur." *Rosebrock*, 745 F.3d at 971; *Fikre*, 904 F.3d at 1037-41 ("[V]oluntary cessation of allegedly illegal conduct does not deprive the tribunal of power to hear and determine the case unless it can be said with assurance that there is no reasonable expectation that the alleged violation will recur and interim relief or events have completely and irrevocably eradicated the effects of the alleged violation.") (internal quotation marks and alterations omitted). The party alleging mootness must submit evidence that makes it absolutely clear that the change in its behavior is "entrenched" or "permanent." *See Fikre*, 904 F.3d at 1037. Here, Colgate has offered no such evidence.

Colgate summarily states that it has implemented a new label and that this was not in response to this litigation or Plaintiffs' CLRA letter. However, even if Colgate's disclaimer were adequate (which it is not), the motivations behind the label change and whether Colgate might resume its illegal conduct is a factual question. Colgate's statements in its brief, unsupported by any evidence, are insufficient to meet its heavy evidentiary burden on this issue. Further, these factual questions are subject to discovery.

### 2.   Plaintiffs Have Standing to Sue Under *Davidson*.

To establish standing to seek injunctive relief, a plaintiff must "demonstrate that he has suffered or is threatened with a 'concrete and particularized' legal harm, coupled with a 'sufficient likelihood that he will again be wronged in a similar way.'" *Bates v. United Parcel Serv., Inc.*, 511 F.3d 974, 985 (9th Cir. 2007) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992); *City of Los Angeles v. Lyons*, 461 U.S. 95, 111 (1983)). "In some cases, the threat of future harm may be the consumer's plausible allegations that she will be unable to rely on the product's advertising or labeling in the future, and so will not purchase the product although she would like to." *Davidson*, 889 F.3d at 969-70 (citing *Ries v. Arizona Beverages USA LLC,* 287 F.R.D. 523, 533 (N.D. Cal. 2012); *Lilly v. Jamba Juice Co.*, No. 13-cv-02998-JT, 2015 U.S. Dist. LEXIS 34498, 2015 WL 1248027, at *4 (N.D. Cal. Mar. 18, 2015)). "In other cases, the threat of future harm may be the consumer's plausible allegations that she might purchase the product in the future, despite the fact it was once marred by false advertising or labeling, as she may reasonably, but incorrectly,

assume the product was improved." *Id.* (citing *Richardson v. L'Oreal USA, Inc.*, 991 F. Supp. 2d 181, 194-95 (D.D.C. 2013)).

Here, as *Davidson* requires, Plaintiffs allege a current and ongoing desire to purchase the Products. SAC ¶ 41 ("Plaintiffs continue to desire to purchase from Defendant toothpaste tubes that are truly recyclable as reasonable consumers understand the term."). And because Colgate has the ability to reengineer its Products at any point in time and/or recycling technology may improve, Plaintiffs have no way to know at the point of purchase whether Colgate has cured its false label or if it remains false. *Id.* Thus, (1) Plaintiffs will be unable to rely on Colgate's "Recyclable Tube" representations when purchasing the Products in the future, (2) they will be unable to compare prices when shopping for similar Products, and (3) they may purchase the same Product again believing that Colgate has reengineered its Product to be truly recyclable. This is the exact type of injury that *Davidson* recognized and that has been repeatedly affirmed as sufficient to confer standing in nearly every single recycling case in the Northern District. *Swartz II*, No. 21-cv-04643-JD, 2023 U.S. Dist. LEXIS 130246, at *5-6 (plaintiffs alleging that they were deceived by defendant's "100% Recyclable" claims had Article III standing for injunctive relief because they alleged that they continued to desire to purchase the Products and might purchase the products again believing that they had been reengineered to be truly recyclable); *Hanscom v. Reynolds Consumer Prods. LLC ("Hanscom II")*, No. 21-cv-03434-JSW, 2022 U.S. Dist. LEXIS 148214, at *5 (N.D. Cal. Aug. 18, 2022) (plaintiffs alleging that they had been deceived by the defendant's "Recycling" bag claims had standing because they alleged that they continued to desire to purchase the Products and might purchase the products again believing that they had been reengineered to be truly recyclable); *Peterson v. Glad Prod Co.*, No. 23-00491, WL 4600404 (N.D. Cal. July 17, 2023) (same).

