1
2
3
4

UNITED STATES DISTRICT COURT

5

NORTHERN DISTRICT OF CALIFORNIA

6

| | |
|---|---|
| KRISTIN DELLA, et al., | Case No.  23-cv-04086-JCS |
| Plaintiffs, | |
| v. | **ORDER DENYING MOTION TO DISMISS FIRST AMENDED CLASS ACTION COMPLAINT** |
| COLGATE-PALMOLIVE COMPANY, | |
| Defendant. | Re: Dkt. No. 30 |

## I.    INTRODUCTION

Plaintiffs bring a putative class action under California state law and the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2) ("CAFA") against Defendant Colgate-Palmolive Company ("Colgate") based on statements on Colgate and Tom's of Maine toothpaste packaging about the recyclability of the toothpaste tubes these products use.  According to Plaintiffs, these statements are false and misleading because while it is theoretically possible to recycle the tubes, only a "miniscule" number of recycling facilities in California and the United States actually accept them for recycling.  Presently before the Court is Colgate's Motion to Dismiss First Amended Class Action Complaint ("Motion").  The Court finds that the Motion can be decided without oral argument and therefore vacates the hearing set for February 9, 2024 pursuant to Civil Local Rule 7-1(b).  **The Case Management Conference set for the same date will remain on calendar but will be conducted at 2:00 p.m. instead of 9:30 a.m.**  For the reasons stated below, the Motion is DENIED.[1]

_United States District Court_
_Northern District of California_

---

[1] The parties have consented to the jurisdiction of a United States magistrate judge pursuant to 28 U.S.C. § 636(c).

## II.      BACKGROUND

### A.      First Amended Complaint

The subject of Plaintiffs' claims are "Colgate and Tom's of Maine toothpaste labeled with the claims 'Recyclable Tube,' 'First of Its Kind Recyclable Tube,' and/or the universal recycling symbol" (collectively, the "Products").  First Amended Complaint ("FAC") ¶ 1. Plaintiffs allege that the Products come in numerous varieties and use toothpaste tubes made of high-density polyethylene or No. 2 plastic ("HDPE").  FAC ¶ 18. These tubes differ from "traditional" toothpaste tubes, made from sheets of plastic laminate consisting of "different plastics sandwiched around a thin layer or aluminum[,]" which are "universally banned and rejected by [materials recovery facilities]  and recycling programs throughout California and the United States" because "they are difficult to sort, separate, and process into reusable material."   FAC ¶¶ 31-32.  Because the toothpaste tubes used in the Products "are made entirely of plastic, they are theoretically not as difficult to recycle as traditional toothpaste tubes."  FAC ¶ 33.  Thus, in announcing its new toothpaste tube in 2019, Colgate "heralded [it] as a major innovation and announced it as a first-of-its-kind, truly recyclable toothpaste tube."  *Id.*

According to Plaintiffs, Colgate "uniformly represents that the Colgate-brand Products have a 'Recyclable Tube' in a conspicuous blue font on a white background[,]" with the "chasing arrows symbol [that] is also known as the universal recycling symbol" above the "Recyclable Tube" claim, and "provides no disclaimer on the packaging that in any way limits their claims of recyclability."  FAC ¶¶ 18-19, 23. They provide an image of the front and back label of a sample Colgate-brand Product, Colgate Total, to support this allegation, and allege that Colgate "makes substantially identical representations on Colgate Cavity Protection Toothpaste, Colgate Baking Soda & Peroxide Whitening Toothpaste, Colgate MaxFresh Toothpaste, Colgate MaxClean Toothpaste, Colgate Total Toothpaste, Colgate Optic White Toothpaste, and Colgate Sensitive Toothpaste."  *Id.* ¶¶ 19, 20, 22.  Plaintiffs allege further that "[a]t most, newer versions of the Products invite consumers to visit a website by stating: 'Learn more about our recyclable tube at: colgate.com/goodness[,]'[b]ut nothing about this disclosure limits the unqualified recyclability claim."  FAC ¶ 20.

United States District Court
Northern District of California

1    Plaintiffs allege that Colgate "makes similar representation on its Tom's of Maine

2  toothpastes."  FAC ¶ 24.  In particular, the back label of the Tom's Products "advertises that the

3  Product has 'THE FIRST OF ITS KIND RECYCLABLE TUBE.'"  *Id.* Plaintiffs allege that

4  Colgate's "packaging and advertising also invites consumers to '[l]earn more at

5  tomsofmaine.com[ ]'" but that that website "only includes a short video regarding the purported

6  recyclability of the Products" and an FAQ, at "the very bottom of the Tom's of Maine website"

7  that states, "[g]etting your tube ready for recycling is easy: simply squeeze out as much of the

8  toothpaste from the tube as you can, replace the cap, and place the tube in your recycling bin."

9  FAC ¶ 27.  Plaintiffs provide an image of the front and back label of a sample Tom's Product.

10  FAC ¶ 24.

11    Plaintiffs allege that the claims described above are "false, deceptive, misleading and/or

12  unlawful" because "virtually all of the municipal recycling programs and materials recovery

13  facilities ('MRFs') in California and the United States reject the Products."   FAC ¶ 1. The reasons

14  for this, according to Plaintiffs, are that (1) recycling facilities "are unable to effectively

15  distinguish between Defendant's purportedly recyclable tubes and conventional toothpaste tubes

16  which cannot be recycled, and (2) the Products cannot be fully emptied, and the leftover

17  toothpaste contaminates the recyclable waste stream, which makes the Products unrecyclable and

18  jeopardizes the recyclability of truly recyclable materials."  FAC ¶ 4.

19    In support of these allegations, Plaintiffs point to "a recent Bloomberg article [the

20  "Bloomberg Article"] questioning the accuracy of Defendant's claims" in which "Waste

21  Management, Inc., one of the largest recycling and disposal companies in the Nation, commented

22  that the 'tubes are not in its list of acceptable items.'" FAC ¶¶ 5, 35. Plaintiffs quote the article as

23  stating that "[f]or many facilities in the US, the company's new recyclable tubes are

24  indistinguishable from those made from more common plastics, prompting recyclers to reject

25  them." FAC ¶ 35.   According to Plaintiffs, in the same article, "Peter Keller, an executive at

26  Republic Services, another major solid waste management company[,] explained that '[a]nother

27  concern is leftover toothpaste causing contamination.'"  *Id.* ¶¶ 5, 40.  Plaintiffs allege that a

28  consultant at the Association of Plastic Recyclers, Sandeep Kalkarni, is quoted in the Bloomberg

United States District Court
Northern District of California

Article as stating "that '[t]he old tubes could cause contamination if consumers put them in the recycling bin, so it's easier for recycling facilities to reject toothpaste tubers across the board.' " FAC ¶ 35. Plaintiffs allege that cumulatively, Waste Management, Inc. and Republic Services "provide recycling services to more than 40% of consumers in California and approximately 25% of the United States." *Id.* ¶ 5.

Plaintiffs allege that "[t]here is an insurmountable contamination risk caused by leftover toothpaste" because "[e]ven when consumers know it is required, it is impossible for them to remove all of the toothpaste from the tubes before recycling them." FAC ¶ 39. As a result, Plaintiffs allege, "even if a recycling facility accepts irregularly shaped HDPE plastic, the tubes are still not accepted because they are not clean and free of contaminants." *Id.* Plaintiffs further allege that "[c]ontaminated materials are one-hundred percent not recyclable" and "[m]ore egregiously, contamination degrades the quality of recyclables, which often causes materials that would otherwise be recycled to be landfilled." FAC ¶ 41.

Plaintiffs allege that Colgate "knows that the Products almost invariably end up in landfills or incinerated because recycling facilities do not accept them." FAC ¶ 6. They allege that Colgate acknowledged in the Bloomberg Article "that acceptance might still be limited and advised consumers to check with local community programs." FAC ¶ 42. Plaintiffs also quote a video released by Colgate "explaining that its 'continu[ing] the work beyond technical recyclability of the tube, *towards acceptance of tubes in recycling systems* globally.'" FAC ¶ 6 (emphasis in original).

The three named Plaintiffs, Mikhail Gershzon, Kristin Della, and Jill Lienhard, who reside in California, allege that they purchased the Products because they believed Colgate's claims that they were recyclable and understood that this meant they would be able recycle the tubes through their curbside recycling program. FAC ¶¶ 8-10, 57-59. Plaintiffs allege that if they had known when they bought the Products that their municipal recycling programs do not accept and recycle the Product – and that "recycling facilities for the Products are not available to a substantial majority of consumers or communities in California" – they would not have purchased the product or at a minimum, they would have paid less for them. FAC ¶¶ 57-59. Plaintiffs allege that they

4

1   "are likely to be repeatedly presented with false or misleading information when shopping and

2   they will be unable to make informed decisions about whether to purchase [Colgate's] Products"

3   because "the design and composition of the Products may change over time [ ] [b]ut as long as

4   [Colgate] may use the phrase 'Recyclable Tube' and similar representations on Products that are

5   not recyclable as reasonable consumers understand the term, then when presented with [Colgate's]

6   packaging, Plaintiffs continue to have no way of determining whether the recyclability

7   representations are in fact true."  FAC ¶ 60.

8        Plaintiffs allege that Colgate's conduct violates California public policy, California law,

9   and the FTC's "Green Guides[,]" which are incorporated into California law.  FAC ¶¶ 44-53.

10  According to Plaintiffs, the Green Guides "require marketers to support their environmental claim

11  with a reasonable basis before they make the claims." FAC ¶ 52 (citing 16 CFR § 260.2).  With

12  respect to claims about recycling, Plaintiffs allege that the Green Guides "only permit marketers to

13  make unqualified recyclable claims '[w]hen recycling facilities *are available* to a substantial

14  majority of consumers or communities where the item is sold.'"  *Id.* (quoting 16 CFR §

15  260.12(b)(1)) (emphasis added in FAC).  According to Plaintiffs, " 'The term "substantial

16  majority," as used in this context, means at least 60 percent.' " *Id.* (quoting 16 CFR §

17  260.12(b)(1)). Plaintiffs further allege that under the Green Guides, " '[w]hen recycling facilities

18  are available to less than a substantial majority of consumers or communities where the item is

19  sold, marketers should qualify all recyclable claims.'" *Id.* (quoting 16 CFR § 260.12(b)(2); and

20  citing 16 CFR § 260.3(a)).

21       Plaintiffs assert the following claims in the FAC: 1) violation of the Consumers Legal

22  Remedies Act ("CLRA"), California Civil Code §§ 1750, *et seq*.; 2) false advertising under

23  California's False Advertising Law ("FAL"), California Business and Professions Code §§ 17500,

24  *et seq*.; 3) fraud, deceit and/or misrepresentation; 4) negligent misrepresentation; and 5) unfair,

25  unlawful and deceptive trade practices under California's Unfair Competition Law ("UCL"),

26  Business and Professions Code, §§ 17200, *et seq.*.  Plaintiffs seek injunctive relief and damages as

27  to the claims where damages are available.

28

United States District Court
Northern District of California

5

### B.   Contentions of the Parties

#### 1.  Motion

In the Motion, Colgate seeks dismissal of all of Plaintiffs' claims under Rule 12(b)(6) of the Federal Rules of Civil Procedure, arguing that there are two "fundamental flaws" in Plaintiffs' claims.  *Id.* at 2-3.  First, it contends, "the Green Guides do not control reasonable consumers' understanding of the term 'recyclable tube,' which is an accurate representation of the intrinsic character of the Products." *Id.* at 2.  The second flaw in Plaintiffs' FAC, Colgate asserts, is that Colgate's claims about the Products' toothpaste tubes meet the requirements of the Green Guides "because the tubes are compatible with the HDPE #2 recycling stream, which is widely available to the vast majority of consumers across California and nationwide." *Id.*  at 3.  Consequently, Plaintiffs' UCL claim "(and their remaining claims to the extent the Court views the Green Guides as relevant to the reasonable consumer inquiry)" fails to the extent it is based on failure to follow the Green Guides, according to Colgate.  *Id.*  Colgate further asserts that to the extent the Green Guides require qualifying language, it has met that requirement "via the disclosures available on the Product websites and incorporated into the Product packaging."  *Id.* Finally, Colgate argues that even if Plaintiffs' claims are not dismissed in their entirety, their request for injunctive relief should be dismissed, both because Colgate's packaging has been updated to include a "check locally" disclosure on each carton and because Plaintiffs "are now aware that market forces may impact their local recycling facilities' acceptance of the Products, and they can confirm such acceptance before purchasing the Products in the future[.]"  *Id.* at 3-4.

Colgate asserts that "all of Plaintiffs' claims (save for their claim under the 'unlawful' prong of the UCL . . .) are premised on allegedly 'deceptive or misleading marketing,'" and therefore, in order to prevail on their claims, they must " 'demonstrate that a "reasonable consumer" is likely to be misled by the representation.' " *Id.* at 11-12 (quoting *Moore v. Trader Joe's Co.*, 4 F.4th 874, 881 (9th Cir. 2021); and citing *Ebner v. Fresh, Inc.*, 838 F.3d 958, 965 (9th Cir. 2016) (applying reasonable consumer standard to FAL, CLRA, and UCL "unfair" and "fraudulent" claims); *Glen Holly Entm't, Inc. v. Tektronix Inc.*, 343 F.3d 1000, 1015 (9th Cir. 2003) (affirming dismissal of negligent misrepresentation claim where plaintiff failed to

1   sufficiently plead a "reasonable consumer" would rely on statements at issue)).

