**GUTRIDE SAFIER LLP**
Seth A. Safier (State Bar No. 197427)
  seth@gutridesafier.com
Marie A. McCrary (State Bar No. 262670)
  marie@gutridesafier.com
Rajiv V. Thairani (State Bar No. 344390)
  rajiv@gutridesafier.com
100 Pine Street, Suite 1250
San Francisco, CA 94111
Telephone: (415) 639-9090
Facsimile:  (415) 449-6469

Francisco J. Rolon (*pro hac vice* pending)
  francisco@gutridesafier.com
10 Glenlake Parkway, Suite 130
Atlanta, GA 30328
Telephone: (415) 639-9090
Facsimile:  (415) 449-6469

*Attorneys for Plaintiffs*

UNITED STATES DISTRICT COURT FOR THE

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MIKHAIL GERSHZON, KRISTIN DELLA, and JILL LIENHARD, on behalf of themselves, the general public, and those similarly situated,<br><br>     Plaintiffs,<br><br> v.<br><br>COLGATE-PALMOLIVE COMPANY,<br><br>     Defendant. | Case No. 3:23-cv-04086-JCS<br><br>PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR CLASS CERTIFICATION<br><br>DATE: December 17, 2025<br>TIME: 9:30 a.m.<br>CTRM: Videoconference |

## <u>NOTICE OF MOTION AND MOTION FOR CLASS CERTIFICATION</u>

Please take notice that on December 17, 2025, at 9:30 a.m., or soon thereafter as this motion may be heard, Plaintiffs Mikhail Gershzon, Kristin Della, and Jill Lienhard will, and hereby do, move, pursuant to Rule 23 of the Federal Rules of Civil Procedure, to certify the following class:

> **<u>Class</u>**: All persons who purchased, in the State of California, a Colgate or Tom's of Maine brand of toothpaste labeled with a "Recyclable Tube" claim and/or a chasing arrows symbol between August 29, 2019, and the date of notice of pendency.

The Class will pursue claims under the Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200, *et seq.* ("UCL"); the California Legal Remedies Act, Cal. Civ. Code §§ 1750, *et seq.* ("CLRA"); the California False Advertising Law, Cal. Bus. & Prof. Code §§ 17500, *et seq.* ("FAL"); and for common law fraud, deceit and/or misrepresentation, and unjust enrichment.

Plaintiffs further request that the Court appoint (1) Plaintiffs Mikhail Gershzon, Kristin Della, and Jill Lienhard as class representatives on all claims, and (2) Gutride Safier LLP as lead counsel. Plaintiffs finally request that the Court order the parties to meet and confer and present this Court, within fifteen (15) days of an order granting class certification, proposed notice, and plan of notice to the certified class.

# TABLE OF CONTENTS

I.      INTRODUCTION ..................................................................................................1

II.     STATEMENT OF FACTS .....................................................................................2

        A.      Colgate's Recyclability Claim Is Material to Consumers.....................................2

        B.      Colgate Willfully Ignored the Green Guides, and Multiple Warnings, in Making Its Deceptive Recyclability Claim. .......................................................3

                i.      The APR Did Not Support Colgate's Recyclability Claim Because Recycling Facilities Do Not Accept the Products.....................................3

                ii.     How2Recycle Rejected Colgate's Bid to Use Its Well-Known Label. ....5

                iii.    Stina Inc. Also Warned Colgate About the Recyclability Claim.............6

        C.      Colgate Has Known for Years that Its Recyclability Claim Is False...................6

        D.      The Entire Class Was Exposed to the Recyclability Claim. ...............................7

        E.      Consumers Have a Common Understanding of the Recyclability Claim............8

        F.      The Recyclability Claim Is Unlawful and Deceptive Classwide.........................9

        G.      Mr. Dennis and Mr. Weir have Proposed a Methodology for Calculating Restitution and Damages Owed to the Class. ....................................................9

III.    ARGUMENT .......................................................................................................10

        A.      The Class Satisfies the Requirements of Rule 23(a)..........................................11

                i.      The class is sufficiently numerous. ........................................................11

                ii.     There are common questions of fact and law. ........................................11

                iii.    Plaintiffs are typical of the class. ...........................................................13

                iv.     Plaintiffs and counsel will adequately protect the Class's interests. .......14

        B.      The Class Satisfies the Requirements of Rule 23(b)(3)....................................15

                i.      Common questions predominate on unlawfulness. ................................16

                ii.     Common questions predominate about whether Colgate's labels were deceptive to reasonable consumers.........................................................17

                iii.    Common questions predominate on restitution and damages.................18

                iv.     Common questions predominate on materiality. ....................................20

PLAINTIFFS' MOTION FOR CLASS CERTIFICATION
CASE NO. 3:23-CV-04086-JCS

v.      Common questions predominate on punitive damages. ........................22

vi.     A class action is superior. ........................................................23

C.    The Class Also Satisfies the Requirements of Rule 23(b)(2). ...........................23

IV.   CONCLUSION....................................................................................................24

PLAINTIFFS' MOTION FOR CLASS CERTIFICATION
CASE NO. 3:23-CV-04086-JCS

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Armstrong v. Davis*, 275 F.3d 849 (9th Cir. 2001) ....................................................................11

*Astiana v. Kashi Co.*, 291 F.R.D. 493 (S.D. Cal. 2013) ........................................................13, 15

*Bailey v. Rite Aid Corp.*, No. 4:18-cv-06926 YGR, 2021 U.S. Dist. LEXIS 81654
    (N.D. Cal. Apr. 28, 2021) ....................................................................................................20

*Banks v. R.C. Bigelow, Inc.*, No. 20-cv-06208 DDP (RAOx),
    2023 U.S. Dist. LEXIS 135167, (C.D. Cal. July 31, 2023) .................................................22

*Behar v. Northrop Grumman Corp.*, No. 2:21-cv-03946-HDV-SKx,
    2024 U.S. Dist. LEXIS 157399 (C.D. Cal. July 1, 2024) .....................................................24

*Briseno v. ConAgra Foods, Inc.*, 674 F. App'x 654 (9th Cir. 2017)..........................................20

*Bush v. Rust-Oleum Corp.*, No. 20-cv-03268-LB, 2024 U.S. Dist. LEXIS 20131
    (N.D. Cal. Feb. 5, 2024)........................................................................................................25

*Carnegie v. Household Int'l, Inc.*, 376 F.3d 656 (7th Cir. 2004) ..............................................24

*CF Gainesville Inv'r, LLC v. Astroenery Solar, Inc.,* No. 2:21-CV-02654-CAS,
    2022 U.S. Dist. LEXIS 128188 (C.D. Cal. July 18, 2022) ..................................................21

*Chavez v. Blue Sky Natural Beverage Co.*, 268 F.R.D. 365 (N.D. Cal. 2010) ....................13, 15

*Comcast v. Behrend,* 133 S. Ct. 1426 (2013)..............................................................................19

*Cortez v. Purolator Air Filtration Products Co.*, 23 Cal. 4th 163 (2000) .................................18

*Falcone v. Nestle USA, Inc.*, No. 3:19-cv-723-L-DEB, 2024 U.S. Dist. LEXIS 214648
    (S.D. Cal. Sep. 25, 2024) ......................................................................................................22

*Fitzhenry-Russell v. Pepper Snapple Grp. Inc.*, 326 F.R.D. 592 (N.D. Cal. 2018)...................22

*General Telephone Co. of Southwest v. Falcon,* 457 U.S. 147 (1982).......................................11

*Gunaratna v. Dennis Gross Cosmetology LLC,* No. CV 20-2311-MWF (GJSx),
    2023 U.S. Dist. LEXIS 60796 (C.D. Cal. Apr. 4, 2023) .....................................................21

*Hadley v. Kellogg Sales Co.*, 324 F. Supp. 3d 1084 (N.D. Cal. 2018) ................................12, 20

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1998) ..................................................11, 14

*In re ConAgra Foods, Inc.*, 90 F. Supp. 3d 919 (C.D. Cal. 2015)..............................................20

*In re First All. Mortg. Co.*, 471 F.3d 977 (9th Cir. 2006)..........................................................12

*In re Lenovo Adware Litig.*, No. 15-MD-02624-RMW, 2016 WL 6277245
    (N.D. Cal. Oct. 27, 2016)......................................................................................................20

*In re Tobacco II Cases* (2009) 46 Cal. 4th 298...........................................................................17

*James v. Uber Techs. Inc.*, 338 F.R.D. 123 (N.D. Cal. 2021) ...................................................11