Indeed, the circumstances in this case closely mirror those in *Davidson*. In *Davidson*, the plaintiff alleged that the defendants' "flushable" wipes were not flushable as advertised and that they caused clogs to municipal waste systems and sewers. 873 F.3d at 1110. Here, Plaintiffs allege that the Product is not "Recyclable" as advertised and is similarly incompatible with municipal recycling infrastructure because of the risk of contamination. FAC ¶¶ 38–43. In *Davidson*, as here, the defendants argued that because the plaintiff alleged in her complaint that that she had come to believe that that the wipes should not be flushed, she could never be deceived again, and that the possibility of reengineering the Product was merely

conjectural. The district court had adopted this same reasoning in its ruling. *See Davidson v. Kimberly-Clark Corp.*, 76 F. Supp. 3d 964, 969 (N.D. Cal. 2014). However, the Ninth Circuit overturned the district court's ruling, stating that the fact that the plaintiff wanted to purchase the product again and that she could not rely on the label's truthfulness was a sufficient informational injury to confer Article III standing. *See Davidson*, 873 F.3d at 1116 ("We hold that Davidson properly alleged that she faces a threat of imminent or actual harm by not being able to rely on Kimberly-Clark's labels in the future, and that this harm is sufficient to confer standing to seek injunctive relief.").

Despite the close factual similarities, Colgate contends that the current circumstances are distinguishable from *Davidson*, citing *Sinatro v. Barilla America, Inc.*, 635 F. Supp. 3d 858 (N.D. Cal. 2022). Defs.' Mot. at 31. *Sinatro* was a false advertising case regarding Barilla pasta, which the plaintiff alleged was deceptively labeled to make it appear as if it was imported from Italy. *Id.* at 865. The Court determined that the case was unlike *Davidson* because, now that the plaintiff knew that the pasta was not made in Italy it was unlikely that he would be deceived again. *Id.* at 874–75. However, a key distinction in *Sinatro* is that the Barilla pasta had a disclosure that it was made in "Made in the USA" on the box. *Id.* at 879. This fact matters because the plaintiff would be able to check the product, at the point of sale, to determine whether it was still "Made in USA." That is not the circumstance here because there is nothing **on the Products** that clarify whether the "Recyclable Tube" claim is true or false.

Although Colgate argues that Plaintiffs now know that their respective recycling facilities do not accept the Products, like in *Davidson*, the situation is changing. Just because the products are not accepted today, does not mean that they might not be accepted tomorrow. Indeed, that is what Colgate's marketing was intended to convey to consumers. That is, due to Colgate's engineering, the Products are now recyclable even though they previously were not. Colgate is attempting to shift the burden to the consumer to investigate at the point of sale whether the "Recyclable Tube" claims are true or not. However, that is not what the law requires. "Courts reject the notion that 'reasonable consumers engage in exhaustive research before purchasing items or [] that the reasonable consumer standard should require purchasers' to

1   do so." *Peterson v. Glad Prods. Co.*, No. 23-cv-00491-TSH, 2023 U.S. Dist. LEXIS 122885, at *10 (N.D.
2   Cal. July 17, 2023).