2       Colgate argues that Plaintiffs cannot meet this requirement, asserting that its statements

3   about recyclability are not false or misleading because its "first-of-its-kind toothpaste tube

4   composed primarily of HDPE #2 plastic . . . can be recycled in the same manner as other

5   recyclable bottles and tubes in the #2 HDPE recycling stream, 'which 87% of Americans can put

6   in recycling bins.' " *Id*. at 12 (quoting Spelman Decl., Ex. 1 (Bloomberg Article)).  In other words,

7   Colgate asserts, its claims are accurate because they are truthful and accurate "description of the

8   Products' inherent characteristic." *Id.*  at 13.

9       Colgate points to *Swartz v. Coca-Cola Co*., No. 21-4643, 2022 WL 17881771 (N.D. Cal.

10  Nov. 18, 2022 as "instructive in this regard." *Id.*  According to Colgate, in that case the plaintiffs

11  asserted that "the '100% recyclable'" claim on various plastic water bottle labels was 'false

12  and misleading because most plastic bottles are not recycled,' and instead 'end up in landfills or

13  incinerators due to a lack of recycling capacity and a lack of demand for recycled plastics.' " *Id*.

14  (quoting *Swartz*, 2022 WL 17881771, at *1).  The court dismissed the plaintiffs' claims, however,

15  finding "that '[n]o reasonable consumer would understand "100% recyclable" to mean that the

16  entire product will always be recycled[ ]' " and reasoning that "[i]n everyday usage, 'recyclable' is

17  an adjective that means capable of being recycled (e.g., 'the plate is made of recyclable paper'), or

18  a noun that denominates an object that can be recycled (e.g., 'the students raised funds by selling

19  recyclables to disposal facilities')." *Id.* (quoting *Swartz*, 2022 WL 17881771, at *1).  Colgate

20  highlights the court's statement that "[i]f anything, a reasonable consumer would understand that

21  making an object recyclable is just the first step in the process of converting waste into

22  reusable material, and not a guarantee that the process will be completed." *Id.* (quoting *Swartz*,

23  2022 WL 17881771, at *1).  Colgate notes that in a subsequent decision in *Swartz*, the court found

24  that the plaintiffs' amended complaint did not cure the problem and dismissed the case without

25  leave to amend.  *Id.* at 13-14 (citing *Swartz v. Coca-Cola Co*., No. 21-4643, 2023 WL 4828680, at

26  *3 (N.D. Cal. July 27, 2023)).

27      Colgate also relies on a case decided in the Northern District of Illinois, *Curtis v. 7-Eleven,*

28  *Inc*., in which the court held that claims about the recyclability of certain plates and cups used by

United States District Court
Northern District of California

7-Eleven were not misleading because "the term 'recyclable' 'simply means that the product is capable of being recycled. It is about [the] product itself, meaning its intrinsic character. It is not about what happens to the product after it goes into the recycling bin.'" *Id.* at 14 (quoting No. 21-6079, 2022 WL 4182384, at *1, 13 (N.D. Ill. Sept. 13, 2022)). According to Colgate, "[t]he court rejected that theory of liability, dismissing the complaint 'to the extent that Plaintiff contends that the products are not recyclable because of the unavailability of recycling facilities' given that '7-Eleven never represented anything about the likelihood of recycling' and '[t]he limited availability of recycling facilities does not mean that the plates and cups [at issue in the litigation] are not recyclable.'" *Id.* (quoting 2022 WL 4182384 at *13, 17). Colgate calls "significant[ ]" "the Curtis court['s] express[ ] reject[ion] [of] the plaintiff's attempt to rely on the Green Guides to establish consumer deception regarding the term 'recyclable,' noting that '[i]t is not clear how useful those Green Guides are when evaluating the views of a reasonable consumer at a convenience store. Your average consumer at 7-Eleven probably doesn't have the FTC's policy statements at his or her fingertips when picking up a bag of foam plates for the backyard BBQ.'" *Id*. (quoting 2022 WL 4182384 at *16).

Finally, Colgate points to a provision in California's Public Resources Code reflecting that the legislature has "recognized that 'materials that are trending toward meeting the [Green Guides] Requirements' (but do not yet meet those requirements) may be considered recyclable given that 'the continued increase in the collection, sorting, and viable responsible end market development . . . [can] be disrupted by a loss of a recyclable designation.'" *Id.* at 15 (quoting Cal. Pub. Res. Code § 42061(a)(3)(B)).

Colgate argues that *Swartz* and *Curtis* are on point because Plaintiffs do not dispute that the Products use tubes made from materials that are "*capable* of being recycled in the well-established recycling stream for HDPE #2 plastic" and instead base their claims on "third-party acceptance of the recyclable products for collection, sortation, and/or reprocessing[,]" which is beyond Colgate's control. *Id.* (emphasis in original). Furthermore, Colgate asserts, "it is in the interests of consumers and the recycling industry alike for Colgate to identify the Products as recyclable to educate stakeholders on the Products' recyclability and hasten widespread

1    acknowledgement of the Products' suitability for the existing HDPE #2 plastic recycling stream."
2    *Id.* (citing Cal. Pub. Res. Code § 42061(a)(3)(B)).

3        Colgate argues that Plaintiffs' allegations relating to the "contamination risk" are not
4    plausible because the only fact alleged in support of this allegation is "a statement from Peter
5    Keller, Vice President of Sustainability at Republic Services, Inc., identifying 'leftover toothpaste'
6    as a 'concern' with respect to the recyclability of toothpaste tubes." *Id.* (citing FAC ¶ 40; Spelman
7    Decl., Ex. 1).

8        Colgate argues that a further reason the claims on the Product packages are not misleading
9    is that the packaging invites consumers to learn more on their websites, "where Colgate provides
10    transparent information regarding the market transition to recyclable tubes and advises consumers
11    to check their localities to confirm acceptance of toothpaste tubes during the transition period." *Id.*
12    at 16. This information must be considered when evaluating whether the claims on the package
13    are misleading, Colgate contends. In particular, Colgate asserts, to determine whether a claim is
14    misleading, "product packaging should be examined in its full context because it would be
15    unreasonable to cherry-pick discrete statements to prove deception." *Id.* at 16-17 (quoting *Weiss v.*
16    *Trader Joe's*, 838 F. App'x 302, 303 (9th Cir. 2021); and citing *Moore*, 4 F. 4th at 883; *Knowles*
17    *v. ARRIS Int'l PLC*, 847 F. App'x 512, 513 (9th Cir. 2021); *McGinity v. Proctor & Gamble Co*.,
18    69 F.4th 1093, 1099 (9th Cir. 2023)).

19        According to Colgate, "in determining whether product labels are misleading or deceptive,
20    multiple courts have considered statements from a product's website where a link to that website
21    was included on a product packaging, reasoning that such statements are incorporated by reference
22    into the product and thereby the plaintiff's complaint." *Id.* at 17 (citing *Stewart v. Kodiak Cakes,*
23    *LLC*, 537 F. Supp. 3d 1103, 1121-22 (S.D. Cal. 2021)). Furthermore, Colgate contends, the Court
24    need not accept Plaintiffs' "conclusory allegations that 'reasonable consumers do not visit
25    websites before making ordinary every day purchases" and that a "simple reference to a website
26    does nothing to cure the unqualified recyclability claims on the Products.'" *Id.* (quoting FAC ¶
27    28). Colgate asserts that in fact, "courts frequently dismiss claims premised on allegedly
28    misleading labeling where the label contains qualifying language, reasoning that 'a reasonable

United States District Court
Northern District of California

9

consumer . . . cannot look at only one statement to the exclusion of everything else and claim he has been misled.'" *Id.* (quoting *Bobo v. Optimum Nutrition, Inc.*, No. 14-2408, 2015 WL 13102417, at *5 (S.D. Cal. Sept. 11, 2015); *Garcia v. Sony Comp. Entm't Am., LLC*, 859 F. Supp. 2d 1056, 1065 (N.D. Cal. 2012)).

With respect to the allegations in the FAC that Plaintiffs Gershzon and Zella purchased Colgate Total Toothpaste in August 2022 and October 2022, respectively, Colgate offers images of the packaging it contends was used for Colgate Total Toothpaste at that time, which directs people to the websites of the two products for "further information." *Id.* at 17-18 (citing FAC ¶¶ 57-58; Spelman Decl., Ex. 4). It also offers pages from the Colgate website with FAQs that "conveyed extensive information about Colgate's 'transition' to recyclable tubes and disclosed Colgate's work to educate stakeholders regarding the 'compatibility of recyclable tubes within the current recycling system,' and to 'shar[e] the technology' for its 'new recyclable tube' 'to help turn "recyclable" into widely accepted and "recycled." ' " *Id.* at 18 (quoting Spelman Decl., Exs. 5–6). Colgate emphasizes that "[t]he FAQs also advised (multiple times) that, '[d]uring this transition phase, *your community may not yet accept tubes for recycling. Consumers should check with their local community programs.*'" *Id.* (emphasis in original).

Similarly, as to the allegation that Plaintiff Lienhard purchased Tom's Antiplaque and Whitening Toothpaste in August 2022, Colgate points out that the statement "THE FIRST OF ITS KIND RECYCLABLE TUBE" was printed on the back of the product's label, along with a link to the Tom's of Maine website, tomsofmaine.com, where consumers were directed to "learn more" regarding the recyclability of the tube. *Id.* at 18-19 (citing FAC ¶¶ 29, 57).[2] Therefore, Colgate asserts, none of the named Plaintiffs has pointed to any false or misleading claims on the Products they purchased when the full context is considered. *Id.* Colgate further asserts in a footnote that to the extent Plaintiffs Gershzon and Lienhard allege that they made additional purchases "[o]n

_____

[2] According to Colgate, the other Product Lienhard alleges she purchased, Tom's Rapid Relief , does not contain any recyclability claims on the carton and therefore Lienhard does not have standing to assert claims based on her purchase of that product. *Id.* at 18 n. 12; *see also* Motion at 8 ("The Tom's Rapid Relief carton had (and still has) no recyclability claim. The carton simply states in small text on the side of the carton that Tom's 'develop[ed] the first of its kind recyclable tube.' See Spelman Decl., Exs. 9, 13.").

1   several occasions over the past four years[,]" FAC ¶¶ 57, 59, these allegations fail under Rule

2   9(b).[3]  *Id.* at 18 n. 11.

3          Colgate also argues that the claims made on the Product labels are in compliance with the

4   requirements of the Green Guides and therefore Plaintiffs' UCL unlawful claim fails to state

5   claim.  *Id.* at 19-21.  In particular, Colgate argues that because "the Products are compatible with

6   the HDPE #2 recycling stream, for which recycling facilities are 'available' to 87% of consumers"

7   – a fact that Plaintiffs do not dispute – Colgate's claims "more than satisfy[y] the 'substantial

8   majority' threshold" established in the Green Guides.  *Id.* at 20 (citing 16 C.F.R. § 260.12(b)(1)).

9   Colgate asserts that "this is not a case where the size, shape, or other physical characteristic of the

10  product allegedly renders it non-recyclable through existing recycling facilities." *Id.*   Instead,

11  Colgate contends, Plaintiffs allege that recycling facilities reject the Products because they are

12  allegedly unable to distinguish *recyclable* from *non*recyclable toothpaste tubes." *Id.* (citing FAC ¶

13  4) (emphasis in original).  Thus, Colgate asserts, its "*recyclable* tubes *can* be recycled through 'an

14  established recycling program' available to the vast majority of consumers." *Id.* (quoting 16

15  C.F.R. § 260.12(a)).

16         Moreover, Colgate argues, any requirement for qualifying language under the Green

17  Guides is met by the disclosures on the websites included on the Product packaging.  *Id.* at 21.

18  According to Colgate, *Lizama v. H&M Hennes & Mauritz LP*, No. 22-1170, 2023 WL 3433957

19  (E.D. Mo. May 12, 2023) is "instructive" on this question because in that case, the court relied on

20  qualifying statements made on the defendant's website to reject the plaintiffs' allegation that the

21  defendant's claims about its "conscious choice" program violated the Green Guides.  *Id.*

22         Finally, Colgate argues that Plaintiffs' claim for injunctive relief should be dismissed as

23  moot and because Plaintiffs lack standing to seek such relief.  *Id.*  at 21-25.  According to Colgate,

24  Plaintiffs' claim for injunctive relief is moot because "the packaging for the Products with

25  recyclable claims now includes a disclosure advising consumers that their "community may not

26  yet accept tubes for recycling," so they should 'check locally' to confirm." *Id.* at 21 (citing

27  ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯

28  [3] Because Colgate raised this issue only in a footnote and neither side meaningfully addressed this
    question, the Court declines to rule on this challenge.

United States District Court
Northern District of California

1   Spelman Decl., Exs. 7, 12.). Furthermore, Colgate asserts, the Court should give no weight to

2   Plaintiffs' allegations that "[a]t most, newer versions of the Products invite consumers to visit a

3   website by stating: 'Learn more about our recyclable tube at colgate.com/goodness'" and that

4   "nothing about this disclosure limits the unqualified recyclability claims[,]" because these

5   allegations "conflict directly with the judicially noticeable images" supplied by Colgate.   *Id.*

6   (quoting FAC ¶ 21 and citing *Shwarz v. United States*, 234 F.3d 428, 435 (9th Cir. 2000); *In re*

7   *Google Inc.*, No. 13-2430, 2013 WL 5423918, at *5 (N.D. Cal. Sept. 26, 2013)).