*Just Film, Inc. v. Buono*, 847 F.3d 1108 (9th Cir. 2017) .............................................................14

Korea Supply Co. v. Lockheed Martin Corp., 29 Cal. 4th 1134 (2003)...................................18

*Korolshteyn v. Costco Wholesale Corp.*, No. 3:15-cv-709-CAB-RBB,
   2017 U.S. Dist. LEXIS 38192 (S.D. Cal. Mar. 16, 2017) ................................................12, 16

*Krommenhock v. Post Foods, LLC*, 334 F.R.D. 552 (N.D. Cal. 2020) ........................13, 20, 22

*Kumar v. Salov N. Am. Corp.*, No. 14-CV-2411-YGR, 2016 U.S. Dist. LEXIS 92374
   (N.D. Cal. July 15, 2016).................................................................................................. passim

*Lytle v. Nutramax Labs.,* Inc., No. 22-55744, 2024 U.S. App. LEXIS 9722
   (9th Cir. Apr. 22, 2024) ......................................................................................................19, 21

*Maldonado v. Apple, Inc.*, 333 F.R.D. 175 (N.D. Cal. 2019) .....................................................19

*Mazza v. Honda American Honda Motor Co.,* 666 F.3d 581 (9th Cir. 2012) ..........................12

*Mullins v. Premier Nutrition Corp.*, No. 13-CV-01271-RS, 2016 WL 1535057
   (N.D. Cal. Apr. 15, 2016) ....................................................................................................16, 22

*Occidental Land, Inc. v. Superior Court,* 18 Cal. 3d 355 (1976) ...............................................21

*Pettit v. Procter & Gamble Co.*, No. 15-CV-02150-RS, 2017 WL 3310692
   (N.D. Cal. Aug. 3, 2017)...............................................................................................11, 12, 17

*Prescott v. Reckitt Benckiser LLC,* No. 20-cv-02101-BLF, 2022 U.S. Dist. LEXIS 135329
   (N.D. Cal. July 14, 2022)........................................................................................................12

*Pulaski & Middleman, LLC v. Google, Inc.*, 802 F.3d 979 (9th Cir. 2015) ..............................19

*Ries v. Arizona Beverages USA LLC*, 287 F.R.D. 523 (N.D. Cal. 2012) ............................13, 15

*Robinson v. J.M. Smucker Co.*, No. 18-cv-04654-HSG, 2019 U.S. Dist. LEXIS 78069
   (N.D. Cal. May 8, 2019)...........................................................................................................23

*Salas v. Toyota Motor Sales, United States, Inc.*, 2019 U.S. Dist. LEXIS 77847
   (C.D. Cal. Mar. 27, 2019) ........................................................................................................18

*Smith v. Keurig Green Mt., Inc.*, No. 18-cv-06690-HSG, 2020 U.S. Dist. LEXIS 172826
   (N.D. Cal. Sep. 21, 2020)................................................................................................... passim

*Staton v. Boeing Co.*, 327 F.3d 938 (9th Cir. 2003) ...................................................................15

*Stearns v. Ticketmaster Corp.*, 655 F.3d 1013 (9th Cir. 2011)...........................................16, 21

*Vizcarra v. Unilever United States Inc.*, No. 4:20-cv-02777 YGR, 2023 U.S. Dist. LEXIS
   38208 (N.D. Cal. Feb. 24, 2023)..............................................................................................11

*Walker v. Life Ins.of the Sw*., 953 F.3d 624 (9th Cir. 2020) ....................................................18

*Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011) .........................................................11, 12

PLAINTIFFS' MOTION FOR CLASS CERTIFICATION
CASE NO. 3:23-CV-04086-JCS

*Wang v. Massey Chevrolet*, 97 Cal.App.4th 856 (2002) .............................................................17

*Werdebaugh v. Blue Diamond Growers*, No. 12-CV-2724-LHK, 2014 U.S. Dist. LEXIS 71575 (N.D. Cal. May 23, 2014) ...................................................................................15

*West v. Cal. Servs. Bureau*, 323 F.R.D. 295 (N.D. Cal. 2017) ................................................16

*Williams v. Gerber Products Co.*, 553 F.3d 934 (9th Cir. 2008)..............................................12

*Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168 (9th Cir. 2010)..............................14

*Woodard v. Labrad*a, No. EDCV 16-189 JGB, 2021 U.S. Dist. LEXIS 189649 (C.D. Cal. Aug. 31, 2021) ...............................................................................................13

**Statutes**

Bus. & Prof. Code § 17203 ........................................................................................................18

Bus. & Prof. Code § 17535 ........................................................................................................19

Cal. Bus. & Prof. Code § 17580.5 .....................................................................................4, 9, 17

Cal. Bus. & Prof. Code §§ 17200 ................................................................................................1

Cal. Bus. & Prof. Code §§ 17500 ................................................................................................1

Cal. Bus. & Prof. Code §§ 17580 ...............................................................................2, 9, 14, 17

Cal. Bus. & Prof. Code §§ 17580.5 .........................................................................................2, 9

Cal. Civ. Code § 1780 ..........................................................................................................19, 23

Cal. Civ. Code § 3294 ..........................................................................................................19, 23

Cal. Civ. Code §§ 1750................................................................................................................1

Cal. Civ. Code §§ 1761..............................................................................................................19

Cal. Pub. Resources Code § 42355.51 .....................................................................................8, 9

**Rules**

Fed. R. Civ. P. 23................................................................................................................11, 15, 16

**Regulations**

16 C.F.R. § 260 ...........................................................................................................................9

16 C.F.R. § 260.12 ...................................................................................................2, 4, 10, 18

63 Fed. Reg. 84 .........................................................................................................................10

## I. INTRODUCTION

Defendant Colgate-Palmolive Company ("Defendant" or "Colgate") is one of the largest contributors to plastic pollution on Earth. But Colgate knows that consumers want to reduce plastic waste and are increasingly demanding sustainable products and packaging. Accordingly, to convince consumers that its toothpaste tubes were recyclable, Colgate announced, "the first of its kind recyclable tube" and rushed to slap "Recyclable Tube" and the chasing arrows symbol on its Colgate and Toms of Maine toothpaste products (the "Products"). Colgate rolled out this false and misleading recyclability claim (a/k/a greenwashing) over strong objections from recycling organizations, which told Colgate it could not support the claim when consumers did not have access to the necessary recycling facilities. In fact, Colgate's own employees admitted that the Products were ███████████████████████████████████████████████████████ ███████████████████████████████████ Rolon Decl., Ex. C at COL00317246–247. Colgate nonetheless persisted with its false and deceptive advertising because the sustainability claims upped demand for its Products.

Under both federal and California law, Colgate may not make an unqualified recyclable claim unless a "substantial majority" (that is, 60 percent or more) of consumers or communities where the Products are sold have access to recycling facilities that actually accept and recycle the Products. *See* 16 C.F.R. § 260.12; *see also* Cal. Bus. & Prof. Code §§ 17580, 17580.5. On behalf of the entire Class, Plaintiffs will show that the Products were not accepted in most recycling programs in California, and that recycling facilities that actually accept and recycle the Products have never been available to a "substantial majority" of Californians. Additional common evidence, including surveys and Colgate's own documents and admissions, will further establish Colgate's liability on a classwide basis.

This case is a textbook example for class certification because (1) all Class members were exposed to Colgate's recyclability claim and (2) the key liability questions—whether that recyclability claim violated the law and/or was likely to mislead the "reasonable consumer"—will be determined by objective evidence common to the Class. *See, e.g., Smith v. Keurig Green*

*Mt., Inc.*, No. 18-cv-06690-HSG, 2020 U.S. Dist. LEXIS 172826, at *21–22 (N.D. Cal. Sep. 21, 2020) (granting plaintiff's motion for class certification where "[p]laintiff's class claims allege a general theory that the Products are not recyclable in a substantial majority of communities such that the representation is misleading" and "[t]his common question can be addressed through classwide proof"). The monetary relief owed to Class members is likewise susceptible to classwide proof in the form of Plaintiffs' proposed conjoint price premium model. Because these common issues predominate over any individualized issues Colgate may conjure up, class certification should be granted.