3   **D.  Plaintiffs Object to Colgate's Improper Abuse of the Judicial Notice and Incorporation-By-Reference Doctrines.**

5   Colgate's proffer of 16 exhibits in support of its motion to dismiss is the latest example of what the
6   Ninth Circuit has recently termed a "concerning pattern." *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d
7   988, 998 (9th Cir. 2018). Unhappy with its chances of defeating the complaint on its own terms, Colgate
8   "pile[s] on numerous documents to [its] motion to dismiss"  "to undermine the complaint, and hopefully
9   dismiss the case at an early stage." *Id.* The Ninth Circuit in *Khoja* clarified that there are two narrow
10  exceptions when a document may be considered on a motion to dismiss: the incorporation-by-reference
11  doctrine, and judicial notice under Federal Rule of Evidence 201. *Id.* Judicial notice under Rule 201 permits
12  a court to notice an adjudicative fact if it is "not subject to reasonable dispute." Fed. R. Evid. 201(b). A
13  fact is "not subject to reasonable dispute" if it is "generally known," or "can be accurately and readily
14  determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b)(1)–(2).
15  Incorporation-by-reference is a judicially created doctrine that treats certain documents as though they are
16  part of the complaint itself. *Khoja*, 899 F.3d at 1002. Plaintiffs object to Colgate's proffered exhibits as
17  follows:

18  • Exhibit 1 – Colgate attempts to incorporate by reference a copy of an article entitled
19  "Colgate's 9 Billion Toothpaste Tubes Defy Effort to Recyclable Them." In the FAC, Plaintiffs use this
20  article to provide evidence that Waste Management and Republic Services reject the Products. FAC ¶ 5,
21  35–36, 40, 42. Although Plaintiffs reference this article, this is not a document on which their complaint
22  necessarily relies. Rather, it corroborates their allegations that there are no established recycling programs
23  for the Products in California. In any event, even if the Court incorporates the article by reference, it should
24  not interpret the documents to contradict well pled factual allegations in the complaint. *Sgro v. Danone*
25  *Waters of N. Am. Inc.*, 532 F.3d 940, 943 n.1 (9th Cir. 2008) (refusing to interpret incorporated disability
26  plan documents to contradict plaintiff's pleaded facts).

27  • Exhibits 2–3, 5–6, 10–11 – Colgate offers a copies of various FAQs from the colgate.com
28  and tomsofmaine.com websites. However, these documents are not incorporated-by-reference by the FAC.

Although the Products state that consumers can "learn more . . . at colgate.com/goodness [or tomsofmaine.com]," the specific pages that Colgate seeks to introduce are not referenced in the FAC at all. *See*, *e.g.*, Ex. 2 (https://www.colgate.com/en-us/our-mission/sustainability/faq#), Ex. 3 (www.tomsofmaine.com/our-promise/caring-for-the-planet/recyclable-tube), Ex. 5 (www.colgate.com/en-us/power-of-optimism/faq), Ex. 6 (same), Ex. 10 (www.tomsofmaine.com/our-promise/caring-for-the-planet/recyclable-tube), Ex. 11 (same). None of these links are printed on the Products, referenced in the FAC, nor were seen by the Plaintiffs. Colgate is essentially arguing that its entire website is incorporated-by-reference. However, that is improper because the Colgate and Tom's of Maine websites are massive and consists of hundreds (if not thousands) of individual pages.

- Exhibits 4, 8, 9[13] – Colgate offers proofs of certain versions of the Products. Plaintiffs object that these proofs do not accurately display how the products would appear to consumers in stores. *See Brown v. Hain Celestial Group, Inc.*, 913 F. Supp. 2d 881, 893 (N.D. Cal. 2012) (declining to take judicial notice of proof and agreeing with party opposing judicial notice that such an exhibit, which "portray[ed] the principal display panel, the information panel and the ingredients list side-by-side," constituted "a distortion of the way in which consumers actually see the [p]roducts' labeling"); *Stewart,* 537 F. Supp.3d at 1120 (same), *Tsan v. Seventh Generation, Inc*, No. 15-cv-00205-JST, 2015 U.S. Dist. LEXIS 149042, at *6 (N.D. Cal. Nov. 3, 2015) (same).