8          With respect to standing, Colgate argues that "there is no threat of future injury because

9   Plaintiffs are on notice that (a) the Products may not yet be accepted by recycling facilities in their

10   communities due to market forces; and (b) they can check if their local facilities accept toothpaste

11   tubes for recycling before purchasing the Products in the future." *Id.* at 3-4.  Colgate points to

12   Plaintiffs' allegations that "they learned their respective municipal recycling programs do 'not

13   accept toothpaste tubes for recycling[ ]' " and argue that in light of those allegations, "Plaintiffs

14   cannot plausibly allege that they are unable to determine at the point of purchase if recycling

15   facilities that recycle the Products are available to a substantial majority of consumers or

16   communities in California' or that they would be misled in future Product purchases." *Id*. at 24

17   (citing FAC ¶¶ 57-60).

18          To support its position, Colgate points to *Sinatro v. Barilla America, Inc.*, in which "the

19   plaintiffs sought injunctive relief in connection with their claim that the defendant's labeling of its

20   pasta as 'ITALY'S #1 BRAND OF PASTA' was misleading because the pasta was not

21   manufactured in Italy." *Id.* (citing 635 F. Supp. 3d 858, 865, 873-874 (N.D. Cal. 2022)).

22   According to Colgate, the court granted the defendant's motion to dismiss the injunctive relief

23   claim, concluding that "the plaintiffs could not 'reasonably claim that they [would] be deceived by

24   the challenged representations now that they know where the products are manufactured.' " *Id*.

25   (citing 635 F. Supp. 3d at 875).

26          Finally, in support of the Motion, Colgate has offered sixteen exhibits and asks the Court

27   to take judicial notice of them.  *See generally* Declaration of Kate T. Spelman in Support of

28   Defendant Colgate-Palmolive Company's Motion to Dismiss First Amended Class Action

1   Complaint ("Spelman Decl."); Defendant Colgate-Palmolive Company's Request for Judicial

2   Notice in Support of Motion to Dismiss First Amended Class Action Complaint ("RJN").

3               **2.  Opposition**

4           Plaintiffs agree with Colgate that as to all of their claims, they must plead that Colgate's

5   statements and omissions were likely to deceive a reasonable consumer in order to state a claim.

6   Opposition at 4-5.   They reject Colgate's argument that they have not met that requirement,

7   however, asserting that they allege plausible claims based on the allegations that: 1) Plaintiffs

8   "saw the claim 'Recyclable Tube' on the labeling of the Products and reasonably understood that

9   the Products were recyclable[;]" 2)  "municipal recycling programs where Plaintiffs live do not

10  accept the Products for recycling[;]"  and 3) "there are no recycling programs that are capable of

11  recycling the Products in California where Plaintiffs purchased the Products."  *Id.* at 5 (citing FAC

12  ¶¶ 4, 43, 57–59).  According to Plaintiffs, "[c]ourts have routinely found similar allegations

13  sufficient to plead an actionable misrepresentation."  *Id.* (citing *Smith v. Keurig Green Mt., Inc.*

14  ("*Smith I*"), 393 F. Supp. 3d 837, 842 (N.D. Cal. 2019);  *Hanscom v. Reynolds Consumer Prods.*

15  *LLC* ("*Hanscom I*"), No. 21-cv-03434-JSW, at *9 (N.D. Cal. Oct. 1, 2021); *Mattero v. Costco*

16  *Wholesale Corp.*, 336 F. Supp. 3d 1109, 1117 (N.D. Cal. 2018)).

17          Plaintiffs further assert that Colgate's statements are "presumptively deceptive" under the

18  Green Guides, which are incorporated into California law through the Environmental Marketing

19  Claims Act ("EMCA").  *Id.*  at 5.   In particular, according to Plaintiffs, "it is presumptively

20  deceptive to market a Product as recyclable '[w]hen recycling facilities *are [not] available* to a

21  substantial majority of consumers or communities where the item is sold.'"  *Id.* (quoting 16 C.F.R.

22  § 260.12(b)(1) (emphasis added in Plaintiffs' brief).  Plaintiffs further assert, "[t]he term

23  'substantial majority,' as used in this context, means at least 60 percent." *Id*. (citing 16 CFR §

24  260.12(b)(1)).

25          Plaintiffs contend their position finds support in *Smith I,* which involved "facts [that]

26  closely parallel" the facts here.  *Id.*  In *Smith I*, the plaintiffs "alleged that the defendant's

27  coffee pods were falsely and deceptively labeled as recyclable" because although "the pods

28  were made of a polypropylene (#5), which is a material that is technically recyclable . . . recycling

United States District Court
Northern District of California

13

facilities could not recycle the pods because their equipment was incapable of sorting the pods from unrecyclable materials." *Id.* (citing 393 F. Supp. 3d at 842). According to Plaintiffs, the facts of *Smith I* were also similar to the allegations here because in that case, the plaintiffs "alleged that the products were not recyclable because of the contamination risk caused by the coffee grounds in the pods." *Id.* Plaintiffs contend the court in *Smith I*, "consistent with the Green Guides, held that the claim was actionable and had the tendency to deceive consumers because, even though polypropylene (#5) is technically recyclable, the pods could not actually be recycled by established recycling programs." *Id.* (citing 393 F. Supp. 3d at 847).

Plaintiffs also contend *Hanscom I* supports their position. *Id.* at 7. In that case, according to Plaintiffs, "the plaintiffs alleged that the defendant's trash bags were deceptively labeled as 'Recycling Bags' which led reasonable consumers to believe that the products were recyclable and suitable for recycling." *Id.* (citing *Hanscom I*, No. 4:21-cv-03434, ECF No. 41 at 1–2). As in this case, Plaintiffs assert, the plaintiffs in *Hansom I* alleged that the products were "unrecyclable even though they were made of LDPE plastic film, which is theoretically recyclable but non-recyclable in practice." *Id.* Also similar to the facts here, Plaintiffs contend, the plaintiffs in *Hanscom I* "alleged that the products were classified as a contaminant and were banned by recycling programs because they easily get caught in machinery and actively undermine the recycling process." *Id.* According to Plaintiffs, the court in *Hanscom I*, "applying sections 260.12(a) and 260(d) held that 'Plaintiff has plausibly alleged that the recycling claim is prohibited under the FTC's Green Guides.' " *Id.* (quoting *Hanscom I*, No. 4:21-cv-03434, ECF No. 41 at 12–15).

Plaintiffs argue that Colgate's theory of "intrinsic" recyclability is inconsistent with California law. *Id.* at 8-10. First, they assert that under the Green Guides "a product is 'Recyclable' when 'it *can be* collected, separated, or otherwise recovered from the waste stream *through an established recycling program for reuse* or use in manufacturing or assembling another item.' " *Id.* at 8 (quoting 16 C.F.R. § 260.12(a) (emphasis added in Plaintiffs' brief). According to Plaintiffs, "[t]he word 'can' must be read in conjunction with the language 'through an established program for reuse.' It is not enough that a product theoretically can be recycled as Colgate argues; it must be capable of being recycled by an established recycling program (i.e., a non-theoretical

program).”  *Id.*  Plaintiffs contend “the FTC explicitly affirmed this standard when it interpreted section 260.12(a) in the FTC Green Guides Statement of Basis and Purpose: ‘[t]o make a non-deceptive unqualified claim, a marketer should substantiate that a substantial majority of consumers or communities have access to facilities *that will actually recycle*, not accept and ultimately discard, the product.’”  *Id.* (emphasis added in Plaintiffs’ brief).  Plaintiffs further contend Colgate’s “strictly theoretical definition of recyclability in § 260.12(a), based on the technical recyclability of a product, would also render the ‘substantial majority’ language in § 260.12(b)(1) void, which violates first principles of statutory construction.”  *Id.* at 8-9 (citing 16 C.F.R. § 260.12(b)(1)).

Plaintiffs also point to the statement in the Green Guides that “[a]n item that is made from recyclable material, but, because of its shape, size, or some other attribute, is not accepted in recycling programs, should not be marketed as recyclable.”  *Id.*  at 9 (quoting 16 C.F.R. § 260.12(d)).  Plaintiffs argue that this guidance applies here for two reasons.  First, the shape of the products – which is allegedly similar to unrecyclable toothpaste tubes– is one of the reasons they are not accepted by recycling programs.  *Id.* (citing FAC ¶ 31–35).   Second, the difficulty of properly cleaning the tubes, which risks contamination of the waste stream, is an “other attribute” that allegedly makes the Products nonrecyclable.  *Id.* (citing FAC ¶ 39).

Plaintiffs reject Colgate’s reliance on *Swartz I* and *Swartz II*, arguing that the *Swartz* case is distinguishable.  *Id.* at 9-10.  According to Plaintiffs, that case involved plastic water bottles labeled as “100% Recyclable[,]” which the plaintiffs asserted was misleading because “a total of 28% of each bottle (including the labels and caps) could not be recycled.” *Id.*  at 10 (citing *Swartz II*, No. 21-cv-04643-JD, 2023 U.S. Dist. LEXIS 130246, at *9, 11). The plaintiffs conceded, however, “that the bottles met the definition of recyclable under the Green Guides[,]” Plaintiffs assert, and therefore, “the question was whether the addition of the ‘100%’ caused the defendants’ ‘Recyclable’ claim to become deceptive.”  *Id.* at 9-10.  According to Plaintiff, the court in *Swartz* “acknowledged that the Green Guides turned on whether a product “can be recycled by [an] existing recycling program.” *Id.* at 10 (citing *Swartz I*, No. 21-cv- 04643-JD, 2022 U.S. Dist. LEXIS 209641, at *4).  Plaintiffs note, however, that the Green Guides are “silent on the use of

1    the language '100%.'" *Id.*   In any event, Plaintiffs argue, the court in *Swartz* ultimately dismissed

2    the Second Amended Complaint "because the plaintiffs had not pleaded enough facts to plausibly

3    support that the labels and cap were not actually being recycled by recycling facilities in

4    California." *Id.* (citing *Swartz II*, No. 21-cv-04643-JD, 2023 U.S. Dist. LEXIS 130246, at *8).

5        Plaintiffs argue that here, in contrast to *Swartz*, they have alleged "specific facts regarding

6    why the Products cannot be recycled" ("because the Products look identical to non-recyclable

7    items and cannot be effectively distinguished and the Products are unrecyclable contaminant[,]"

8    *id.* (citing FAC ¶¶ 4, 31–43)) and details that render these allegations plausible, including "a

9    Bloomberg Article ([FAC] ¶ 5), quotes from representatives of the two largest waste

10   management companies in the country ([FAC] ¶¶ 5, 40), a nonprofit database of recycling

11   programs ([FAC] ¶ 43), the recycling website San Francisco and the websites of Republic and

12   Waste Management (FAC] ¶ 36–37, 43), and Colgate's own admissions that it is 'continu[ing] the

13   work beyond technical recyclability' and . . . 'that acceptance [of the Products] may still be

14   limited[,]" ([FAC] ¶ 6, 42)." *Id.*

15       Plaintiffs further contend that *Curtis v. 7-Eleven, Inc.*, is "easily distinguished" because in

16   Illinois the Green Guides do not have the weight of law and are "merely persuasive." *Id.* (citing

17   No. 21-cv-6079, 2022 U.S. Dist. LEXIS 164850, at *1 (N.D. Ill. Sep. 13, 2022)). Plaintiffs argue

18   further that the court in *Curtis* engaged in "specious reasoning" when it rejected the Green Guides

19   standards "because reasonable consumers do not have the Green Guides at their fingertips when

20   shopping at a convenience store." *Id.* (citing 2022 U.S. Dist. LEXIS 164850, at *44).  Plaintiffs

21   reason:

> Although reasonable consumers are not necessarily aware of the exact
> standards contained in the Green Guides, the FTC has determined
> that, in its expertise, reasonable consumers expect that there is a 60%
> or greater chance that a product labeled as 'recyclable' can be
> recycled by their local recycling program (i.e, more probable than
> not). *See* 16 C.F.R. § 260.1 (explaining that the Green Guides provide
> the 'Commission's view on how reasonable consumers likely
> interpret certain claims.'). Even if the Green Guides are not
> mandatory in Illinois, *Curtis* was wrongly decided because the court
> effectively held, as a matter of law, that no reasonable consumer could
> understand "recyclable" in the manner expressed by the FTC in the
> Green Guides. At minimum, the plaintiff's allegations regarding how
> reasonable consumers understood the recyclable claims were

plausibly supported by the Green Guides and this should have created
a question for the trier of fact.

*Id.* at 11.

Plaintiffs also reject Colgate's reliance on *Swartz* and *Curtis* for the proposition that for "equitable reasons[,]" "Colgate should not be held responsible for its deceptive representations" because the recyclability of its Products is "tied to forces and circumstances well beyond defendants' control[.]" *Id.* (quoting Motion at 15). Plaintiffs argue that "Colgate's labeling, which is what Plaintiffs' claims challenge, is *completely within Colgate's own control*." *Id.* (emphasis in original).