## II.    STATEMENT OF FACTS

### A.  Colgate's Recyclability Claim Is Material to Consumers.

Defendant is a leading global consumer goods company, primarily known for its flagship Colgate and Tom's of Maine toothpaste brands. ██████████████████████████ ██████████████████████ Rolon Decl., Ex. D at Slide 6. ████████████████ ███████████████████████████████████████████████████████████ ██████████████████████████████ Rolon Decl., Ex. E at Slides 6, 9. ███████████ ███████████████████████████████████████████████████████████ Rolon Decl., Ex. F at COL00003791. ███████████████████████████████ ████████████████████████████████ Rolon Decl., Ex. G at Slide 15. ████████ ███████████████████████████████████████████████████████████ ████████ Rolon Decl., Ex. H at Slide 3. ████████████████████████████ ███████████████████████████████████████████████████████████ ████████ Rolon Decl., Ex. I at COL00417130.

In 2019, Colgate announced that it now had a "recyclable tube" and soon began using the claim "Recyclable Tube" and/or the chasing arrows symbol (the "Recyclability Claim") on its toothpaste Products in pursuit of greenwashing profits. *See* Rolon Decl., Exs. A-B. The endeavor involved several Colgate employees; most notably, Mr. Greg Corra, Colgate's Senior Vice President of Global Packaging; Ms. Anne Bedarf, Colgate's Director of Global Packaging & Plastics Sustainability; and Mr. Jun Wang, Colgate's Director of Global Packaging Innovation.

Rolon Decl., Ex. J (Corra Dep.) at 33:9–34:11, 127:11–15. Mr. Wang is a material scientist and "the inventor o[f] the recyclable tube." *Id.* at 12:10–15. Ms. Bedarf is a "subject matter expert" and would have assessed any "packaging sustainability claim," such as the Recyclability Claim at issue here. *Id.* at 12:21–24, 127:11–15, 133:6–10. But Ms. Bedarf did little more than rubberstamp Colgate's unsupported Recyclability Claim even when others refused.

### B.  Colgate Willfully Ignored the Green Guides, and Multiple Warnings, in Making Its Deceptive Recyclability Claim.

According to Colgate, recyclable means "[c]apable of being recycled." Rolon Decl., Ex. J at 76:18–20; *see also* Rolon Decl., Exs. N & W. But this self-serving definition intentionally ignored the Federal Trade Commission's Guides for the Use of Environmental Marketing Claims (the "Green Guides"), which are incorporated into California law, Cal. Bus. & Prof. Code § 17580.5; *see also* Cal. Pub. Resources Code § 42355.51. The Green Guides prohibit unqualified recyclable claims unless at least 60% of consumers have access to recycling facilities for the item and the item is regularly used in end markets. 16 C.F.R. § 260.12(a). Further, qualified recyclable claims must accurately reflect the level of access consumers have to facilities that actually recycle the item. 16 C.F.R. § 260.12(b). Any item that, because of some attribute, is not accepted in recycling programs should not be marketed as recyclable at all. 16 C.F.R. § 260.12(d). Thus, whether a product is appropriately labeled as recyclable turns not on the theoretical recyclability of the material used in the product, and certainly not on any individualized issues particular to each consumer, but on whether a sufficient percentage of recycling programs in California actually accept and process the product into useful end-market materials. As a common factual matter, and despite numerous warnings, Colgate knowingly violated the Green Guides by labeling the Products as recyclable.

### i.  The APR Did Not Support Colgate's Recyclability Claim Because Recycling Facilities Do Not Accept the Products.

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████ Rolon Decl., Ex. K at Def.'s

1    Response No. 4; Rolon Decl., Ex. W at Slide 99. The APR is a member organization which

2    represents    reclaimers    and    recyclers    in    connection    with    plastic    recycling.    *See*

3    https://plasticsrecycling.org/about-apr/ (last accessed Apr. 27, 2025). ███████████████

4    ████████████████████████████████████████████████████████████████████████████

5    ██████    Rolon Decl., Ex. L at Slide 5.

6    ███████████████████████████████████████████████████████████████████████

7    ████████████████████████████████████████████████████████████████████████████

8    ████████████████████████████████████████████████████████████████████████████

9    Rolon Decl., Ex. M at COL00064797. ██████████████████████████████████

10   ████████████████████████████████████████████████████████████████████████████

11   ████████████████████████████████████████████████████████████████████████████

12   ████████████████████████████████████████████████████████████████████████████

13   ██████████████████████  Rolon Decl., Ex. N at COL00049806 (emphasis added).

14   ██████████████████████████████████████████████████████████████████████  Rolon

15   Decl., Ex. O at COL00011427. ███████████████████████████████████████

16   ████████████████████████████████████████████████████████████████████████████

17   ██████████████████████████████████████████████████  *Id.*  at  COL00011426

18   (emphasis added). ███████████████████████████████████████████████████

19   ████████████████████████████████████████████████████████████████████████████

20   ████████████████████████████████████████████████████████████████████████████

21   ████████████████████████████████████████████████████████████████████████████

22   ████████████████████████  *Id.*

23   ███████████████████████████████████████████████████████████████████████

24   ██████████████████████████████████████████████████████  Rolon Decl., Ex. P

25   at COL00061240. ████████████████████████████████████████████████████

26   ████████████████████████████████████████████████  *Id.* at COL00061242. ████

27   ████████████████████████████████████████████████████████████████████████████

28

1 ████████████████████████████████████████████████████████████

2 ████████ *Id.* at COL00061239. ██████████████████████████████

3 ███████████████████████ *Id.* ██████████████████████████████

4 ████████████████████████████████████████████████████████████

5 ████████████████████████████████████████████████████████████

6 ████████████████████████████████████████████████████████████

7 ████████████████████████████████████████████████████████████

8 ████████████████████████████████████████████████████████████

9 █████████████████████████ Rolon Decl., Ex. R at COL00030124.

10 But Colgate nonetheless pushed forward with its deceptive claims, ignoring the APR's concerns

11 and all applicable legal standards.

12         For this reason, Colgate's relationship with the APR soured. ██████████████████

13 ████████████████████████████████████████████████████████████

14 ████████████████████████████████████████████████████████████

15 ███████████████ Rolon Decl., Ex. S at COL00312285–86. ██████████

16 ████████████████████████████████████████████████████████████

17 ████████████████████████████████ *Id.* at COL00312285.

18 In December 2022, the APR went public with its concerns about Colgate's claims. Rolon Decl.,

19 Ex. T at 4 (explaining most recovery facilities do not take tubes).

20         **ii.   How2Recycle Rejected Colgate's Bid to Use Its Well-Known Label.**

21         The APR was not the only recycling organization to warn Colgate against misleading the

22 public about the recyclability of Colgate's toothpaste tubes. Colgate initially sought approval to

23 use Green Blue's How2Recycle label because it is commonly understood in the United States.

24 Rolon Decl., Ex. J at 44:17–23, 139:13–140:10. The How2Reycle label is awarded by Green Blue

25 Institute d/b/a Green Blue in the United States and Canada that communicates disposal and

26 recycling instructions for products. *See* https://how2recycle.info/about-how2recycle/ (last

27 accessed May 9, 2025).

28

PLAINTIFFS' MOTION FOR CLASS CERTIFICATION
CASE NO. 3:23-CV-04086-JCS

1  ████████████████████████████████████████████████

2  ████████████████████████████ Rolon Decl., Ex. U at COL00007655–

3  56. ████████████████████████████████████████████

4  ████████████ *Id.* at COL00007654 (emphasis added). ████████████

5  ████████████████████████████████████████████████

6  ████████████████████████████████████████████████

7  ████████████████████████████████████████████ *Id.* at

8  COL00007654–655. ████████████████████████████████

9  ████████████████████ *Id.* ████████████████████

10 ████████████████████████████████████████████████

11 ████████████████████████ *Id.* at COL00007654.

12      **iii.  Stina Inc. Also Warned Colgate About the Recyclability Claim.**

13 ████████████████████████████████████████████████

14 ████████████████████████████████████████████████

15 ████████████████████████ Rolon Decl., Ex. V at COL00004523. ██

16 ████████████████████████████████████████████████

17 ████████████████████████████████████████████████

18 ████████████████████████████████████████████████

19 ████████████████████████████████████████████████

20 ██████ *Id.* (emphasis added). Colgate again ignored that advice.

21      **C.  Colgate Has Known for Years that Its Recyclability Claim Is False.**

22      Colgate's greenwashing was willful and egregious: it has known from the start that its

23 Recyclability Claim was deceptive. ████████████████████████████

24 ████████████████████████████████████████████████

25 ████████████████████████████████████████████████

26 ████████████████████ Rolon Decl., Ex. C at COL00317246–247. ██

27 ████████████████████████████████████████████████

28

PLAINTIFFS' MOTION FOR CLASS CERTIFICATION
CASE NO. 3:23-CV-04086-JCS

███████████████████████████████████████████████████

████████████████████████████████████████ Rolon Decl., Ex. W

at Slide 99. ████████████████████████████████████████

████████████████████████████ Rolon Decl., Ex. X at Slide 6; Rolon Decl., Ex. Y

at COL00174678. It never got anywhere close; yet, it persisted with the Recyclability Claim.