- Exhibits 7, 12, 13 – Colgate also offers proofs of its revised label for the Products. These labels are irrelevant. Plaintiffs do not allege that they purchased the revised versions of the Products. As explained *supra*, the revised packaging is still in violation of the Green Guides. And the mere fact that Colgate has modified its packaging does not moot Plaintiffs' claims for injunctive relief. Further, as explained above, proofs are routinely rejected in the Northern District because they distort how consumers actually see a product's labeling in the store.

- Exhibits 14, 16 – Colgate offers a screenshot from the "I Want To Be Recycled" (Ex. 14) website, which it argues is incorporated by reference by the EPA's website (Ex. 16). Colgate cites no authority to support that a private website can be judicially noticed if it is referenced in a government

---

[13] Plaintiffs' also note that in Exhibit 9, contrary to what Colgate argues in its motion, the Rapid Relief Sensitive toothpaste does reference "the first of its kind recyclable tube." ECF No. 31-9.

1   website.  Indeed, the opposite is true. Private websites, such as berecycled.org are not subject to judicial

2   notice because they are not "sources whose accuracy cannot reasonably be questioned." *Rollins v. Dignity*

3   *Health*, 338 F. Supp. 3d 1025, 1032 (N.D. Cal. 2018). Colgate offers this exhibit to challenge Plaintiffs'

4   allegations that the Products are not recyclable because they pose a contamination risk to the recyclable

5   waste stream. It argues that the "I Want To Be Recycled" website shows that products do not need to be

6   washed prior to being recycled. In other words, just as in *Rollins*, Colgate "do[es] what *Khoja* forbids—

7   [it] ask[s] the Court to take judicial notice of documents that [it] then use[s] as a basis to challenge the

8   factual averments in the complaint." 338 F. Supp. 3d at 1031.

9   • Exhibit 15 – Plaintiffs object that Exhibit 15, a printout from the CalRecycle website, is

10   irrelevant and out of context. The page is about beverage containers, such as cans and bottles, which are

11   easy to rinse and eligible for CA CRV. This does not pertain to the Products, which are not eligible for a

12   CRV. Colgate is improperly requesting admission of this website to challenge Plaintiffs' factual allegations.

13   In any event, the Court may take judicial notice of government documents to prove their existence and

14   contents, but not for the truth of the matters asserted therein when the facts are disputed. *See, e.g., Coal for*

15   *a Sustainable Delta v. Fed. Emergency Mgmt. Agency*, 812 F. Supp. 2d 1089, 1093 (E.D. Cal. 2011);

16   *accord Dine Citizens Against Ruining Our Env't v. Bureau of Indian Affairs*, 932 F.3d 843, 848 n.1 (9th

17   Cir. 2019); *Ctr. for Envtl. Law & Policy v. U.S. Bureau of Reclamation*, 655 F.3d 1000, 1011 n.5 (9th Cir.

18   2011); *Dent v. Holder*, 627 F.3d 365, 371-72 (9th Cir. 2010).

19   **E.  If The Court Is Inclined to Grant Colgate's Motion to Dismiss in Any Respect, Plaintiffs Respectfully Request Leave to Amend.**

20   If a complaint is dismissed, "leave to amend should be granted unless the court determines that

21   the allegation of other facts consistent with the challenged pleading could not possibly cure the

22   deficiency." *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986).

23   Indeed, leave to amend is only properly denied "where the amendment would be futile." *DeSoto v.*

24   *Yellow Freight Sys.*, 957 F.2d 655, 658 (9th Cir. 1992). Should this Court find any of the allegations

25   insufficient to state a claim, Plaintiffs request leave to amend.

26   **V.   CONCLUSION**

27   For the reasons set forth above, Colgate's motion to dismiss should be denied in full.

28

Dated: December 22, 2023

**GUTRIDE SAFIER LLP**

*/s/ Rajiv V. Thairani*
Seth A. Safier, Esq.
Marie McCrary, Esq.
Rajiv V. Thairani, Esq.
100 Pine Street, Suite 1250
San Francisco, CA 94111

Attorneys for Plaintiffs