Plaintiffs also reject Colgate's argument that its website disclosures "cure" its misrepresentations, arguing that "[i]t is manifestly unreasonable that a consumer would see Colgate's unambiguous 'Recyclable Tube' claim, see the fine-print reference to 'learn more' at colgate.com/goodness, visit the website on his or her smart phone while standing in a grocery store aisle, and then review the entire website to verify that the 'Recyclable Tube' claim is true." *Id.* at 12. It also notes that "the webpage addresses for the FAQs that Colgate offers as evidence that it effectively disclaimed its 'Recyclable Tube' claims through its website do not match the webpage addresses that it prints on its packaging." *Id.* at 12 n. 10 (citing Spelman Decl., Exs. 5 (www.colgate.com/en-us/power-of-optimism/faq), 6 (https://www.colgate.com/en-us/our-mission/sustainability/faq), 10 (www.tomsofmaine.com/ourpromise/caring-for-the-planet/recyclable-tube), 11 (same)). Therefore, Plaintiffs contend, "a consumer would have to thoroughly scour multiple pages of Colgate's website to find the FAQs and the disclosures." *Id.*

Plaintiffs argue that courts in this Circuit "invariably reject" similar arguments, pointing to the Ninth Circuit's holding in *Williams v. Gerber Prods. Co.*, that "reasonable consumers should [not] be expected to look beyond misleading representations on the front of the box to discover the truth from the ingredient list in small print on the side of the box." *Id.* (quoting 552 F.3d 934, 939 (9th Cir. 2008)). Plaintiffs also cite *Hernandez v. Radio Sys. Corp.*, No. ED CV 22 1861 JGB KKX, 2023 WL 4291829, at *8 (C.D. Cal. May 10, 2023) and *Cisco Sys. Inc.*, No. 18-cv-07576-CRB, 2019 U.S. Dist. LEXIS 212028, at *25 to support its argument that reasonable consumers

1    are not expected to read the totality of a product's website and online manuals before buying the

2    product.  *Id.*

3            As to Colgate's citation to Cal. Pub. Res. Code § 42061(a)(3)(B) in support of its position,

4    Plaintiffs contend that section "empowers the California Department of Resources Recycling and

5    Recovery to provide an exemption from the substantial majority standard for products that are

6    trending toward acceptance by 60% recycling facilities" but that "Colgate has received no such

7    exemption from the California Department of Resources and Recycling and Recovery."  *Id.* at n.

8    9.

9            Plaintiffs rejects as misleading Colgate's reliance on *Stewart v. Kodiak Cakes*, LLC, 537 F.

10   Supp.4d 1003, 1120 (S.D. Cal. 2021) to suggest that statements on its websites are incorporated

11   into the Product labels.  *Id.* at 13.  According to Plaintiffs, "[t]he portion of *Stewart* that Colgate

12   quotes is a discussion regarding whether particular labels were incorporated by reference by the

13   plaintiff's complaint." *Id.*

14           Plaintiffs also reject Colgate's argument that "learn more" language on the Product labels

15   is qualifying language.  *Id.* at 13 (citing Motion at 24).  Plaintiffs argue that "nothing in this

16   language is qualifying because it does not alert consumers that they would find additional

17   information on Colgate's website that in any way limits its unambiguous front label

18   claim."  *Id.*  In contrast, Plaintiff asserts, the case cited by Colgate, *Bobo v. Optimum Nutrition,*

19   *Inc.*, No. 14CV2408 BEN (KSC), 2015 U.S. Dist. LEXIS 187233, at *10 (S.D. Cal. Sep. 11,

20   2015), involved language that clearly qualified the claim that was alleged to be misleading, that

21   the product was "100 % WHEY."  *Id.*  In particular a label also included the language "DOUBLE

22   RICH CHOCOLATE" flavored and "100% OF THE PROTEIN FROM WHEY," clarifying that

23   "100% WHEY" did not mean that there were no other ingredients in the product.  *Id.*  (citing 2015

24   U.S. Dist. LEXIS 187233, at *10).

25           Likewise, Plaintiffs contend, *Lizama v. H&M Hennes & Mauritz LP*, No. 4:22 CV 1170

26   RWS, 2023 U.S. Dist. LEXIS 83704, at *1 (E.D. Mo. May 12, 2023) is distinguishable because in

27   that case, the plaintiffs affirmatively alleged that they had visited the defendant's website to learn

28   about the "conscious choice" label and predicated their deceptive practices claims on statements

18

they found on the website. *Id.* at 14-15.  In addition, Plaintiffs assert, the claims in that case

involved different provisions of the Green Guides than the ones at issue in this case.  *Id.*

Plaintiffs also contend their claims are adequately pled based on allegations that Colgate's

omissions amounted to fraudulent concealment.  *Id.* at 15-16.   In particular, "Plaintiffs allege that

Colgate's omissions are contrary to representations it actually made." *Id.* at 15 (citing FAC

¶¶ 82, 92, 96, 101, 121). According to Plaintiffs, "Colgate affirmatively states that the Products

have a 'Recyclable Tube.'" *Id*. (citing FAC ¶¶ 1,19–25). "However, contrary to that assertion,

Colgate fails to disclose that the Products 'contaminate[] the recyclable waste stream, which

makes the Products unrecyclable and jeopardizes the recyclability of truly recyclable materials.'"

*Id*. (citing FAC ¶¶ 4–5, 33–43).  These allegations are sufficient to plead fraudulent concealment,

Plaintiffs contend.  *Id.* (*Rushing v. Williams-Sonoma, Inc*., No. 16-cv-01421-WHO, 2016 U.S.

Dist. LEXIS 108657, at *21 (N.D. Cal. Aug. 15, 2016); *Rutledge v. Hewlett-Packard Co*., 190

Cal. Rptr. 3d 411, 421 (Cal. Ct. App. 2015)).

Finally, Plaintiffs contend they have "adequately alleged that Colgate's practice of

marketing the Products as having a 'Recyclable Tube,' while omitting material information

regarding the Products' true recyclability, constitutes 'unfair' trade practice" under the UCL each

of the three tests that apply to such claims.  *Id.* at 16-17.

Plaintiffs reject Colgate's challenge to its claim for injunctive relief.  *Id.* at 17-23. With

respect to Colgate's mootness argument, Plaintiffs contend Colgate's position fails "because (1)

the disclaimer on Colgate's updated packaging is illegal and inadequate and (2) even it was

adequate, Colgate has not met its heavy evidentiary burden to prove that the label change is

permanent." *Id.* at 18.  On the first point, Plaintiffs point to the Green Guides requirement that

"the lower the level of access to an appropriate facility, the more strongly the market should

emphasize the limited availability of recycling for the product." *Id.* (quoting 16 C.F.R. §

260.12(a)(2)). According to Plaintiffs, the examples offered in the Green Guides to illustrate this

requirement establish that Colgate's vague disclaimer that "communit[ies] may not yet accept

tubes for recycling" runs afoul of this guidance.  *Id.*  In particular, Plaintiffs point to the following

statement in the Green Guides:  "For example, if recycling facilities are available to *slightly less*

19

*than a substantial majority* of consumers or communities where the item is sold, a marketer may

qualify a recyclable claim by stating: 'This product [package] may not be recyclable in your area.'

" *Id*. (quoting 16 C.F.R. § 260.12(a)(2)) (emphasis added in Plaintiffs' brief). On the other hand,

Plaintiffs note, "the Guides expressly state that the disclaimer '[c]heck to see if recycling facilities

exist in your area' would be deceptive on a product that is marketed nationally if recycling

programs for the product were only 'available to some consumers, but not available to a

substantial majority of consumers nationwide.' " *Id*. (quoting 16 C.F.R. § 260.12, example 4).

Similarly, Plaintiffs assert, the disclaimer here is misleading "because it improperly leads

consumers to believe that the Products are likely recyclable in their area when *virtually no*

*programs accept them for recycling*." *Id*. (emphasis in original).

Even if the Court "disagrees with the Green Guides[,]" Plaintiffs argue that it should not

rule on the question of whether the disclaimer is adequate at the 12(b)(6) stage of the case because

"whether a disclaimer adequately cures a misrepresentation is a factual question unsuitable for

determination on a motion to dismiss." *Id.* (citing *Mullins v. Premier Nutrition Corp*., 178 F.

Supp. 3d 867, 892 (N.D. Cal. 2016)).  Plaintiffs argue further that Colgate bears a heavy burden to

show that it will not resume its illegal conduct – which is also a factual question – and that the

statements in its brief regarding the likelihood that it will "resume its illegal conduct" are

insufficient to warrant ruling in Colgate's favor on a motion to dismiss.  *Id.* at 20 (citing

*Rosebrock v. Mathis*, 745 F.3d 963, 971 (9th Cir. 2014); *Fikre v. FBI*, 904 F.3d 1033, 1037-41

(9th Cir. 2018)).

Plaintiffs also challenge Colgate's argument that they do not have standing to seek

injunctive relief, citing *Davidson v. Kimberly-Clark Corp*., 873 F.3d 1103 (9th Cir. 2017).  *Id.* at

20-23.  According to Plaintiffs, in *Davidson* the plaintiff sought injunctive relief based on similar

allegations, namely, that she wished to purchase defendants' "flushable" wipes if they were truly

flushable.  *Id.* (citing *Davidson*, 873 F.3d at 1116).   In that case, Plaintiffs contend, the Ninth

Circuit found that "the fact that the plaintiff wanted to purchase the product again and that she

could not rely on the label's truthfulness was a sufficient informational injury to confer Article III

standing." *Id.*

Plaintiffs reject Colgate's reliance on *Sinatro v. Barilla America, Inc.*, 635 F. Supp. 3d 858 (N.D. Cal. 2022), arguing that that case is distinguishable from *Davidson* and the facts here because "Barilla pasta had a disclosure that it was made in 'Made in the USA' on the box." *Id.* (citing 635 F. Supp. 3d at 874-875). According to Plaintiffs, "[t]his fact matters because the plaintiff would be able to check the product, at the point of sale, to determine whether it was still 'Made in USA.' That is not the circumstance here because there is nothing on the Products that clarify whether the 'Recyclable Tube' claim is true or false." *Id.* at 22.

Finally, Plaintiffs object to Colgate's request for judicial notice of sixteen exhibits, asserting that it is an "example of what the Ninth Circuit has recently termed a 'concerning pattern[ ]' " of " 'pile[ing] on numerous documents to [its] motion to dismiss' 'to undermine the complaint, and hopefully dismiss the case at an early stage.' " *Id.* at 23 (quoting *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 998 (9th Cir. 2018)).

### 3. Reply

In its Reply, Colgate reiterates its argument that Plaintiffs have failed to plausibly allege that it has made misleading statements on the Product packaging, arguing that "this Court should reject Plaintiffs' attempt to collapse the distinction between their 'deceptive' and 'unlawful' claims by elevating an alleged violation of the Green Guides to "per se" deception of reasonable consumers under California law." Reply at 2. Colgate argues further that the Court should reject Plaintiffs' attempt to distinguish *Swartz* and *Curtis*. *Id.* at 3-4.

Colgate repeats its arguments that the disclosures on the Product websites should be considered in determining whether the labels are misleading, and that those statements defeat Plaintiffs' claims that Colgate's labelling of the products would mislead a reasonable consumer. *Id.* at 6-8. It also reiterates its position that the statements on the labels satisfy the Green Guides and argues that *Smith* is distinguishable. *Id.* at 9-10. Finally, it rejects Plaintiffs' arguments concerning mootness and standing to seek injunctive relief. *Id.* at 11-13.

## III.   ANALYSIS

### A.   Legal Standards

A complaint may be dismissed under Rule 12(b)(6) of the Federal Rules of Civil Procedure

1    for failure to state a claim on which relief can be granted.  "The purpose of a motion to dismiss

2    under Rule 12(b)(6) is to test the legal sufficiency of the complaint."  *N. Star Int'l v. Ariz. Corp.*

3    *Comm'n*, 720 F.2d 578, 581 (9th Cir. 1983).  Generally, a plaintiff's burden at the pleading stage

4    is relatively light.  Rule 8(a) of the Federal Rules of Civil Procedure states that a "pleading which

5    sets forth a claim for relief . . . shall contain . . . a short and plain statement of the claim showing

6    that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a).

7         In ruling on a motion to dismiss under Rule 12(b)(6), the court analyzes the complaint and

8    takes "all allegations of material fact as true and construe[s] them in the light most favorable to the

9    non-moving party."  *Parks Sch. of Bus. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995).  A

10   complaint must "contain either direct or inferential allegations respecting all the material elements

11   necessary to sustain recovery under some viable legal theory."  *Bell Atl. Corp. v. Twombly*, 550

12   U.S. 544, 562 (2007) (citing *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1106 (7th Cir.

13   1984)).  "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements

14   of a cause of action will not do.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*,

15   550 U.S. at 555).  Rather, the claim must be "'plausible on its face,'" meaning that the plaintiff

16   must plead sufficient factual allegations to "allow[] the court to draw the reasonable inference that

17   the defendant is liable for the misconduct alleged."  *Id.* (quoting *Twombly*, 550 U.S. at 570).

18        Rule 9(b) imposes heightened pleading requirements for all claims that "sound in fraud" or

19   are "grounded in fraud."  *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009) (citation

20   omitted); Fed. R. Civ. P. 9(b) ("In alleging fraud or mistake, a party must state with particularity

21   the circumstances constituting fraud or mistake.").  "[The Ninth Circuit] has interpreted Rule 9(b)

22   to require that allegations of fraud are specific enough to give defendants notice of the particular

23   misconduct which is alleged to constitute the fraud charged so that they can defend against the

24   charge and not just deny that they have done anything wrong."  *Neubronner v. Milken*, 6 F.3d 666,

25   671 (9th Cir. 1993) (quotation marks and citation omitted).  Thus, a fraud claim must state the

26   "who, what, when, where, and how" of the alleged conduct, *Cooper v. Pickett*, 137 F.3d 616, 627

27   (9th Cir. 1997), and "set forth an explanation as to why [a] statement or omission complained of

28   was false or misleading," *In re GlenFed, Inc. Secs. Litig.*, 42 F.3d 1541, 1548 (9th Cir. 1994) (en

United States District Court
Northern District of California

banc), superseded by statute on other grounds as stated in *Ronconi v. Larkin*, 253 F.3d 423, 429 & n.6 (9th Cir. 2001). "Malice, intent, knowledge and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b).