████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

██████████ Rolon Decl., Ex. Z at COL00379768. ████████████████

███████████████████████████ Rolon Decl., Ex. AA at COL00313681.

████████████████████████████████████████████████

███████████████████████████████████████████████████

██████████████████████████ Rolon Decl., Ex. AB at COL00006843. ███████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

████████████████████ Rolon Decl., Ex. AC at COL00009041.

Finally, Mr. Corra admitted that Colgate has *no documents or information whatsoever* regarding the acceptance of the Products by recycling facilities in California. Rolon Decl., Ex. J at 140:25–141:14.

### D. The Entire Class Was Exposed to the Recyclability Claim.

The Class is defined to include only those Products labeled with a Recyclability Claim, which encompasses over one hundred Products. *See* Rolon Decl., Exs. A & B. Most products include both the phrase "Recyclable Tube" and the chasing arrows symbol, and most of the chasing arrows symbols surround an image of a tube, further confirming that the symbol and text have the same meaning. Moreover, California law specifically recognizes the chasing arrows symbol as a recyclability claim. *See* Cal. Pub. Res. Code § 42355.51(b)(1) & (b)(3).

Colgate first began including the Recyclability Claim on its Tom's of Maine cartons in

late 2019. *See* Rolon Decl., Ex. J at 30:5–9; *see*, *e.g.*, Rolon Decl., Ex. B-89. The packaging originally featured a chasing arrows symbol with the claim: "We've switched to a recyclable tube! Learn more at www.tomsofmaine.com." *See*, *e.g.*, Rolon Decl., Exs. B-87, B-89. Colgate subsequently modified the Recyclability Claim on the Tom's of Maine labels by removing the chasing arrows symbol and stating "THE FIRST OF ITS KIND RECYCLABLE TUBE." *See*, *e.g.*, Rolon Decl., Exs. B-87.B (1/25/21), B-89.C (11/30/20). In the next refresh, the labels maintained the "RECYCLABLE TUBE" claim in large font and added an ineffective qualifier in small font: "Your community may not yet accept tubes for recycling. Check locally." *See*, *e.g.*, Rolon Decl., Exs. B-87.C (10/10/22), B-89.D (10/10/22). That version of the Recyclability Claim remains on the most recent Tom's of Maine labels. *See*, *e.g.*, Rolon Decl., Ex. B-87.D (7/12/23).

Colgate rolled out the Recyclability Claim on the Colgate-branded products from 2020 through 2021. *See* Rolon Decl., Ex. J at 30:9–40:1; *see*, *e.g.*, Rolon Decl., Exs. A-B. The Recyclability Claim on the Colgate-branded products consists of the chasing arrows symbol around an image of a toothpaste tube, often with the phrase "Recyclable Tube." *See*, *e.g.*, Rolon Decl., Exs. A-52 (4/29/21), B-21 (4/27/21), B-60.B (2/11/22). In late 2022, Colgate began including a vague and insufficient "check locally" qualifier, in small font, on the side or back of some Colgate-branded Products: "Your community may not yet accept tubes for recycling. Check locally." *See*, *e.g.*, Rolon Decl., Exs. A-30.A (11/20/23), B-15.A (9/14/22).

### E.  Consumers Have a Common Understanding of the Recyclability Claim.

Plaintiffs' survey expert, Dr. Mike Dennis, is Senior Vice President of NORC (formerly known as the National Opinion Research Center) where he leads the online panel research business. Dennis Decl., ¶ 11. He has been responsible for hundreds of consumer surveys. *Id.* ¶ 5. Using methodologies well established in the published literature, his survey shows that an astounding 87.2% of consumers understood the Recyclability Claim to mean that "the toothpaste tube will be accepted for recycling by [their] local recycling program." *Id.* ¶ 95; *see id.* ¶¶ 56–76; 92–100 (consumer perception survey). Finally, Dr. Dennis also shows that a substantial majority—76.6%—would prefer to purchase products with the Recyclability Claim

representation. *Id.* ¶¶ 77–89; 101–105 (consumer materiality survey).

**F.  The Recyclability Claim Is Unlawful and Deceptive Classwide.**

California law makes it "unlawful for any person to make any untruthful, deceptive, or misleading environmental marketing claim, whether explicit or implied." Cal. Bus. & Prof. Code § 17580.5. The term "environmental marketing claim" includes the chasing arrows symbol, "recyclable," and any claim contained in the Green Guides. *See* Cal. Bus. & Prof. Code §§ 17580(e)–(f), 17580.5(a); Cal. Pub. Resources Code § 42355.51; 16 C.F.R. §§ 260, *et seq.*.

The Green Guides state that a product is "recyclable" when "it can be collected, separated, or otherwise recovered from the waste stream through an established recycling program for reuse or use in manufacturing or assembling another item." 16 C.F.R. § 260.12(a); *see* 63 Fed. Reg. 84, 24247 ("For a product to be called 'recyclable,' there must be an established recycling program, municipal or private, through which the product will be converted into, or used in, another product or package."). The Green Guides' definition encompasses three prongs of recyclability that are commonly used in the recycling industry: (1) accessibility of recycling programs; (2) sortability for recovery; and (3) end market reuse. Leonard Decl., ¶¶ 10, 15–29. It is deceptive as a matter of law to use unqualified recyclable claims unless there are recycling programs available to at least 60% of California consumers. 16 C.F.R. § 260(b)(1). "Recyclability" can thereby be assessed for a particular product or item by reference to objective thresholds that do not require any individualized analysis of the recycling capabilities of every individual community or MRF. Leonard Decl., ¶ 12.

Here, common evidence will show that a substantial majority of California consumers do not have access to recycling programs and facilities that will accept the Products, sort the Products, and/or convert the Products into reusable end-market material. Leonard Decl., ¶¶ 15–29; *see also* §§ II(B) & II(C) above.

**G.  Mr. Dennis and Mr. Weir have Proposed a Methodology for Calculating Restitution and Damages Owed to the Class.**

Plaintiffs' survey expert, Dr. Dennis, and damages expert, Colin Weir, propose a widely accepted method to measure and isolate the price premium that consumers paid as a direct result

1   of Colgate's deceptive Recyclability Claim. Dennis Decl., ¶¶ 31, 107–182; Weir Decl., ¶¶ 65–

2   76. Conjoint analysis utilizes a survey where respondents are presented with various choices of

3   product attributes, prices and alternatives, and asked to select their preferred product, which

4   allows researchers to then apply statistical methods, including regression analysis, to value those

5   attributes in the market. Dennis Decl., ¶¶ 110–182; Weir Decl., ¶¶ 21–36. Here, Dr. Dennis, in

6   consultation with Mr. Weir, proposes a controlled conjoint survey which will be able to measure

7   the price premium solely attributable to the Recyclability Claim. Dennis Decl., ¶¶ 107–182; Weir

8   Decl., ¶ 40.

9   **III.    ARGUMENT**

10          Rule 23 provides district courts with broad discretion to determine whether a class should

11  be certified. *See Armstrong v. Davis*, 275 F.3d 849, 872, n.28 (9th Cir. 2001). Class actions are

12  favored where, like here, there is alleged wrongdoing against a large number of persons, each of

13  whom has suffered only a small amount of damages. *See, e.g., Hanlon v. Chrysler Corp*., 150

14  F.3d 1011, 1023 (9th Cir. 1998) (class certification appropriate because litigation costs would

15  dwarf potential recovery by class members if forced to pursue actions individually).

16          A class action must satisfy all four requirements in Fed. R. Civ. P. 23(a)(1) numerosity;

17  (2) commonality (3) typicality and (4) adequacy. The class must also satisfy at least one

18  subdivision of Fed. R. Civ. P. 23(b). Here, the Class satisfies Rule 23(b)(3) because "questions

19  of law or fact common to the members of the class predominate over any questions affecting only

20  individual members, and a class action is superior to other available methods for the fair and

21  efficient adjudication of the controversy." In some cases, "it may be necessary for the court to

22  probe behind the pleadings before coming to rest on the certification question," and certification

23  is proper only if "the trial court is satisfied, after a rigorous analysis, that the prerequisites of Rule

24  23(a) have been satisfied." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350–351 (2011)

25  (quoting *General Telephone Co. of Southwest v. Falcon*, 457 U.S. 147, 160–61 (1982)).