### B.   Request for Judicial Notice

Generally, the Court may not consider material outside the pleadings in ruling on a motion to dismiss for failure to state a claim. *Branch v. Tunnell*, 14 F.3d 449, 453–54 (9th Cir. 1994), overruled on other grounds by *Galbraith v. County of Santa Clara*, 307 F.3d 1119 (9th Cir. 2002). There are two exceptions to this rule: the incorporation-by-reference doctrine and judicial notice under Federal Rule of Evidence 201. Each mechanism permits district courts to consider materials outside the complaint on a Rule 12(b)(6) motion but does so for different reasons. *Khoja v. Orexigen Therapeutics, Inc*., 899 F.3d 988, 1002-03 (9th Cir. 2018).

Rule 201 permits a court to take judicial of an adjudicative fact if it is "not subject to reasonable dispute." Fed. R. Evid. 201(b). A fact is "not subject to reasonable dispute" if it is "generally known," or "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." *Id*. Though a court may take judicial notice of matters of public record and properly consider those matters when evaluating a motion to dismiss, a court may not take judicial notice of disputed facts contained in such public records without converting the motion into a motion for summary judgment. *Lee v. City of Los Angeles*, 250 F.3d 668, 689 (9th Cir. 2001).

"Unlike rule-established judicial notice, incorporation-by-reference is a judicially created doctrine that treats certain documents as though they are part of the complaint itself." *Khoja*, 899 F.3d at 1002. "The doctrine prevents plaintiffs from selecting only portions of documents that support their claims, while omitting portions of those very documents that weaken—or doom— their claims." *Id*. A court may incorporate a document by reference if the complaint refers extensively to the document or the document forms the basis for the plaintiff's claim. *Id*. (citations omitted). If a document "merely creates a defense" to the complaint's allegations, the document does not necessarily "form the basis of" the complaint. *Id*. at 1002-03 ("Although the incorporation-by-reference doctrine is designed to prevent artful pleading by plaintiffs, the

United States District Court
Northern District of California

doctrine is not a tool for defendants to short-circuit the resolution of a well-pleaded claim.").

When a court incorporates a document by reference, it may assume all contents of the document

are true for the purposes of a motion to dismiss under 12(b)(6). *Id.* at 1003 (citing *Marder v.*

*Lopez*, 450 F.3d 445, 448 (9th Cir. 2006) (quotations omitted)).

Colgate asks the Court to take judicial notice of sixteen exhibits under one or both of the

doctrines discussed above.  Plaintiffs object to Colgate's request as to all of Colgate's exhibits.

The Court's rulings are set forth below.

<u>Exhibit 1</u>: This exhibit is a copy of an article entitled "Colgate's 9 Billion Toothpaste

Tubes Defy Effort to Recycle Them," which was published on December 9, 2022.  According to

Colgate, because "Plaintiffs reference and discuss the article" in the FAC, "the article itself . . .

forms a basis for Plaintiffs' claims and is properly subject to judicial notice."  RJN at 3 (citing

FAC ¶ 5 n. 2); Reply at 13 (citing FAC at 3 n.2–3; *id.* at 9 n.8–10; *id.* at 11 n.11–12). Plaintiffs

counter that their complaint does not "necessarily" rely on the Bloomberg Article, which they cite

only to "corroborates their allegations that there are no established recycling programs for the

Products in California."  Opposition at 23.  If the Court incorporates the article by reference,

Plaintiffs contend "it should not interpret the documents to contradict well pled factual allegations

in the complaint."  *Id.* (citing *Sgro v. Danone Waters of N. Am. Inc.*, 532 F.3d 940, 943 n.1 (9th

Cir. 2008)).

The Court finds that the incorporation by reference doctrine applies to this document.

While Plaintiffs' claims are not based on statements made in the Bloomberg Article, Plaintiffs cite

to the Bloomberg Article numerous times in the FAC.  They also concede that they rely on the

Bloomberg Article to support their allegation that there are no established recycling programs for

the Products in California, which is core fact supporting the theory of their claims.  Moreover, in

the FAC Plaintiffs characterize the article generally as "questioning the accuracy of Defendant's

claims."  FAC ¶ 5.  Colgate's request is GRANTED as to Exhibit 1.

<u>Exhibits 2, 3, 5, 6, 10 and 11</u>: These exhibits contain screenshots of pages on the Tom's

and Colgate websites ("Product websites").  Colgate argues that because the FAC references the

Product websites and includes images of Tom's and Colgate packaging with the Product websites

printed on it, the images and screenshots "form a basis for Plaintiffs' claims and are properly subject to judicial notice."  RJN at 3 (citing FAC ¶¶ 21,  27, 30 n.7); *id.* at 4 (citing *Gregorio v. Clorox Co.*, No. 17-3824, 2018 WL 732673, at *1 n.2 (N.D. Cal. Feb. 6, 2018); *Stewart v. Kodiak Cakes, LLC*, 537 F. Supp. 3d 1103, 1121–22 (S.D. Cal. 2021)).  It argues that the website screenshots are subject to judicial notice for the additional reason that "they are publications, and courts regularly grant judicial notice of publicly available pages from websites 'to indicate what was in the public realm.' "  *Id.*  at 4 (quoting *Makeaff v. Trump Univ.*, 715 F.3d 254, 259 n.2 (9th Cir. 2013)).

Plaintiffs object to Colgate's request, arguing that the "various FAQs from the colgate.com and tomsofmaine.com websites . . . . are not incorporated-by-reference by the FAC."  Opposition at 3-4.   In particular, while Plaintiffs concede that "the Products state that consumers can 'learn more . .  at colgate.com/goodness [or  tomsofmaine.com],'" *id.*, they argue that "the specific pages that Colgate seeks to introduce are not referenced in the FAC at all. *See, e.g.*, Ex. 2 (https://www.colgate.com/en-us/our-mission/sustainability/faq#), Ex. 3 (www.tomsofmaine.com/our-promise/caring-for-the-planet/recyclable-tube), Ex. 5 www.colgate.com/enus/power-of-optimism/faq), Ex. 6 (same), Ex. 10 (www.tomsofmaine.com/our-promise/caring-for-theplanet/ recyclable-tube), Ex. 11 (same)." *Id.* According to Plaintiffs, "[n]one of these links are printed on the Products, referenced in the FAC, nor were seen by the Plaintiffs" and it is "improper" to treat the entire Product websites as incorporated by reference into the FAC "because the Colgate and Tom's of Maine websites are massive and consists of hundreds (if not thousands) of individual pages."  *Id.*

The Court GRANTS Colgate's request as to these exhibits.  As a preliminary matter, the Court is not persuaded that *Makeaff v. Trump Univ.*, 715 F.3d 254 (9th Cir. 2013) supports Colgate's request.  In that case, the plaintiff sued Trump University for deceptive business practices, among other things, and Trump University brought a counterclaim for defamation against Makeoff. 715 F.3d at 260. Makeoff then brought an anti-SLAPP motion seeking dismissal of the defamation claim on the basis that it was aimed at protected activity, which the district court denied.  *Id.*  The district court found that although Makeoff was engaging in protected activity

United States District Court
Northern District of California

United States District Court
Northern District of California

when she spoke out about Trump University, Trump University was likely to prevail on its claim because it was not a public figure and therefore, the heightened burden of proof for public figures did not apply to its defamation claim. *Id.* at 261.

The Court of Appeals in *Trump v. Makeoff* concluded that the district court had erred in finding Trump University was not a public figure, pointing to evidence that it engaged in extensive advertising to support the court's conclusion that Trump University was a limited public figure. *Id.* at 267-270.   In that context, the Court of Appeals "[took] notice of book collaborations between Donald Trump and Trump University, newspaper and magazine articles, and web pages[,]" citing Fed.R.Evid. 201 and *Von Saher v. Norton Simon Museum of Art at Pasadena*, 592 F.3d 954, 960 (9th Cir.2010) for the proposition that "it is proper to take judicial notice of various publications introduced 'to indicate what was in the public realm at the time, not whether the contents of those articles were in fact true[.]'" *Id.* at 259 n. 2.  Notably, the Court's consideration of the anti-SLAPP motion was not limited to the allegations in the complaint. *Id*. at 261 (setting forth legal standards governing anti-SLAPP motions).

The facts and issues here are not remotely like the ones in *Trump v. Makeoff* and Colgate does not rely on its Product webpages to "indicate what was in the public realm." Instead, it seeks to introduce print-outs from its webpages to establish that claims it makes on Product packaging are not misleading because of other statements (which *happen to be* in the public realm) on its websites.  Colgate's reliance on this case is misplaced.

Colgate's second argument, based on the incorporation by reference doctrine, presents a closer call.  The FAC includes the following references to the Product websites:

> Paragraph 21: "At most, newer versions of the Products invite consumers to visit a website by stating: 'Learn more about our recyclable tube at: colgate.com/goodness.' But nothing about this disclosure limits the unqualified recyclability claim."

> Paragraph 27: Defendant's packaging and advertising also invites consumers to "[l]earn more at tomsofmaine.com." However, Defendant's (tomsofmaine) website only includes a short video regarding the purported recyclability of the Products. If a person goes to the very bottom of the Tom's of Maine website, there is an FAQ. The FAQ states "[g]etting your tube ready for recycling is easy: simply squeeze out as much of the toothpaste from the tube as you can, replace the cap, and place the tube in your recycling bin."

> Paragraph 30: "Defendant reinforces its 'Recyclable Tube' misrepresentations with additional claims on the Products and on its websites[6] such as 'Recycle Me!,' 'Buy Smart – By reaching for this toothpaste tube you're actively making a difference;' 'Recycle It – Our recyclable tube is not meant for a landfill—it gets turned into useful products;' and 'As the leaders in the oral care industry, we wanted to create a recyclable alternative.'[7]"

Footnote 6 to Paragraph 30 states, "To be clear, Plaintiffs do not base their claims on Defendant's website representations, but only cite them to show the extent of Defendant's misrepresentations." Paragraph 7 provides the following citation: *Introducing the first-of-its-kind recyclable toothpaste tube*, Colgate http://www.colgate.com/en-gb/power-of-optimism/faq (last visited July 26, 2023).

There is no doubt that when a plaintiff asserts claims that directly challenge statements on a defendant's website as misleading, the website (or at least, the webpage) where the statement appeared is subject to judicial notice so long as there is no dispute about its authenticity. *See, e.g., Stewart v. Kodiak Cakes, LLC*, 537 F. Supp. 3d 1103, 1121-1122 (S.D. Cal. 2021) (concluding that where the plaintiffs' complaint referred "extensively to Defendant's online advertising, and online advertising form[ed] a basis of their claims[,]" it was not improper for the court to consider, on a motion to dismiss, exhibits containing copies of webpages showing images of product labels under the doctrine of incorporation by reference). Here, however, Plaintiffs emphasize in the FAC that the claims by Colgate that are misleading – and that are the basis of Plaintiffs' claims in the FAC – are only the claims made on the Product packaging.

Despite Plaintiffs' attempt to limit their reliance on the Product websites, the Court concludes that by alleging generally that statements on the Product websites "reinforce[ ]" Colgate's misrepresentations, FAC ¶ 30, Plaintiffs sufficiently rely on the Product websites to justify applying the doctrine of incorporation by reference to the websites as a whole, even if the specific webpages offered by Colgate are not expressly referenced in the FAC. Furthermore, as to the Tom's website, at least, the allegations in paragraph 27 are not limited to any particular webpage, alleging that the disclosures on the website as a whole fall short.

The Court also notes that *Gregorio v. Clorox Co*., No. 17-CV-03824-PJH, 2018 WL 732673, at *1 (N.D. Cal. Feb. 6, 2018) appears to be on point. In that case, the plaintiffs alleged that twelve of Clorox's Green Works products contained misleading statements on their labels,

1   including claims that the products were "naturally derived." 2018 WL 732673, at *1. The

2   plaintiffs further alleged that the labels referred consumers to two websites and that statements on

3   the websites disclosed that the products were "not entirely naturally derived." *Id.* The court took

4   judicial notice of "copies of the two websites listed on the back of the green works label" based on

5   the fact that the websites were "listed on the back of the green works label." *Id.* at n. 2. Given

6   that Plaintiffs here do not appear to dispute the authenticity of the webpages offered by Colgate as

7   exhibits, the Court concludes that judicial notice of the Product webpages is also appropriate here.