26

27

28

1

**A. The Class Satisfies the Requirements of Rule 23(a).**

2

**i. The class is sufficiently numerous.**

3

Rule 23(a)(1) requires that joinder of all class members is "impracticable." Fed. R. Civ. P.

4

23(a)(1). Usually, "one hundred or more members" suffices. *James v. Uber Techs. Inc.*, 338 F.R.D.

5

123, 130 (N.D. Cal. 2021). ███████████████████████████████

6

Rolon Decl., Ex. AD at COL00000004. This is sufficient. *See, e.g.*, *Pettit v. P&G*, No. 15-cv-

7

02150-RS, 2017 U.S. Dist. LEXIS 122668, at *5–6 (N.D. Cal. Aug. 3, 2017); *Vizcarra v. Unilever*

8

*United States Inc.*, No. 4:20-cv-02777 YGR, 2023 U.S. Dist. LEXIS 38208, at *16–17 (N.D. Cal.

9

Feb. 24, 2023) (numerosity satisfied where tens of thousands of units sold).

10

**ii. There are common questions of fact and law.**

11

"Commonality requires the plaintiff to demonstrate that the class members have suffered

12

the same injury' and that the class's claims depend on 'a common contention . . . of such a nature

13

that it is capable of classwide resolution.'" *Pettit*, 2017 U.S. Dist. LEXIS 122668, at *6 (quoting

14

*Wal-Mart*, 564 U.S. at 350). Not all questions need be common to satisfy the rule. *Id.*; *see also*

15

*Mazza v. Honda Am. Honda Motor Co.*, 666 F.3d 581, 589 (9th Cir. 2012) ("[C]ommonality only

16

requires a single significant question of law or fact.").

17

Here, there is classwide evidence that all of the Products included a Recyclability Claim

18

during the class period, and the Class is limited to such Products. Rolon Decl., Exs. A–B; *see*

19

*Williams v. Gerber Products Co.*, 552 F.3d 934, 938 (9th Cir. 2008) ("[T]he primary evidence in

20

a false advertising case is the advertising itself."); *see also Korolshteyn v. Costco Wholesale Corp.*,

21

No. 3:15-cv-709-CAB-RBB, 2017 U.S. Dist. LEXIS 38192, at *14 (S.D. Cal. Mar. 16, 2017)

22

("By definition, class members were exposed to these labeling claims, creating a 'common core

23

of salient facts.'"). The Recyclability Claim is substantially similar on each label; any immaterial

24

variations in the Recyclability Claim that Defendant may identify cannot defeat certification. *See*

25

*Prescott v. Reckitt Benckiser LLC*, No. 20-cv-02101-BLF, 2022 U.S. Dist. LEXIS 135329, at *14

26

(N.D. Cal. July 14, 2022) (holding that the phrases "COLOR RENEW" and/or "revives color"

27

were "so similar that they may be viewed collectively as a single representation regarding the

28

effect of Woolite detergent on clothing"); *see also In re First All. Mortg. Co.*, 471 F.3d 977, 992 (9th Cir. 2006) ("The class action mechanism would be impotent if a defendant could escape much of his potential liability for fraud by simply altering the wording or format of his misrepresentations across the class of victims.").

It is well-established that, "because deception and materiality under the FAL, CLRA, and UCL are objective questions, they are ideal for class certification because they will not require the court to investigate class members' individual interaction with the [challenged] product[s]." *Hadley v. Kellogg Sales Co.*, 324 F. Supp. 3d 1084, 1115 (N.D. Cal. 2018) (internal quotation marks and citation omitted); *see also Krommenhock v. Post Foods, LLC*, 334 F.R.D. 552, 564, 565, 575 (N.D. Cal. 2020) (discussing the objective nature of the key inquires under the UCL, CLRA, and FAL); *Kumar v. Salov N. Am. Corp.*, No. 14-CV-2411-YGR, 2016 U.S. Dist. LEXIS 92374, at *11 (N.D. Cal. July 15, 2016) (certifying a class where "the central question is whether [defendant's labels] were likely to deceive a reasonable consumer"). Because objective standards apply, "courts 'routinely find commonality in false advertising cases.'" *Woodard v. Labrada*, No. EDCV 16-189 JGB, 2021 U.S. Dist. LEXIS 189649, at *88 (C.D. Cal. Aug. 31, 2021) (quoting *Astiana*, 291 F.R.D. 493, 501 (S.D. Cal. 2013)); *see also Chavez v. Blue Sky Natural Beverage Co.,* 268 F.R.D. 365, 377 (N.D. Cal. 2010).

Such is the case here: Colgate's liability with respect to the Recyclability Claim will be resolved classwide based on objective standards. *See Keurig*, 2020 U.S. Dist. LEXIS 172826, at *13–22 (certifying a class alleging unlawful and deceptive "recyclable" claims). In particular, whether Colgate's Recyclability Claim complied with the Green Guides and California law is a common issue, regardless of any individual Class member's particular beliefs, knowledge, actions, or circumstances (including whether they personally relied on the Recyclability Claim or were able to recycle the Product). *See id.* at *13–14 (agreeing that no individualized reliance inquiry is required for a UCL claim); *id.* at *21 ("Whether an individual class member's recycling facility happened to accept the Products is irrelevant."). Moreover, Plaintiffs' expert has conducted a consumer perception survey and found that reasonable consumers understand the Recyclability

Claim to mean local recycling programs accept the product for recycling. Dennis Decl., ¶¶ 92–100.[1] Plaintiffs also have common evidence that the Recyclability Claim was material to a reasonable consumer. Dennis Decl., ¶¶ 101–105. Plaintiffs will further establish, though common evidence, that a substantial majority of California consumers did *not*, and still do not, have access to recycling programs and facilities that will accept the Products, sort the Products, and convert the Products into reusable end-market material. Leonard Decl., ¶¶ 15–38; *see also* §§ II(B) & II(C) above. Whether Colgate complied with California law requiring it to "maintain in written form in its records . . . information and documentation supporting the validity" of the Recyclability Claim (*see* Cal. Bus. & Prof. Code § 17580) is also a common question with a common, classwide answer: it did not (*see* Rolon Decl., Ex. J at 140:25–141:14). And, while the individual harms suffered by each Class member may vary, the methodology for calculating the price premium on the Products as a result of the Recyclability Claim is common to the Class. Weir Decl., ¶¶ 36, 71–76.

### iii. Plaintiffs are typical of the class.

"Typicality focuses on the class representative's claim—but not the specific facts from which the claim arose—and ensures that the interest of the class representative aligns with the interests of the class." *Just Film, Inc. v. Buono*, 847 F.3d 1108, 1116 (9th Cir. 2017). "The requirement is permissive, such that representative claims are typical if they are reasonably coextensive with those of absent class members; they need not be substantially identical." *Id.* "Some degree of individuality is to be expected in all cases, but that specificity does not necessarily defeat typicality." *Hanlon*, 150 F.3d at 1020. Typicality is satisfied if the named plaintiffs' claims stem from the same practice or course of conduct that forms the basis of the class's claims and are based upon the same legal remedial theory. *Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168, 1175 (9th Cir. 2010); *see also Just Film*, 847 F.3d at 1116.

Plaintiffs' claims are typical of other Class members. They, like all class members: purchased Products with a Recyclability Claim (Gershzon Decl., ¶ 2; Della Decl., ¶ 2; Lienhard

---

[1] If deemed necessary, Plaintiffs' survey expert will confirm that consumers understand minor variations in the Recyclability Claim in the same way. Dennis Decl., ¶ 63 & n.17.