8     Exhibits 4, 7, 8, 9, 12, 13: These exhibits contain images of Tom's and Colgate toothpaste

9   packaging, both at the time of Plaintiffs' alleged purchases (Exhibits 4, 8, and 9) and currently

10  (Exhibits 7, 12 and 13). Colgate argues that these images are incorporated by reference in the

11  FAC because the FAC contains images of Tom's and Colgate packaging and Plaintiffs allege they

12  were misled by claims on the packaging of the Products. Therefore, Colgate contends, Plaintiffs'

13  claims are based on these labels and may properly be considered on a motion to dismiss. RJN at

14  3-4. Plaintiffs object to Colgate's request as to all of these exhibits because "these proofs do not

15  accurately display how the products would appear to consumers in stores." Opposition at 24

16  (citing *Brown v. Hain Celestial Group, Inc.*, 913 F. Supp. 2d 881, 893 (N.D. Cal. 2012);

17  *Stewart*, 537 F. Supp.3d at 1120; *Tsan v. Seventh Generation, Inc.*, No. 15-CV-00205-JST, 2015

18  WL 6694104, at *3 (N.D. Cal. Nov. 3, 2015)). In addition, as to Exhibits 7, 12 and 13, Plaintiffs

19  object that these images are irrelevant because these package labels were used for newer products

20  that Plaintiffs do not allege they purchased. *Id.*

21    The Court does not find Plaintiffs' argument regarding Colgate's use of proofs persuasive.

22  Courts may decline to take judicial notice of product label proofs where the authenticity of the

23  proof is disputed or the proof may distort the way consumers view the product label. For example,

24  in *Brown v. Hain Celestial Grp., Inc.*, 913 F. Supp. 2d 881 (N.D. Cal. 2012), the court declined to

25  take judicial notice of product label proofs for two reasons. First, "[the] [p]laintiffs made an

26  authenticity objection and that generally is dispositive." 913 F. Supp. 2d at 893. Second, the

27  court noted that "these are proofs, not photographs of the labels or the products themselves" and

28  the plaintiffs "ma[d]e factual arguments about what the proofs [did] and [did] not show." *Id.*

1   Under these circumstances, the court found, "that is enough at the motion to dismiss stage so that

2   the court should not take notice of them." *Id.*  The court recognized, however, that courts

3   sometimes take judicial notice of labels where "no party objected to those requests for judicial

4   notice." *Id.* (citing *Dvora v. General Mills, Inc.*, No. CV 11–1074–GW(PLAx), 2011 WL

5   1897349, at *2 (C.D.Cal. May 16, 2011); *Von Koenig v. Snapple Beverage Corp.*, 713 F.Supp.2d

6   1066, 1072–73 (E.D.Cal.2010); *McKinniss v. Sunny Delight Beverages Co.*, No. CV 07–02034–

7   RGK, 2007 WL 4766525, at *4 n. 1 (C.D. Cal. Sept. 4, 2007)).

8        Here, Plaintiffs do not dispute the authenticity of any of the labels offered by Colgate.

9   Moreover, while they object that proofs may distort what the consumer actually sees when they

10  buy the Products, they do not point to any specific aspect of the proofs that they contend is

11  distorted.  To the extent that it is the two-dimensional representation of the four sides of the box,

12  Plaintiffs' position is undermined by the two-dimensional images of the Product packaging in the

13  FAC, which show both the front and the back of the package.  *See, e.g.,* FAC ¶¶ 19-20, 24.  Nor

14  do Plaintiffs make any other factual arguments about what the proofs "do and do not show" that

15  would make it improper to take judicial notice of these images on a motion to dismiss.  Therefore,

16  the Court is not persuaded that it should deny Colgate's request on this basis.  Furthermore, as to

17  Exhibits 4, 8 and 9, Plaintiffs do not dispute that these images show the packaging that was used

18  on the Products that Plaintiffs allege they purchased. Therefore, the Court finds that Plaintiffs'

19  claims are based on these labels, which the Court finds to be incorporated by reference.

20       As to Exhibits 7, 12 and 13, on the other hand, these images show Product labels that were

21  adopted after Plaintiffs purchased the Products that are the basis for their claims.  Although it is

22  true that the FAC includes allegations about the claims on "newer products[,]" FAC ¶ 21,  and

23  these allegations are relevant to whether Plaintiffs will be able to obtain injunctive relief, the Court

24  finds that Plaintiffs' claims are not based on these specific Product labels and therefore declines to

25  take judicial notice of these exhibits.

26       In sum, the Court GRANTS Colgate's request as to Exhibits 4, 8 and 9 and DENIES its

27  request as to Exhibits 7, 12 and 13.

28       <u>Exhibits 14-16</u>:  Exhibits 15 and 16 are screenshots taken from the CalRecycle website,

29

accessible at https://calrecycle.ca.gov/ and the website, https://www.epa.gov/recycle/frequent-questions-recycling, respectively.  Colgate argues that the Court should take judicial notice of these screenshots – and consider them in ruling on its motion to dismiss – because courts may take judicial notice of "undisputed and publicly available information displayed on government websites." *Id.* at 5 (quoting *King v. Cnty. of Los Angeles*, 885 F.3d 548, 555 (9th Cir. 2018); and citing *Kater v. Churchill Downs Inc*., 886 F.3d 784, 788 n.3 (9th Cir. 2018); *Sears v. County of Monterey*, No. 11-1876, 2013 WL 4510672, at *4 (N.D. Cal. Aug. 22, 2013)).  Colgate argues further that the Court should take judicial notice of Exhibit 14, which is a screenshot from the "I Want To Be Recycled" website, berecycled.org.  According to Colgate, the Environmental Protection Agency's website directs visitors to the "I Want To Be Recycled" website for "more information" about local recycling and thus, this screenshot, like the screenshots in Exhibits 15 and 16, is subject to judicial notice as information "publicly available" on a government website. *Id.* at 5.

It is well-established that under Rule 201 of the Federal Rules of Evidence, courts may take judicial notice of public records that are downloaded from an agency's official website.  *See, e.g.*, *Coal. for a Sustainable Delta v. Fed. Emergency Mgmt. Agency*, 812 F. Supp. 2d 1089, 1093 (E.D. Cal. 2011).  Such records "may be considered only for limited purposes[,]" however.  *Id.*  In particular, "[p]ublic records 'are subject to judicial notice under [Rule] 201 to prove their existence and content, but not for the truth of the matters asserted therein. *This means that factual information asserted in these document[s] or the meeting cannot be used to create or resolve disputed issues of material fact*.' " *Id.* (quoting *Coalition for a Sustainable Delta v. McCamman*, 725 F.Supp.2d 1162, 1183–84 (E.D. Cal.2010) (emphasis in original)). On this basis, the Court GRANTS Colgate's request as to Exhibits 15 and 16 and takes judicial notice of these documents for the limited purpose discussed above.  On the other hand, the Court DENIES the request as to Exhibit 14 because Colgate has not pointed to any authority that extends this rule to websites operated by private entities simply by virtue of the fact that they are linked to a governmental website.

**C.   Whether Plaintiffs' Have Plausibly Alleged That Colgate's Labeling Contains Any Representations or Omissions That Would Mislead Reasonable Consumers**

**1.   Legal Standards Governing the Reasonable Consumer Test**

The parties agree that all of Plaintiffs' claims – with the possible exception of the UCL unlawful claim[4] – are governed by the "reasonable consumer" test.  Under this standard, Plaintiffs "must show that 'members of the public are likely to be deceived. " *Ebner v. Fresh, Inc*., 838 F.3d 958, 965 (9th Cir. 2016) (internal quotations and citations omitted).   "[T]the reasonable consumer standard requires a probability 'that a significant portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances, could be misled.' " *Id.* (quoting *Lavie v. Procter & Gamble Co*., 105 Cal.App.4th 496, 508).

" '[W]hether a business practice is deceptive will usually be a question of fact not appropriate for decision on demurrer' under California law." *Mattero v. Costco Wholesale Corp*., 336 F. Supp. 3d 1109, 1117 (N.D. Cal. 2018) (quoting *Williams v. Gerber Products Co*., 552 F.3d 934, 938 (9th Cir. 2008)).  "[O]nly in a 'rare situation' can a court grant a motion to dismiss when a plaintiff claims that an advertisement is deceptive."  *Hernandez v. Radio Sys. Corp., No*. EDCV221861JGBKKX, 2023 WL 4291829, at *8 (C.D. Cal. May 10, 2023) (citing *Williams*, 552 F.3d  at 939; *Moore v. Mars Petcare US, Inc*., 966 F.3d at 1017). However, "where plaintiff's challenge to a statement on a label is easily dispelled because of other, similarly prominent or proximate statements[,]" it may be appropriate to decide this question on the pleadings.  *Mattero v. Costco Wholesale Corp*., 336 F. Supp. 3d 1109, 1117 (N.D. Cal. 2018) (citing *Kane v. Chobani, Inc*., 12-CV-02425-LHK, 2013 WL 5289253, at *10 (N.D. Cal. Sept. 19, 2013) ("it is not plausible that Plaintiffs believed, based on Defendant's '[o]nly natural ingredients' or 'all natural' representations, that the Yogurts did not contain added fruit juice."); *Jonathan Chuang v. Dr. Pepper Snapple Group, Inc*., CV1701875MWFMRWX, 2017 WL 4286577, at *4 (C.D. Cal. Sept. 20, 2017) ("Plaintiff does not adequately allege how the images and statements are false, in

---

[4] As to the UCL unlawful claim, which is based on Colgate's alleged failure to adhere to the requirements of the Green Guides, there is a disagreement because Plaintiffs contend labelling that does not adhere to the Green Guides is also  misleading  under the reasonable consumer test  as a matter of law whereas Colgate contends a label that does not adhere to the Green Guides is not necessarily misleading under the reasonable consumer standard.

1   particular because an independent review of the product labels reveals that the statements are not

2   false, as the products do contain the fruits and vegetables depicted, are made with fruit and

3   vegetable juice, and contain 100% of the daily value of Vitamin C."). Likewise, courts may decide

4   this question on the pleadings where they "have found that a modicum of common sense would

5   reveal the truth behind advertising."  *Smith v. Keurig Green Mountain, Inc.*, 393 F. Supp. 3d 837,

6   847 (N.D. Cal. 2019).

7   ## 2. Whether "Intrinsic" Recyclability Renders Claims Non-Misleading

8   Here, the theory of Plaintiffs' claims is relatively straightforward:  they allege that they

9   saw the "recyclable tube" claim on the Product label and purchased the Product because they

10  believed it was recyclable but in fact, the Product was not recyclable as "there is not a single

11  program that accepts toothpaste tubes of any kind" in California or in the United States" "because

12  of the processing concerns that they pose."  FAC ¶¶ 4, 43, 57-59.  Colgate, on the other hand,

13  contends its "recyclable" claims are accurate and not misleading because the Products are made

14  out of a type of plastic that is widely accepted by recycling facilities and therefore, that they are

15  intrinsically *capable* of being recycled, which is also what a reasonable consumer would expect.[5]

16  The Court finds Colgate's argument that Plaintiffs' claims must be dismissed on this ground

17  unpersuasive.

18  The allegations in this case are similar to the allegations in *Smith v. Keurig Green*

19  *Mountain, Inc.*, 393 F. Supp. 3d 837 (N.D. Cal. 2019), which the court found were sufficient to

20  plausibly allege that a reasonable consumer would be misled by the defendant's claims of

---

22  [5] In a footnote in its Motion, Colgate also asserts that "the Tom's Rapid Relief carton did not
23  contain any" "recyclability" representation when Lienhard purchased that Product and therefore,
    Plaintiff Lienhard's claims fail to the extent she alleges that she was misled by claims on that
24  Product.  Motion at 18 n. 12; *see also* FAC ¶ 59 ("On several occasions over the past four years,
    including on or around August 2022, Plaintiff Lienhard purchased Tom's of Maine Fluoride-Free
25  Rapid Relief Sensitive Toothpaste and Tom's of Maine Fluoride-Free Antiplaque and Whitening
    Toothpaste at a Walmart near her home in Arroyo Grande, California. She read the claim 'The
    First of Its Kind Recyclable Tube' on the Product and purchased it because she believed that it
26  was recyclable, which she understood to mean that recycling facilities that accept and recycle the
    Product are generally available to consumers in California.").  However, the image of the Tom's
27  Rapid Relief carton that was used at the time of Lienhard's alleged purchase, offered by Colgate
    as Spelman Decl., Ex. 9, shows that the packaging of that Product did, in fact, refer to "the first of
28  its kind recyclable tube[,]" albeit in small print.  *See* Spelman Decl., Ex. 9. Therefore, the Court
    rejects this argument.

United States District Court
Northern District of California

recyclability. In *Smith*, the defendant sold single-serve plastic coffee pods ("Pods") that it labeled as "recyclable." 393 F. Supp. 3d at 842.  FAC ¶¶ 1–2.  The plaintiffs alleged these claims were misleading because although the Pods were made from Polypropylene (#5) plastic, which was "a material currently accepted for recycling in approximately 61% of U.S. communities[,]" domestic municipal recycling facilities ("MRF") did not accept the Pods due to their size (the recycling facilities were "not equipped to capture materials as small as the Pods and separate them from the general waste stream[ ]") and the contamination risk the Pods posed. *Id.*  Although the defendant included disclaimer language on the labels that the Pods were "'[n]ot recyclable in all communities' and the directive for consumers to 'check locally' to determine recyclability at their local MRF[,]" the court found that the plaintiff had adequately alleged that a reasonable consumer would be misled, highlighting the plaintiffs' allegation that the Pods "were not recyclable at all." *Id.* at 846-847.  The court found that neither the disclaimers nor common sense would "clearly lead a person to believe that a package labeled 'recyclable' is not recyclable anywhere" and therefore concluded the plaintiff's claims were plausibly alleged. *Id.* at 847. Drawing all reasonable inferences in Plaintiffs' favor, the same is true here.

Colgate relies on *Swartz v. Coca-Cola Co.*, No. 21-4643, 2022 WL 17881771 (N.D. Cal. Nov. 18, 2022) to argue that a reasonable consumer would not be misled by its claims of recyclability because technically, it is true that the Products are capable of being recycled.  The Court finds, however, that Colgate reads that case too broadly.  In *Swartz*, the plaintiffs asserted that the claim "100% recyclable" on the defendant's single-use plastic bottles was misleading because some "bottles end[ed] up in landfills or incinerators due to a lack of recycling capacity and a lack of demand for recycled plastic."  No. 21-CV-04643-JD, 2022 WL 17881771, at *1 (N.D. Cal. Nov. 18, 2022).  The court found that these allegations failed to state a claim because "[n]o reasonable consumer would understand '100% recyclable' to mean that the entire product will always be recycled or that the product is 'part of a circular plastics economy in which all bottles are recycled into new bottles to be used again.'"  *Id.* (quoting plaintiffs' complaint).  The court continued,

> In everyday usage, "recyclable" is an adjective that means capable of being recycled (e.g., "the plate is made of recyclable paper"), or a

noun that denominates an object that can be recycled (e.g., "the students raised funds by selling recyclables to disposal facilities"). It does not mean a promise that an object will actually be recycled, as plaintiffs would have it. The allegation that defendants advertised recyclable bottles as part of a "circular plastics economy" does not plausibly establish that a reasonable consumer would interpret "recyclable" in the exaggerated manner that plaintiffs suggest. *See id.* ¶ 58; *see also Becerra v. Dr Pepper / Seven Up, Inc.*, 945 F.3d 1225, 1230 (9th Cir. 2019) (the word "diet" is not an "implicit weight-loss promise"). If anything, a reasonable consumer would understand that making an object recyclable is just the first step in the process of converting waste into reusable material, and not a guarantee that the process will be completed.