Decl., ¶ 2) and paid a price premium as a result of the misrepresentation (Gershzon Decl., ¶ 4; Della Decl., ¶ 4; Lienhard Decl., ¶ 4; *see* Dennis Decl., ¶ 168–182; Weir Decl., ¶¶ 42–43). Courts routinely find similar facts sufficient for typicality. *See, e.g.*, *Keurig*, 2020 U.S. Dist. LEXIS 172826, at *5–9 (finding typicality when plaintiff purchased the product in reliance on the false representation that the products were "recyclable"); *Swartz v. Dave's Killer Bread, Inc.*, No. 4:21-cv-10053-YGR, 2024 U.S. Dist. LEXIS 198028, at *15 (N.D. Cal. Sep. 20, 2024) (finding typicality when "plaintiff purchased Dave's Killer Bread products for their protein content, and the products included a [label] that violated FDA regulations."); *Pettit*, 2017 U.S. Dist. LEXIS 122668, at *12–13 (finding typicality because the plaintiff "purchased [flushable wipes] under the apprehension they were appropriate for flushing down the toilet, and now alleges she is owed restitution of the price premium she paid for an ostensibly 'flushable' product because P&G's 'flushable' label was false"). It does not matter that Plaintiffs did not purchase each Product included in the proposed Class because the relevant underlying facts and the theories of liability with respect to each Product are all the same. *See, e.g., Dave's Killer Bread*, 2024 U.S. Dist. LEXIS 198028, at *20–21 (rejecting challenge to typicality based on products plaintiff did not purchase because all of the challenged products contained the same unlawful representation); *Werdebaugh v. Blue Diamond Growers*, No. 12-CV-2724-LHK, 2014 U.S. Dist. LEXIS 71575, at *56 (N.D. Cal. May 23, 2014); *Astiana v. Kashi Co.*, 291 F.R.D. 493, 502–03 (S.D. Cal. 2013); *Ries v. Arizona Beverages USA LLC*, 287 F.R.D. 523, at 539–40 (N.D. Cal. 2012) . Accordingly, each Plaintiff has standing to seek relief under the CLRA, UCL, the FAL, and the common law, and their claims are typical of the Class.

### iv.   Plaintiffs and counsel will adequately protect the Class's interests.

Fed. R. Civ. P. 23(a)(4) requires that the class representative and class counsel "fairly and adequately protect the interests of the class." This is satisfied if (1) neither the class representative nor counsel "have any conflicts of interest with other class members," and (2) "the representative plaintiffs and their counsel will prosecute the action vigorously on behalf of the class[.]" *Staton v. Boeing Co*., 327 F.3d 938, 957 (9th Cir. 2003) (citing *Hanlon*, 150 F.3d at 1020)). Plaintiffs will fairly and adequately protect the interests of the members of the Class, because it is in their

best interest to prosecute the claims alleged in the First Amended Complaint to obtain full compensation due to all class members for the illegal conduct of which they complain. Plaintiffs do not have any conflicts, let alone an irreconcilable conflict, with other class members. Rather, Plaintiffs stand in the same shoes as all other members of the Class, seek the same relief as other class members, and have a common interest in obtaining all of the relief sought.

Plaintiffs' counsel will also adequately protect the interests of the class. Counsel has successfully represented numerous classes, involving a variety of claims, in state and federal courts throughout the country. Safier Decl., ¶ 4, Ex. A at 1–6, 13–18. Gutride Safier LLP has been involved (and appointed class counsel) in dozens of class actions, including many cases relating to food and product mislabeling; it also obtained many of the key Ninth Circuit precedents applicable in consumer cases. *Id.*, Ex. A at 1–2. Plaintiffs' counsel also has the necessary financial resources to vigorously litigate this action. *Id.* ¶ 6. The firm does not have any conflicts of interest with members of the class. *Id.* ¶ 7. This is more than sufficient to establish adequacy. *See, e.g.*, *Vizcarra v. Unilever United States*, 339 F.R.D. 530, 551 (N.D. Cal. 2021) (finding adequacy where counsel have "extensive experience successfully prosecuting consumer protection class actions such as this one"); *West v. Cal. Servs. Bureau*, 323 F.R.D. 295, 306 (N.D. Cal. 2017) (finding adequacy where counsel "have experience litigating class action claims in both federal and state courts, and appear to have been prosecuting this action vigorously.").

### B.  The Class Satisfies the Requirements of Rule 23(b)(3).

Rule 23(b)(3) requires that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). The predominance inquiry asks "whether proposed classes are sufficiently cohesive to warrant adjudication by representation. The focus is on the relationship between the common and individual issues." *Stearns v. Ticketmaster Corp.*, 655 F.3d 1013, 1019 (9th Cir. 2011) (internal quotations and citation omitted)). Predominance does not require that all issues in the case be common. Rather, the common questions need only be "a significant aspect of the

case . . . [that] can be resolved for all members of the class in a single adjudication." *Mazza*, 666 F.3d at 589. Courts routinely find predominance in false labeling cases because the answer to whether the label was false or misleading to reasonable consumers, and whether it was material "will be the same for the entire class." *Korolshteyn*, 2017 U.S. Dist. LEXIS 38192, at *15. "These common questions are not only more significant than other questions at issue in [the] suit, they are the most significant questions in this lawsuit. Therefore, these questions predominate over any individual questions that may arise." *Id.*; *see also, e.g., Mullins v. Premier Nutrition Corp.*, No. 13-cv-01271-RS, 2016 U.S. Dist. LEXIS 51140, at *13–21 (N.D. Cal. Apr. 15, 2016) (finding predominance in false labeling action based on common questions regarding deception, materiality, and classwide proof of restitution); *Kumar,* 2016 U.S. Dist. LEXIS 92374, at *32 (same); *Pettit*, 2017 U.S. Dist. LEXIS 122668, at *6–12, 16 (same); *In re Tobacco II Cases,* 46 Cal. 4th 298, 312 (2009) (holding that questions of materiality and the likelihood a representation will mislead a reasonable consumer predominate over individual issues). The same common issues predominate here.

### i.  Common questions predominate on unlawfulness.

The UCL's "unlawful" prong "borrows" predicate legal violations and treats them as independently actionable. *Wang v. Massey Chevrolet*, 97 Cal. App. 4th 856, 871 (2002). The Class alleges that the labels here violated the Green Guides and California law because they include a Recyclability Claim when a substantial majority of California consumers do not have access to recycling facilities and when the products are not yet reused in end markets. *See* Cal. Bus. & Prof. Code §§ 17580, 17580.5; 16 C.F.R. §§ 260, *et seq.*; Cal. Pub. Resources Code § 42355.51. Colgate's liability under the unlawfulness prong of the UCL is a predominating common question because the Recyclability Claim either satisfies the required legal threshold or it does not, and that determination will apply to all Class Members. *See Keurig*, 2020 U.S. Dist. LEXIS 172826, at *21–22 (N.D. Cal. Sep. 21, 2020) (granting plaintiff's motion for class certification where "[p]laintiff's class claims allege a general theory that the Products are not recyclable in a substantial majority of communities such that the representation is misleading"

and "and individualized inquiries into the collection capabilities at each class member's community recycling centers do not override the common issues").

### ii. Common questions predominate about whether Colgate's labels were deceptive to reasonable consumers.

Whether the Products' labels are deceptive will be determined either as a matter of law (as set forth above) or by the objective "reasonable consumer" standard, and thus will be established by common proof. *See supra*, § III.A.ii. With respect to this issue, "the predominance and commonality issues collapse." *Pettit*, 2017 U.S. Dist. LEXIS 122668, at *16. Because deception is the key element for Plaintiffs' UCL and FAL claims, the objective deception inquiry necessarily establishes predominance. *Bailey v. Rite Aid Corp.*, 338 F.R.D. 390, 407 (N.D. Cal. 2021) ("[A] plaintiff asserting a claim under either the UCL or FAL must show *only* that the question of likelihood of deception can be established with common proof in order to establish that common questions predominate over individual ones with respect to such claims.").

Colgate may argue that its purportedly "curative" disclosures on certain Products (that consumers should "check locally") either create individualized issues or require a narrowing of the Class. Not so. As an initial matter, the Green Guides are clear that such vague disclosures are invalid in these circumstances and cannot, as a matter of law, cure the deceptive nature of the Recyclability Claim. 16 C.F.R. §§ 260.12(b)(2) & 260.12(d). In addition, the Court has previously noted that, under the reasonable consumer standard, consumers are not required to research or review information beyond the label before purchasing a product. *See* ECF No. 45 at 39.  In sum, Colgate's vague, standardized reference to other potential information (outside the label) does not defeat certification where, as here, class members were uniformly exposed to the affirmative (but false) Recyclability Claim on the Products' labels. *See Walker v. Life Ins.of the Sw.*, 953 F.3d 624, 631 (9th Cir. 2020) (upholding district court's decision to certify a class of consumers who were all exposed to the misleading illustrations, despite defendant's argument "that it mattered whether other information provided to applicants could have corrected any misimpression the illustrations caused"); *see also Salas v. Toyota Motor Sales, United States, Inc.*, 2019 U.S. Dist. LEXIS 77847,

at *25–26 (C.D. Cal. Mar. 27, 2019) (rejecting argument that a purported disclosure defeated predominance where there was no evidence reasonable consumers reviewed the owner's manual prior to purchase, "the milktoast language of the purported disclosure is insufficient," and the effect of the disclosure was not, in any event, an individualized issue).