*Id.* at *1.

Colgate relies heavily on the statement in *Swartz* that "recyclable" "does not mean a promise that an object will actually be recycled." But the discussion that follows that statement makes clear that that reasoning in *Swartz* does not apply to the facts here. In particular, the court supported its conclusion by looking to the Green Guides provision governing when an unqualified claim of recyclability may be made, namely, "if recycling facilities are available to at least 60% 'of consumers or communities where the item is sold.' " *Id.* at *2 (quoting 16 C.F.R. § 260.12(b)(1)). The court found based on the allegations in the complaint that that standard seemed to be met, citing allegations that "acknowledge[d] that defendants' bottles 'may be accepted for recycling by some curbside programs,' and that consumers and communities in California have access to at least 75 Materials Recovery Facilities (MRFs) that process the plastics that comprise the bottles." *Id.* Furthermore, the court reasoned, while the complaint "cite[d] to reports about a nationwide lack of recycling infrastructure, capacity, and demand, . . . it allege[d] no facts about the processing capabilities of MRFs in California *and never allege[d] that any MRFs reject defendants' products.*" *Id.* (emphasis added). In contrast, that is just what is alleged here. Unlike the plaintiffs in *Swartz*, Plaintiffs do not assert that Colgate's claims are misleading because consumers would understand them to "guarantee" that the Products will actually be recycled. Rather, they assert that they are misleading because a reasonable consumer would not expect that the Product is not accepted for recycling by *any* existing recycling program.

In a footnote, Colgate attempts to get around this language in *Swartz* by arguing that Plaintiffs' complaint "contains no plausible allegations that MRFs lack the capability to process

34

recyclable toothpaste tubes, which are compatible with the HDPE #2 plastic recycling stream; rather, the Complaint alleges that MRFs are reluctant to accept such tubes because of the presence of non-recyclable tubes in the market." Motion at 13 n. 8. They further distinguish "other cases where the products were allegedly rejected by recycling facilities due to the products' size, shape, or other intrinsic characteristic (*see, e.g., Smith v. Keurig Green Mountain, Inc*., 393 F. Supp. 3d 837 (N.D. Cal. 2019))" on the basis that "here, MRFs' alleged rejection of the Products [is] based on external market circumstances" and therefore "does not render the 'recyclable' claim false or misleading."   The Court rejects this tortured reasoning.

First, Colgate mischaracterizes the allegations in the FAC when it makes the conclusory statement that Plaintiffs merely allege that recycling facilities are "reluctant" to accept their tubes for recycling and does not plausibly allege that facilities actually reject them for recycling.  In fact, Plaintiffs' FAC alleges repeatedly that virtually no recycling facilities in California or the United States accept their product for recycling.  *See, e.g.*, FAC ¶¶ 4 ("virtually all of the municipal recycling programs and materials recovery facilities . . . in California and the United States reject the Products"), 6 ("Defendant knows that the Products almost invariably end up in landfills or incinerated because recycling facilities do not accept them."), 34 ("Although the Product was designed to be theoretically recyclable, in practice, recycling facilities do not accept the redesigned tubes."), 43 (www.earth911.com, the largest and most comprehensive database of recycling centers in the country, shows that there is not a single program that accepts toothpaste tubes of any kind.)

Second, the Court finds unpersuasive Colgate's assertion that its claims are not misleading – even if recycling facilities uniformly reject their Product for recycling – because the Products are rejected as a result of "external market circumstances" rather than anything intrinsic to the product.  Colgate does not explain why a reasonable consumer would not be equally likely to be misled by its claims of recyclability, regardless of the reason for rejecting the Products, where the Products are (allegedly) uniformly rejected by recycling facilities in California and the United States.  Moreover, its assertion that the allegations in the FAC do not point to anything intrinsic to the Products that causes them to be rejected by recycling facilities is incorrect.  Plaintiffs point to

35

two specific features of the Products that cause recycling programs to reject them: 1) their shape; and 2) the fact that "their Products cannot be fully emptied, and the leftover toothpaste contaminates the recyclable waste stream, which makes the Products unrecyclable and jeopardizes the recyclability of truly recyclable materials."  FAC ¶ 4.

As to the shape of its Products, Colgate's assertion that it is not the shape of its own recyclable toothpaste tubes but only the shape of the *non*-recyclable tubes that causes the Products to be rejected makes no sense.  Clearly, it is the shape of *both* types of tube, which is the same, that allegedly results in the Products being rejected by recycling facilities.  Thus, Colgate's assertion that "external market circumstances" are the reason its Products are allegedly rejected by recycling facilities is not persuasive.

The Court also rejects Colgate's assertion that it need not accept Plaintiffs' allegations related to the contamination risk because the only specific fact they allege linking that risk to rejection of Colgate's Products by recycling facilities is the statement in the Bloomberg Article by Peter Keller, Vice President of Sustainability at Republic Services, Inc., identifying "leftover toothpaste" as a "concern[.]"  Motion at 10 (citing FAC ¶ 40).  Plaintiffs have expressly alleged that "[t]here is an insurmountable contamination risk caused by leftover toothpaste. Even when consumers know it is required, it is impossible for them to remove all of the toothpaste from the tubes before recycling them. Thus, even if a recycling facility accepts irregularly shaped HDPE plastic, the tubes are still not accepted because they are not clean and free of contaminants."  FAC ¶ 39.  This is all Rule 8 requires.  Furthermore, the fact that the Bloomberg Article "does not indicate . . . that toothpaste tubes are *not* accepted for recycling based on the potential presence of residue in the tubes," Motion at 10, is  not sufficient to render implausible Plaintiffs' allegations throughout the complaint on this issue.  Rather, this question is more appropriately addressed at a later stage of the case, when the factual record has been developed.

The Court also finds Colgate's reliance on *Curtis v. 7-Eleven, Inc*., No. 21-CV-6079, 2022 WL 4182384, at *1 (N.D. Ill. Sept. 13, 2022) to be unpersuasive.  In that case, the plaintiff purchased from a 7-Eleven store foam plates, foam cups, party cups, and freezer bags that were described as "recyclable" on the packaging. 2022 WL 4182384, at *1.  She alleged that she

United States District Court
Northern District of California

purchased the products based on these claims and later placed them in her recycling bin believing they would be recycled but that in reality, "the products aren't recycled that often because few recycling facilities take that type of plastic" and furthermore, "some of the products lacked markings – recycling designations known as RIC labels – and thus did not give recycling facilities the necessary information to sort the products." *Id.*   The plaintiff asserted a claim under the Illinois Consumer Fraud Act ("ICFA") but the court found that the claim failed to the extent it was based on the limited number of recycling facilities, concluding that a reasonable consumer would understand that the claim "recyclable" is "not a guarantee that there are local facilities that recycle that type of plastic" and "does not mean 'Will Be Recycled at a Facility Near YOU!'" *Id.*  at * 14.

In reaching this conclusion, the court in *Curtis* relied on dictionary definitions of the suffix "-able" and "common usage." *Id.*  at *13 (" 'Drinkable' means you can drink it. 'Edible' means you can eat it. 'Drivable' means you can drive it. 'Fixable' means you can fix it. 'Movable' means you can move it. 'Washable' means you can wash it. 'Readable' means you can read it. 'Reversible' means, if you must, you can reverse it. 'Recyclable' means you can recycle it.").  The Court rejected the plaintiff's reliance on the Green Guides requirements governing when claims related to recyclability are deceptive, observing that "[y]our average consumer at 7-Eleven probably doesn't have the FTC's policy statements at his or her fingertips when picking up a bag of foam plates for the backyard BBQ" and further opining that "[p]eople buying red party cups at 7-Eleven are more likely to be thinking about beer pong than the FTC's consumer guidelines." *Id.* at *16.

Nonetheless, the court in *Curtis* did not reject the plaintiff's claim in its entirety, finding that as to the products that were labeled as "recyclable" but did not contain RIC numbers – the foam plates and the freezer bags -- a reasonable consumer would be deceived because "without the markings, the products can't be recycled." *Id.*  at *17. In particular, despite the fact that these products were made of a type of plastic that was capable of being recycled, the lack of markings made it impossible for the plates and cups to be "separated" for recycling during the sorting process. *Id.*  The court found that to the extent the plaintiff's claim was based on this theory, it survived because the theory was "about the inherent qualities of the product itself." *Id.*

1    Here, Plaintiffs contend *Curtis* should not be followed because the court in that case chose

2  to disregard the Green Guides as not being probative of whether a reasonable consumer would be

3  misled, arguing that following that approach is inconsistent with California law.  The Court need

4  not decide that question, however, because it finds that the facts in *Curtis* are distinguishable from

5  the facts here.  First, the plaintiff in that case did not allege that *no* recycling facility accepted the

6  products at issue for recycling. Rather, the court found that "RIC No. 5 plastic can, in fact, be

7  recycled. It's recyclable! It just doesn't happen very often, or in very many places." *Id.* at *14.

8  Second, to the extent that the reasoning in *Curtis* could be construed as a holding that a

9  "recyclable" claim is not misleading so long as the product is made of a type of plastic that is

10  generally accepted for recycling even when that product is *never* recycled, the court's holding as

11  to the products that do not contain RIC markings clearly precludes that broad interpretation.  As to

12  those products, the court found that the intrinsic characteristics of the product that made it

13  impossible for recycling facilities to separate them from non-recyclables was sufficient to support

14  the conclusion that the products could not be recycled (and claims that they were "recyclable"

15  were therefore misleading), even though theoretically it would be possible to recycle them given

16  the type of plastic they were made from.  As discussed above, Plaintiffs' theory here is based on

17  intrinsic characteristics of the Products that prevent it from being recycled.  Indeed, the allegations

18  here that recycling facilities are unable to distinguish the "recyclable" tubes from the non-

19  recyclable tubes and therefore cannot separate them for recycling is similar to the allegations in

20  *Curtis* that the court found were sufficient to state a claim as to the unmarked products.  Therefore,

21  Colgate's reliance on that case is misplaced.

22    **3.  Whether Disclaimers Render Colgate's Claims Non-Misleading**

23    Colgate contends its "recyclable" claims on the Products are not misleading because of

24  statements on the Product packaging that consumers can "learn more" about the recyclable tube on

25  the Product website.  According to Colgate, it is transparent about the Product's recyclability on

26  the Tom's and Colgate websites and makes clear to consumers that some recycling facilities do

27  not accept Colgate's "recyclable tube."  The Court rejects this argument.

28    As noted above, it is appropriate to grant a motion to dismiss on a deceptive advertising

United States District Court
Northern District of California

claim only in rare situations where the plaintiff's challenge to a statement is "easily dispelled because of other, similarly prominent or proximate statements[,]" *Mattero*, 336 F. Supp. 3d at 1117, or on the basis of common sense. *Smith v*, 393 F. Supp. 3d at 847. Instead, Colgate relies on statements on its websites to show that a reasonable consumer would not be misled by the recyclability claims on the Product packaging without pointing to any allegations that suggest that a reasonable consumer would be familiar with those statements at the time of purchase.

Furthermore, courts are generally reluctant to charge a reasonable consumer with the obligation of reviewing product websites or other written product materials before purchasing the product.  In *Williams*, for example, the Ninth Circuit found that the district court had erred in granting a motion to dismiss the plaintiffs' false advertising claims challenging statements and images of fruit on the front of the defendant's "Fruit Juice Snacks" packaging on the basis that the ingredients list on the side of the package would have dispelled any false impression about those claims.  *Williams v. Gerber Prod. Co.*, 552 F.3d 934, 939 (9th Cir. 2008).  The district court reasoned that "no reasonable consumer upon review of the package as a whole would conclude that Snacks contains juice from the actual and fruit-like substances displayed on the packaging particularly where the ingredients are specifically identified." *Id.* (quoting *Williams v. Gerber Prod. Co.*, 439 F. Supp. 2d 1112, 1116 (S.D. Cal. 2006)).  The Court of Appeals rejected this reasoning, stating:

> We disagree with the district court that reasonable consumers should be expected to look beyond misleading representations on the front of the box to discover the truth from the ingredient list in small print on the side of the box. The ingredient list on the side of the box appears to comply with FDA regulations and certainly serves some purpose. We do not think that the FDA requires an ingredient list so that manufacturers can mislead consumers and then rely on the ingredient list to correct those misinterpretations and provide a shield for liability for the deception. Instead, reasonable consumers expect that the ingredient list contains more detailed information about the product that confirms other representations on the packaging.

*Id.* at 939-940.

Based on the reasoning in *Williams*, courts have also rejected defendants' reliance on statements or disclaimers on their websites to argue that claims on product packaging are not misleading.  *See, e.g., Hernandez v. Radio Sys. Corp.*, No. EDCV221861JGBKKX, 2023 WL

4291829, at *7 (C.D. Cal. May 10, 2023) (denying motion to dismiss consumer protection claims where defendant pointed to statements on its website and in product manuals to show claims on its packaging were not misleading and concluding that under *Williams*, a reasonable consumer is not expected to conduct this sort of research prior to purchasing a product); *Cisco Sys. Inc. v. Link US, LLC*, No. 18-CV-07576-CRB, 2019 WL 6682838, at *9 (N.D. Cal. Dec. 6, 2019) ("The Ninth Circuit has found a disclaimer on the side of a box insufficient to cure misleading statements on the front of a box, so a disclaimer 'buried deep' in Cisco's website is insufficient to set a reasonable consumer straight.").