### iii.   Common questions predominate on restitution and damages.

Plaintiffs seek restitution under the UCL, as well as damages under the CLRA and for fraud, presenting further predominant common questions.[2] Pursuant to *Comcast v. Behrend*, 569 U.S. 27 (2013), Plaintiffs must show that damages are "capable of measurement" across the class and that their damages model "is consistent with [their] liability case." But Plaintiffs need not actually execute their model at the class certification stage. *Lytle v. Nutramax Labs., Inc.*, No. 22-55744, 2024 U.S. App. LEXIS 9722, at *18 (9th Cir. Apr. 22, 2024) ("[C]lass action plaintiffs may rely on an unexecuted damages model to demonstrate that damages are susceptible to common proof so long as the district court finds, by a preponderance of the evidence, that the model will be able to reliably calculate damages in a manner common to the class at trial."); *Bailey*, 338 F.R.D. at 408 n.14 (Plaintiff's experts are "not required to actually execute a proposed conjoint analysis to show that damages are capable of determination on a class-wide basis with common proof"). Moreover, variations in damages among class members is not a reason to deny certification. *See Pulaski & Middleman, LLC v. Google, Inc.*, 802 F.3d 979, 986 (9th Cir. 2015) ("damage calculations alone cannot defeat class certification") (citation omitted); *see Maldonado v. Apple, Inc.*, 333 F.R.D. 175, 191–92 (N.D. Cal. 2019) (certifying consumer

---

[2]     Under the UCL, a court may grant restitution, an equitable remedy whose purpose is "to restore the status quo by returning to the plaintiff funds in which he or she has an ownership interest." *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1149 (2003); *see also Cortez v. Purolator Air Filtration Products Co.*, 23 Cal. 4th 163, 177 (2000); Cal. Bus. & Prof. Code §§ 17203, 17535. This form of restitutionary relief has two purposes: returning money unjustly taken from the class, and deterring the defendant from engaging in future violations. *See Colgan v. Leatherman Tool Group, Inc.*, 135 Cal. App. 4th 663, 695 (2006). If restitution is awarded, it must be a "quantifiable sum," and the award must be supported by substantial evidence. *Id.* at 698. Under the CLRA and fraud-based claims, a consumer may recover actual damages, punitive damages, and attorney fees. Cal. Civ. Code §§ 1780(a)(1), (4), (5). The CLRA also provides for statutory damages of $5,000 for each act of false advertising to a person age 65 or older. Cal. Civ. Code §§ 1761(f)–(g); 1780(b)(1).

class because plaintiff presented a viable damages model and "[c]alculations need not be exact,' . . . nor is it necessary 'to show that [the] method will work with certainty at this time'").

Here, Plaintiffs' survey and economics experts, Dr. Dennis and Mr. Weir,[3] propose a damages model to show that everyone in the Class paid a price premium for the Products as a result of Colgate's classwide unlawful and deceptive Recyclability Claim. ¶¶ 31, 107–182; Weir Decl., ¶¶ 65–76; *see also Hadley*, 324 F. Supp. 3d at 1103–1110 (approving a Weir-sponsored conjoint analysis to measure a price premium from deceptive labels). Dr. Dennis and Mr. Weir propose a conjoint survey and analysis which will be able to reliably isolate and measure the price premium associated with the Recyclability Claim. Dennis Decl., ¶ 177; Weir Decl., ¶ 40. Conjoint analysis has been used for over 50 years by academic researchers, industry marketing departments, and government agencies to determine the price premium attributable to particular product attributes, such as label claims *Id*. Numerous courts have also approved of conjoint analysis as a methodology to determine the price attributable to specific product features such as a label claim. *See Keurig*, 2020 U.S. Dist. LEXIS 172826, at *28–29 (granting class certification and holding proposed damages model was proper because it could determine "what price premium, if any, resulted from the recyclability claim."); *Bailey v. Rite Aid Corp*., No. 4:18-cv-06926 YGR, 2021 U.S. Dist. LEXIS 81654, at *50 (N.D. Cal. Apr. 28, 2021) (finding conjoint to comport with requirements of *Comcast* and sufficient to show damages are capable of measurement on a classwide basis); *Hadley*, 324 F. Supp. 3d at 1103 (same); *Post Foods*, 334 F.R.D. at 575 (same); *see, e.g.*, *In re Lenovo Adware Litig.*, No. 15-MD-02624-RMW, 2016 WL 6277245, at *21 (N.D. Cal. Oct. 27, 2016) (same); *In re ConAgra Foods, Inc.*, 90 F. Supp. 3d 919, 944 (C.D. Cal. 2015), *aff'd sub nom. Briseno*, 844 F.3d 1121, and *aff'd sub nom. Briseno v. ConAgra Foods, Inc.*, 674 F. App'x 654 (9th Cir. 2017) (approving of methodology to determine class wide damages "attributable to ConAgra's labeling of Wesson Oils as '100% Natural' through the use of a conjoint analysis survey").

The surveys here, designed by Dr. Dennis in consultation with Mr. Weir, will account for

---

[3] Numerous courts have also accepted Mr. Dennis and Mr. Weir as survey and damages experts. Dennis Decl., ¶ 6; Weir Decl., ¶ 2.

the real-world marketplace for similar products, and will be based on actual, historical prices that occurred in the marketplace based on Circana (f/k/a IRI) data. Dennis Decl., ¶¶ 161, 173; Weir Decl., ¶ 44. Dr. Dennis will use actual competitor brands and actual price ranges for those competitors' products. Dennis Decl., ¶¶ 146–148, 161. Following well-accepted techniques for conjoint surveys, respondents will be shown a variety of similar toothpaste products that varied according to the product attributes tested: brand, flavor, product benefits, front-of-package label claims; other label claims; ingredients; and price. Dennis Decl., ¶ 144–161. Respondents will choose their preferred product based on the displayed attributes, which will be presented in sets of three products. *Id.* ¶ 144. After each choice set, respondents will be asked how likely they are to purchase the product they stated they preferred. *See id.* ¶¶ 120, 144. Dr. Dennis will then be able to take the preference data and feed it into a market simulator that employs Hierarchical Bayesian regression to calculate the price premium that consumers paid as a result of the "Recyclable Tube" claim. *Id.* ¶¶ 168–176. Mr. Weir will then use retail sales data to calculate damages by multiplying the price premium by the sales of the Products during the class period. Weir Decl., ¶¶ 65–70. Because the price premium is expressed as a percentage or amount of the sales price that applies equally to every class member's purchase of the Products during the class period, damages are capable of measurement on a classwide basis. *Id.* ¶¶ 10, 54–56; *Lytle*, 2024 U.S. App. LEXIS 9722, at *18 (damages need only be capable of measurement on a classwide basis); *Gunaratna v. Dennis Gross Cosmetology LLC*, No. CV 20-2311-MWF (GJSx), 2023 U.S. Dist. LEXIS 60796, at *57 (C.D. Cal. Apr. 4, 2023) (collecting cases).

### iv. Common questions predominate on materiality.

Under California law, "[q]uestions of materiality and reliance are determined based upon the reasonable consumer standard, not the subjective understandings of individual plaintiffs." *Kumar*, 2016 U.S. Dist. LEXIS 92374, at *21; *see Stearns,* 655 F.3d at 1022; *Occidental Land, Inc. v. Superior Court*, 18 Cal. 3d 355, 363 (1976) (for common-law fraud class, reliance can be proven on common basis by showing that misrepresentations were material); *Vasquez*, 4 Cal. 3d at 814 (on fraud claim, "[i]f the court finds that a reasonable man would have relied upon the

alleged misrepresentations, an inference of justifiable reliance by each class member would arise"). Because the materiality of the Recyclability Claim will be determined by an objective standard common to all Class members, requiring no individualized inquiries, this element of Plaintiffs' CLRA and fraud claims[4] presents another common issue that predominates over individual questions.

Here, Plaintiffs' expert conducted a materiality survey to show that the Recyclability Claim is material to consumer purchasing decisions. Dennis Decl., ¶¶ 77–89; 101–105. Additionally, Colgate's own documents acknowledge that "recyclable" is one of the "strongest packaging claim[s]." Rolon Decl., Ex. I at COL00417130; *see also Kumar*, 2016 U.S. Dist. LEXIS 92374, at *23 ("Materiality can be shown by a third party's, or defendant's own, market research showing the importance of such representations to purchasers."). Further, it is reasonable to presume classwide reliance because Plaintiffs have submitted declarations stating they read and relied on the Recyclability Claim. Gershzon Decl., ¶ 3; Della Decl., ¶ 3; Lienhard Decl., ¶ 3. In short, common evidence will be used to establish materiality on a classwide basis. *Fitzhenry-Russell v. Pepper Snapple Grp. Inc.*, 326 F.R.D. 592, 611–14 (N.D. Cal. 2018) (certifying CLRA and common fraud claims where common question of deception and reliance could be resolved through common classwide evidence); *Mullins*, 2016 U.S. Dist. LEXIS 51140, at *17 (holding that deception and materiality were common questions under CLRA).