Colgate ignores this well-established case law, citing a case that is entirely distinguishable, *Bobo v. Optimum Nutrition, Inc.*, No. 14CV2408 BEN (KSC), 2015 WL 13102417, at *1 (S.D. Cal. Sept. 11, 2015). There, the court granted a motion to dismiss and distinguished *Williams,* finding that the "100% WHEY" claim on the front of the package that the plaintiffs alleged was misleading would not have misled a reasonable consumer who read the *other* statements on the front of the package. *Bobo*, 2015 WL 13102417, at *5 ("Viewing only the information on the front of the label, stated in legible text, a reasonable consumer would not be deceived or confused into thinking the entire contents of the container is protein."). Far from supporting Colgate's position, *Bobo* reinforces the rule that in general, clarifying statements or disclaimers do not cure a misleading statement on product packaging if it requires the consumer to conduct a research project (or even to flip the product over to read fine print elsewhere on the package) prior to purchasing the product.

*Stewart v. Kodiak Cakes, LLC*, 537 F. Supp. 3d 1103 (S.D. Cal. 2021) also does not support Colgate's argument. There, the court concluded that where the plaintiffs' complaint referred "extensively to Defendant's online advertising, and online advertising form[ed] a basis of their claims[,]" it was not improper for the court to consider, on a motion to dismiss, exhibits containing copies of webpages showing images of product labels under the doctrine of incorporation by reference. 537 F. Supp. 3d at 1121-1122. In overruling the plaintiffs' objections, the court noted that the plaintiffs did not "genuinely question the authenticity of the exhibits," *id*. at 1121, and earlier in the discussion the court noted that "the labels have a link to their respective

product pages on Defendant's website, and Defendant supplies their webpage where the publicly available images can be found." *Id.* at 1120. Colgate latches on to the latter phrase to suggest that in *Stewart*, the court considered statements on the defendant's website to evaluate claims on product packaging because the website URL's were printed on the packaging. In fact, the case does not address that issue at all. Therefore, Colgate's reliance on *Stewart* in support of its contention that statements on the Product websites must be taken into account in applying the reasonable consumer test is misplaced.

Finally, the Court finds that Colgate's reliance on *Lizama v. H&M Hennes & Mauritz LP*, No. 4:22 CV 1170 RWS, 2023 WL 3433957, at *1 (E.D. Mo. May 12, 2023), is misplaced. In marked contrast to this case, the plaintiff in that case alleged that he purchased a product in the defendant's "conscious choice" collection "after he 'saw the labeling, advertising, [the defendant's] website, and read the packaging." 2023 WL 3433957, at *4. The claims that the plaintiff alleged were misleading were not made on the product label but instead, were "taken from the Sustainability section of [the defendant's] website." *Id.* Under those circumstances, the court found that it was "not constrained to accept Lizama's allegations about what the website says and may instead consider the content of the website in its the entirety[,]" citing case law holding that "when [a] complaint alleges [the] contents of [a] website are misleading, the complaint necessarily embraces the website and the Court can consider [its] contents when deciding a motion to dismiss." *Id.* (citing *S&H Distribution, LLC v. Meyer Laboratory, Inc*., 2022 WL 5255323, at *3 (D. Neb. Oct. 6, 2022)). Assuming *Lizama* is good law in the Ninth Circuit – a question the Court does not decide – it is clearly distinguishable from the facts here.

For these reasons, the Court finds that Colgate has pointed to no disclaimers that render the statements on its Products concerning recyclability to be non-misleading as a matter of law.

### 4.  The Green Guides

The Federal Trade Commission has promulgated "Guides for the Use of Environmental Marketing Claims," codified at 16 C.F.R. 260.1, *et seq*. ("Green Guides"), to "help marketers avoid making environmental marketing claims that are unfair or deceptive" based on the FTC's "views on how reasonable consumers likely interpret [those] claims." *Id*. at § 260.1(a), (d). The

United States District Court
Northern District of California

California legislature codified the Green Guides to make it "unlawful for a person to make an untruthful, deceptive, or misleading environmental claim, whether explicit or implied." Cal. Bus. & Prof. Code § 17580.5.  Colgate contends the Green Guides do not control reasonable consumers' understanding of the term "recyclable tube," Motion at 2, but concedes that those standards apply at least to Plaintiffs' UCL unlawful claim.[6] Colgate contends, however, that that claim fails because the "recyclable" claims on the Product packaging is consistent with the Green Guides.  The Court disagrees.

The Green Guides provide that "[i]t is deceptive to misrepresent, directly or by implication, that a product or package is recyclable." 16 U.S.C. § 260.12(a).  In particular, "[a] product or package should not be marketed as recyclable unless it can be collected, separated, or otherwise recovered from the waste stream through an established recycling program for reuse or use in manufacturing or assembling another item." *Id.*   Under the Green Guides, "marketers can make unqualified recyclable claims" only "[w]hen recycling facilities are available to a substantial majority of consumers or communities where the item is sold." 16 U.S.C. § 260.12(b)(1).  "The term 'substantial majority,' as used in this context, means at least 60 percent." *Id.* The Green Guides further provide that "[i]f any component significantly limits the ability to recycle the item, any recyclable claim would be deceptive. An item that is made from recyclable material, but, because of its shape, size, or some other attribute, is not accepted in recycling programs, should not be marketed as recyclable." 16 C.F.R. § 260.12(d).

Colgate contends its recyclable claims comport with these standards because "the Products are compatible with the HDPE #2 recycling stream, for which recycling facilities are 'available' to 87% of consumers, which more than satisfies the 'substantial majority' threshold." Motion at 20 (citing 16 C.F.R. § 260.12(b)(1)). This argument flies in the face of § 260.12(d), however because, as discussed above, Plaintiffs have alleged that the Products, while "made from recyclable material[,]" are uniformly rejected by recycling facilities because of their "shape" (which is

---

[6] Because the Court does not rely on the Green Guides in finding that Plaintiffs plausibly allege that a reasonable consumer would be misled by the recyclable claims on Colgate's packaging, the Court need not decide whether statements that run afoul of the Green Guides are, per se, misleading under California law, as Plaintiffs contend.

United States District Court
Northern District of California

1    indistinguishable from non-recyclable tubes, making it impossible to separate the Products for

2    recycling) and "some other attribute" (the risk of contamination the Products pose to the recycling

3    stream).

4         Colgate also contends the claims on its packaging are not misleading under the Green

5    Guides in light of the information it provides on the Product websites.  However, it has pointed to

6    nothing in the Green Guides or the case law applying the Green Guides that suggests that this

7    argument has any more merit than the analogous argument Colgate makes as to the reasonable

8    consumer test.  The Court therefore rejects this argument as well.

9         Therefore, the Court concludes that Plaintiffs have adequately alleged that Colgate's

10   recyclable claims are misleading under the standards set forth in the Green Guides.

11        **5.   Cal. Pub. Res. Code § 42061(a)(3)(B)**

12        Colgate invokes Cal. Pub. Res. Code § 42061(a)(3)(B) in support of its assertion that the

13   claims on the Products are not misleading.  That provision allows the California Department of

14   Resources Recycling and Recovery to grant an exemption from the general standards that govern

15   what is considered "recyclable" under Cal. Pub. Res. Code § 42355.51(d)(2)(A) & (B).[7]   In

16   particular, such an exemption may be granted as to:

17              materials that are trending toward meeting the requirements in
              subparagraphs (A) and (B) of paragraph (2) of subdivision (d) of
18              Section 42355.51 and measurable increase of statewide collection and

19   _____

20   [7] These subsections provide, in relevant part:

21        2) Subject to paragraph (3), a product or packaging is considered recyclable in the state if,
     based on information published by the department pursuant to subparagraph (B) of
22   paragraph (1), the product or packaging is of a material type and form that meets both of
     the following requirements:

23        (A) The material type and form is collected for recycling by recycling programs for
24              jurisdictions that collectively encompass at least 60 percent of the population of the
              state.

25        (B) (i) The material type and form is sorted into defined streams for recycling
              processes by large volume transfer or processing facilities, as defined in
26              regulations adopted pursuant to Section 43020, that process materials and
              collectively serve at least 60 percent of recycling programs statewide, with the
27              defined streams sent to and reclaimed at a reclaiming facility consistent with the
              requirements of the Basel Convention.

28   Cal. Pub. Res. Code  § 42355.51(d)(2)(A) & (B)(i).

> sorting rates through either statewide recycling programs or alternative programs, such as take-back systems, and for which the continued increase in the collection, sorting, and viable responsible end market development the department determines will be disrupted by a loss of a recyclable designation.

Cal. Pub. Res. Code § 42061(a)(3)(B). Colgate does not dispute, however, that it has not received such an exemption. Therefore, Section 42061 has no bearing on the Court's analysis.

### D.   Whether Plaintiffs Have Standing to Seek Injunctive Relief

Colgate challenges Plaintiffs' standing to seek injunctive relief on two grounds: 1) because "they are on notice that the Products may not be accepted by their local municipal recycling facilities, and they have access to updated acceptance information via objective, third-party sources[,]" Reply at 11-12 (citing FAC ¶¶ 57–59); and 2) the Product labels have now been modified to advise consumers that their "community may not yet accept tubes for recycling," so they should "check locally" to confirm. Motion at 22 (citing Spelman Decl., Exs. 7, 12). The Court has already found that Exhibits 7 and 12 are not subject to judicial notice and therefore declines to address the second argument. The question of whether changes in Colgate's labels have cured any deceptive statements such that Plaintiffs' claims for injunctive relief may be moot is more appropriately addressed at a later stage of the case when the factual record has been developed. The Court also rejects Colgate's first argument.

"[A] previously deceived consumer may have standing to seek an injunction against false advertising or labeling, even though the consumer now knows or suspects that the advertising was false at the time of the original purchase," because "[k]nowledge that the advertisement or label was false in the past does not equate to knowledge that it will remain false in the future." *Davidson v. Kimberly-Clark Corp*., 889 F.3d 956, 969 (9th Cir. 2018). In *Davidson*, the plaintiff brought FAL, CLRA, UCL, and fraud claims against the manufacturer of pre-moistened wipes that it marketed as "flushable" where the wipes were not truly flushable. 889 F.3d at 961-962, 964. the district court dismissed the injunctive relief claim, finding that the plaintiff lacked standing because she had no intention of purchasing the same product in the future and therefore had no risk of future injury. *Id*. at 963, 967. The Ninth Circuit reversed, however, finding that a plaintiff seeking injunctive relief may demonstrate an injury-in-fact sufficient to confer Article III

standing based on "plausible allegations that [they] might purchase the product in the future, despite the fact it was once marred by false advertising or labeling, as [they] may reasonably, but incorrectly, assume the product was improved." *Id.* at 970.

Here, the allegations in the FAC are precisely tailored to the standard articulated in *Davidson*. In particular, the FAC alleges as follows:

> Plaintiffs continue to desire to purchase from Defendant toothpaste tubes that are truly recyclable as reasonable consumers understand the term. However, Plaintiffs are unable to determine at the point of purchase if recycling facilities that recycle the Products are available to a substantial majority of consumers or communities in California. Plaintiffs understand that the design and composition of the Products may change over time. But as long as Defendant may use the phrase "Recyclable Tube" and similar representations on Products that are not recyclable as reasonable consumers understand the term, then when presented with Defendant's packaging, Plaintiffs continue to have no way of determining whether the recyclability representations are in fact true. Thus, Plaintiffs are likely to be repeatedly presented with false or misleading information when shopping and they will be unable to make informed decisions about whether to purchase Defendant's Products and will be unable to evaluate the different prices between Defendant's Products and competitors' Products. Plaintiffs are further likely to be repeatedly misled by Defendant's conduct, unless and until Defendant is compelled to ensure that its recycling representations are accurate.

FAC ¶ 60. At the pleading stage of the case, this is sufficient to establish standing to seek injunctive relief.

The Court rejects Colgate's reliance on *Sinatro v. Barilla Am., Inc.*, 635 F. Supp. 3d 858 (N.D. Cal. 2022) in support of a contrary conclusion. There, the plaintiffs alleged that they were misled by claims on the package that they understood meant that the product was made in Italy. 635 F. Supp. 3d at 865. They sought injunctive relief on their claims, even though they were now on notice that the product was *not* made in Italy, asserting that under *Davidson*, they faced "an imminent or actual threat of future harm from being deceived by the [the claims on the product]." *Id.* at 874. In particular, they pointed "to their allegations that they continue to see the products available for purchase and desire to purchase them again if the 'Challenged Representation was in fact true,' that is, if the products were made or manufactured in Italy using ingredients from Italy." *Id.* The Court in *Sinatro* distinguished *Davidson*, however, finding that it was "implausible to expect such facts to come to pass." *Id.* at 875.

The facts here are more similar to *Davidson* than they are to *Sinatro*.  Plaintiffs here, like the Plaintiffs in *Davidson*, may reasonably (but incorrectly) believe that future claims of recyclability are accurate given Colgate's proclaimed ongoing efforts to ensure that its toothpaste tubes end up being actually recycled.  In contrast, there is nothing in *Sinatro* that suggests that the plaintiffs in that case alleged any facts that would give rise to a plausible inference that the company was likely to move production of its product to Italy.  Therefore, the Court rejects Colgate's argument that Plaintiffs do not have standing to seek injunctive relief.

IV.     **CONCLUSION**

For the reasons stated above, the Motion is DENIED.

**IT IS SO ORDERED.**

Dated:  February 6, 2024

_____
JOSEPH C. SPERO
United States Magistrate Judge