Colgate may argue that certain purchases should be excluded from the Class because the deceptive Recyclability Claim appeared only on the side or back label of certain Products and not on the front of the package. However, when "there is evidence that the representation was consistently made on a product's label, the only question is whether it was objectively material to a reasonable consumer." *Krommenhock v. Post Foods, LLC*, 334 F.R.D. 552, 564-65 (N.D. Cal. 2020) (rejecting the defendant's argument that the challenged representation must be prominently displayed on each label included in the class); *see also Falcone v. Nestle USA, Inc.*, No. 3:19-cv-

---

[4] Reliance and materiality are *not* elements of Plaintiffs' UCL and FAL claims, and are relevant only to Plaintiffs' CLRA and common law fraud claims. *See Stearns*, 655 F.3d at 1020; *Keurig*, 2020 U.S. Dist. LEXIS 172826, at *13 ("The Court also agrees that proof of reliance by the proposed class is not required to establish a UCL claim.").

723-L-DEB, 2024 U.S. Dist. LEXIS 214648, at *27-29 (S.D. Cal. Sep. 25, 2024) (rejecting a defendant's argument that a misrepresentation must be prominently displayed on the label to be deemed material); *Reckitt*, 2022 U.S. Dist. LEXIS 135329, at *16 (agreeing with *Krommenhock* "that a prominence requirement is not supported by California law"); *Banks v. R.C. Bigelow, Inc.*, No. 20-cv-06208 DDP (RAOx), 2023 U.S. Dist. LEXIS 135167, at *16 (C.D. Cal. July 31, 2023) (rejecting prominence argument and inferring classwide reliance for challenged claims found on the back of tea boxes).

Colgate will also likely argue that consumers had different motivations that led to their purchases, but this is irrelevant because the theory of the case is that the misrepresentation affected the retail *market price*, so all class members paid the price premium regardless of motivation. *See, e.g.*, *Kumar*, 2016 U.S. Dist. LEXIS 92374, at *25 (noting that in a "price premium" case "materiality and reliance do not break down into individualized inquiries, but can be determined on a classwide basis."); *Brown*, 2014 U.S. Dist. LEXIS 162038, at *52–53 (certifying a class even though consumers "buy products all the time for more than one reason"); *Allen v. Hyland's Inc.*, 300 F.R.D. 643, 668 (C.D. Cal. 2014) (rejecting evidence that consumers had different primary motivators for purchasing product and finding predominance).

### v. Common questions predominate on punitive damages.

Common questions also predominate regarding whether Plaintiffs and the class are entitled to punitive damages. Under the CLRA, Plaintiffs and the class are entitled to punitive damages because Colgate acted with "oppression, fraud, or malice." *Robinson v. J.M. Smucker Co.*, No. 18-cv-04654-HSG, 2019 U.S. Dist. LEXIS 78069, at *17 (N.D. Cal. May 8, 2019) (quoting Cal. Civ. Code. § 3294); *see also* Cal. Civ. Code § 1780. Fraud means an "intentional misrepresentation, deceit, or concealment of a material fact knowing to the defendant with the intention on the part of the defendant of thereby depriving a person of property or legal rights." Cal. Civ. Code § 3294(c)(3). "Because the purpose of punitive damages is not to compensate the victim, but to punish and deter the defendant, any claim for such damages hinges, not on facts unique to each class member, but on the defendant's conduct toward the class as a whole."

*Barefield v. Chevron, U.S.A., Inc.*, No. C 86-2427 TEH, 1988 U.S. Dist. LEXIS 15816, at *11 (N.D. Cal. Dec. 6, 1988).

Here, the issue of whether Colgate released the Products in California with fraudulent intent is a common question that can be determined through common evidence, including emails showing Ms. Bedarf, Mr. Wang, and other Colgate employees acknowledging they could not support recycling claims and countless objections and warnings from recycling organizations. Rolon Decl., Exs. C, W–AB; *see also Ellis v. Costco Wholesale Corp.*, 285 F.R.D. 492, 542–43 (N.D. Cal. 2012) (holding punitive damages best decided on a classwide basis.); *Behar v. Northrop Grumman Corp.*, No. 2:21-cv-03946-HDV-SKx, 2024 U.S. Dist. LEXIS 157399, at *49–50, n.16 (C.D. Cal. July 1, 2024) (same).

### vi.   A class action is superior.

Rule 23(b)(3) enumerates four factors superiority factors: "(A) the interest of members of the class in individually controlling the prosecution . . . of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by . . . members of the class; (C) the desirability . . . of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action." Here, there is little to be gained by class members filing individual claims because the amounts charged per purchase were low relative to the costs of litigation. Judicial resources would also be conserved by concentrating the action in a single suit. Finally, the adjudication of class claims would not be significantly more burdensome than if the matter were prosecuted individually, while the prosecution of individual remedies could establish inconsistent standards of conduct for Colgate. "[A] class action has to be unwieldy indeed before it can be pronounced an inferior alternative . . . to no litigation at all." *Carnegie v. Household Int'l, Inc.*, 376 F.3d 656, 661 (7th Cir. 2004).

### C.   The Class Also Satisfies the Requirements of Rule 23(b)(2).

Rule 23(b)(2) provides a separate and additional basis for granting Plaintiffs' motion. The UCL provides Plaintiffs and the Class with a statutory right to enjoin Colgate's deceptive and unlawful conduct. *McGill v. Citibank, N.A.*, 2 Cal. 5th 945, 955 (2017) (explaining that an

1 injunction is "the primary form of relief available under the UCL to protect consumers from unfair

2 business practices."); Bus. & Prof. Code § 17203. Further, Rule 23(b)(2) permits certification

3 where the Rule 23(a) prerequisites are satisfied and a defendant "acted or refused to act on

4 grounds that apply generally to the class, so that final injunctive relief or corresponding

5 declaratory relief is appropriate respecting the class as a whole" and is available without the need

6 to establish predominance or a damages model. *Wal-Mart Stores, Inc.*, 564 U.S. at 362–63.

7      Here, Colgate continues to market the Products with an objectively unlawful and

8 deceptive label, in the same manner to the entire Class. Thus, Plaintiffs meet the requirements for

9 a Rule 23(b)(2) class, which the Court may certify for purposes of seeking injunctive relief under

10 the UCL. *See Keurig*, 2020 U.S. Dist. LEXIS 172826, at *33 ("The proposed injunctive relief—

11 an order to enjoin Keurig from advertising their products as recyclable—may be granted and

12 provide relief for all proposed class members."); *Bush v. Rust-Oleum Corp.*, No. 20-cv-03268-

13 LB, 2024 U.S. Dist. LEXIS 20131, at *18 (N.D. Cal. Feb. 5, 2024) (certifying a class under

14 23(b)(2) where the class sought uniform relief from a practice applicable to all of them).

15 **IV.     CONCLUSION**

16      For the foregoing reasons, Plaintiffs respectfully request that this Court grant their Motion

17 for Class Certification; appoint Plaintiffs as class representatives and Gutride Safier LLP as lead

18 counsel; and order dissemination of class notice in a timely manner.

19 ///

20 ///

21 ///

Dated: May 22, 2025                    **GUTRIDE SAFIER LLP**

                                       */s/ Francisco J. Rolon*
                                       Seth A. Safier (State Bar No. 197427)
                                          seth@gutridesafier.com
                                       Marie A. McCrary (State Bar No. 262670)
                                          marie@gutridesafier.com
                                       Rajiv V. Thairani (State Bar No. 344390)
                                          rajiv@gutridesafier.com
                                       100 Pine Street, Suite 1250
                                       San Francisco, CA 94111
                                       Telephone: (415) 639-9090
                                       Facsimile:  (415) 449-6469

                                       Francisco J. Rolon (*pro hac vice* pending)
                                          francisco@gutridesafier.com
                                       10 Glenlake Parkway, Suite 130
                                       Atlanta, GA 30328
                                       Telephone: (415) 639-9090
                                       Facsimile:  (415) 449-6469

                                       *Attorneys for Plaintiffs*

PLAINTIFFS' MOTION FOR CLASS CERTIFICATION
CASE NO. 3:23-CV-04086-JCS